1
2
3
4
5

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
*dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq. (SBN 319508)
*msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel:    (818) 347-3333
Fax:   (818) 347-4118

6
7
8

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
7095 Indiana Ave Ste 200
Riverside, CA 92506
(951)682-9311
Email: trentpackerlaw@gmail.com

9

*Attorneys for Plaintiff*

10

11    **UNITED STATES DISTRICT COURT**
      **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| XAVIER LOPEZ,<br><br>              Plaintiff,<br><br>    vs.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive,<br><br>              Defendants. | **Case No.: 5:21-cv-02140**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1.** Unreasonable Search and Seizure – Excessive Force – Violation of the Fourth Amendment (42 U.S.C. §1983)<br>**2.** Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)<br>**3.** Municipal Liability – Ratification (42 U.S.C. §1983)<br>**4.** Municipal Liability – Failure to Train (42 U.S.C. §1983)<br>**5.** Battery<br>**6.** Negligence<br>**7.** Violation of Civil Rights – Bane Act (Cal. Civil Code § 52.1, Cal. Const.)<br><br>**DEMAND FOR JURY TRIAL** |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 1 -
COMPLAINT FOR DAMAGES

**COMPLAINT FOR DAMAGES**

Comes now, Plaintiff XAVIER LOPEZ for his complaint against Defendants CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1-10, inclusive, and hereby alleges as follows:

**INTRODUCTION**

1.      This civil rights and state tort action arises out of the January 26, 2021, excessive and unreasonable force used on Plaintiff XAVIER LOPEZ by CITY OF RIVERSIDE Police Officer, Defendant EVAN WRIGHT.  Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs from Defendants for violating various rights guaranteed to Plaintiff by the Bill of Rights, the United States Constitution, the California Constitution, and the laws of the State of California.

**JURISDICTION AND VENUE**

2.      This civil action is brought for the redress of alleged deprivations of rights under the laws of the State of California and of constitutional rights protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1334, and 1367.

3.      Venue is proper in this Court under 28 U.S.C. §1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Riverside, County of Riverside, California.

4.      On June 16, 2021, Plaintiff timely presented his claim for damages to the CITY OF RIVERSIDE pursuant to applicable sections of the California Government Code (sections 910 - 913.2).  On July 29, 2021, Defendant CITY OF RIVERSIDE rejected Plaintiff's claim.

**PARTIES**

5.      At all relevant times, Plaintiff XAVIER LOPEZ ("LOPEZ") is and was an individual residing in the City of RIVERSIDE, California.

6.      At all relevant times, Defendant CITY OF RIVERSIDE ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  At all relevant times, CITY was the employer of EVAN WRIGHT; and DOES 1-10, inclusive.  Defendants EVAN WRIGHT, and DOES 1-10, inclusive, are sued in their individual capacities for damages.  As set forth below, Plaintiff alleges that the CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978) and its progeny.  Plaintiff alleges that the CITY is vicariously liable for compensatory damages under Plaintiff's state law claims, given Plaintiff's allegations that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred.  Plaintiff makes no claim for punitive damages against the CITY.

7.      At all relevant times, Defendant EVAN WRIGHT ("WRIGHT") was a duly appointed CITY Police Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials.  At all relevant times, WRIGHT acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the RIVERSIDE Police Department ("RPD"), and under the color of the statutes and regulations of the State of California.  At all relevant times, WRIGHT acted within the course and scope of his employment as a CITY police officer.  On information and belief, WRIGHT is and was at all relevant times a resident of this judicial district.

8.      At all relevant times, Defendant DOES 1-10, inclusive, were duly appointed CITY Police Officers and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials and/or were managerial, supervisory or policy-making officials of the RPD.  At all relevant times,

DOES 1-10, inclusive, acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the RPD, and under the color of the statutes and regulations of the State of California.

9.      The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, who therefore sues these Defendants by such fictitious names.  Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained.  Each of the fictitious named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

10.      In committing the acts and omissions hereinafter described, Defendants DOES 1-10, inclusive, were acting on the implied and actual permission and consent of CITY.  In committing the acts and omissions hereinafter described, Defendants DOES 1-10, inclusive, were acting in the course and scope of their employment as CITY Police Officers, employees, and/or agents.

11.      At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every Defendant.

12.      Pursuant to Cal. Govt. Code § 815.2(a), CITY is vicariously liable for the nonfeasance and malfeasance of the individual Defendant RPD Officers, and DOES 1-10, inclusive, as alleged by Plaintiff's state law claims.  ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").  Defendants RPD Officers, and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code § 820(a).  CITY is also liable pursuant to Cal. Govt. Code § 815.6.

/ / /

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth herein.

14.   The incident upon which this action is based occurred in the afternoon of January 26, 2021, at or around 14610 Tomlinson Ave, City of Riverside, in the County of Riverside, California.

15.   At the time of this incident, Plaintiff LOPEZ was 29 years-old, a father and a son.

16.   LOPEZ was walking near the sidewalk at the incident location when he was approached aggressively by several RPD Officers.  Several of the RPD Officers began giving commands to LOPEZ.

17.   LOPEZ complied with the RPD Officers' commands, stopped, and put his visibly empty hands in the air in submission and compliance.

18.   LOPEZ was not attempting to resist detention or arrest and was not attempting to evade detention or arrest by flight.

19.   LOPEZ never verbally threatened any RPD Officer and the PRD Officers were not responding to a call for a serious or violent crime.

20.   The RPD Officers did not give a verbal warning that they would use deadly force against Plaintiff LOPEZ prior to the use of deadly force, even though it was feasible to do.

21.   There were less intrusive and less-lethal alternatives available to the Defendant Officers at the time of the use of deadly force against Plaintiff LOPEZ.

22.   There were several RPD Officers on scene in support of each other, greatly outnumbering the lone Plaintiff LOPEZ.

23.   Plaintiff LOPEZ was not an immediate threat of death or serious bodily injury to anyone, including any of the RPD Officers, at the time deadly force was used against him.

24.     Nevertheless, DEFENDANT WRIGHT repeatedly and intentionally shot Plaintiff LOPEZ, seriously injuring him.  DEFENDANT WRIGHT'S use of deadly force was excessive and unreasonable under the circumstances.

25.     Upon information and belief, at all times prior to and during the deployment of multiple gunshots fired at Plaintiff LOPEZ:

    A.     The RPD Officers were positioned and/or had the opportunity to position themselves behind cover.

    B.     After RPD Officers gave commands to LOPEZ, he put his visibly empty hands up in submission and then he was shot.

    C.     The RPD Officers had the opportunity to give Plaintiff LOPEZ a deadly force warning prior to the use of deadly force.  The RPD Officers failed to give a deadly force warning prior to the use of deadly force.

    D.     The RPD Officers were not at risk of immediate death or serious bodily injury based on Plaintiff LOPEZ'S actions; and no other person was at risk of immediate death of serious bodily injury based on Plaintiff LOPEZ'S actions.

    E.     The RPD Officers, and other present RPD Officers were armed with less-lethal force options.

    F.     The amount and/or type of force used was the highest level of force and officer could have used.

    G.     Plaintiff LOPEZ was never actively resisting arrest or attempting to evade arrest by flight; and

    H.     The Defendant RPD Officers failed to de-escalate the situation.

/ / /

/ / /

/ / /

/ / /

**FIRST CLAIM FOR RELIEF**

**Fourth Amendment Unreasonable Seizure**

**Excessive Force (42 U.S.C. § 1983)**

(By Plaintiff against Defendants EVAN WRIGHT, and DOES 1-10, inclusive)

26.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 25 of this Complaint with the same force and effect as if fully set forth herein.

27.   The Fourth Amendment to the United States Constitution guarantees all persons the right to be free from excessive force by peace officers.  Statute 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

28.   On January 26, 2021, Defendants WRIGHT and DOES 1-10, inclusive, seized LOPEZ by firing multiple gunshots at LOPEZ, striking him in multiple places.

29.   Defendant WRIGHT issued no warnings before he shot LOPEZ, failed to employ reasonable alternatives to the use of deadly force, and failed to de-escalate the situation.

30.   At all times prior to the deployment of multiple gunshots fired at LOPEZ: Defendant WRIGHT and all other officers and persons were not at risk of immediate death or serious bodily injury based on LOPEZ'S actions; Defendant WRIGHT had time to issue a deadly force warning to LOPEZ prior to using deadly force but failed to do so; Defendant WRIGHT was armed with less-lethal force options; it was feasible for Defendant WRIGHT to utilize those less-lethal force options; and Defendant WRIGHT failed to exhaust all reasonable less-lethal force options.

31.   The use of deadly force by the Defendant WRIGHT violated LOPEZ'S right to be free from excessive force by peace officers, which is guaranteed to him by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment when he shot LOPEZ several times, seriously injuring him.

32.   The conduct of Defendant WRIGHT was malicious, oppressive and in reckless disregard for the rights and safety of LOPEZ (and nearby bystanders) and

warrants the imposition of exemplary and punitive damages as to Defendant WRIGHT.

33.    LOPEZ seeks compensatory and punitive damages.

34.    Plaintiff also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## SECOND CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom or Policy
### (42 U.S.C. §1983)

(By Plaintiff against Defendants CITY; and DOES 9-10)

35.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 34 of this Complaint with the same force and effect as if fully set forth herein.

36.    A municipality is liable for the constitutional deprivations of an individual where its officials or employees, acting under color of law, deprived a person of their particular rights under the constitution and where either: the officials or employees acted pursuant to an adopted policy, custom, or practice; the acts of a final policy maker deprived a person of their constitutional rights by knowing about and approving of an employees' acts or omissions; or the constitutional deprivations were a result of the municipality's failure to train its employees to handle the usual and recurring situations with which they must deal. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

37.    On and for some time prior to and after January 26, 2021 (and continuing to the present date), the Defendant CITY deprived Plaintiff and other members of the public of their rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution by knowingly maintaining, enforcing and applying an official custom, policy, and practice of:

    A.    Employing and retaining CITY Police Officers, including Defendant WRIGHT and other RPD Officers, who the Defendant CITY at all

times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written CITY RPD policies concerning the use of deadly force.

B.      Inadequately supervising, training, controlling, assigning, and disciplining CITY Police Officers, including the Defendant WRIGHT, concerning the use of deadly force.

C.      Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by Defendant WRIGHT, and other CITY police officers.

D.      Ratifying the misconduct and unlawful uses of excessive force by CITY Officers, including Defendant WRIGHT and other CITY police officers (including but not limited to the misconduct and excessive force used by Defendant WRIGHT against LOPEZ on January 26, 2021).

E.      Failing to discipline Defendant WRIGHT and other CITY Officers for conduct contrary to law and departmental policy (including, but not limited to the misconduct and excessive force used by Defendant WRIGHT against LOPEZ on January 26, 2021, and the false statements and material omissions in the reports of Defendant WRIGHT and other RPD Officers).

F.      Failing to re-train Defendant WRIGHT and other CITY Officers concerning the use of force and responding to calls for medical care despite the fact that complaints of excessive force and false statements have been filed against CITY Officers with the CITY, in the Superior Courts and in the District Courts.

G.      Failing to properly investigate claims of excessive force and false statements or reports by CITY Police Officers.

H.      Conspiring to give a false account of the incident to attempt to justify the use of excessive force.

I.      Encouraging, accommodating, or facilitating a "thin blue line," "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which CITY police officers do not report other officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing.

J.      Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

K.      By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which also is demonstrated by inadequate training regarding these subjects.  The policies, customs, and practices of CITY were done with a deliberate indifference to individuals' safety and rights.

38.    Failing to adequately train, discipline, retrain, and investigate concerning allegations and incidents of excessive force by CITY Officers, in combination with CITY'S ratification of said complaints and incidents, has given rise to a culture of impunity within the CITY Police Department.  The CITY'S actions and inactions have caused CITY Officers to disregard proper police procedures and the law concerning the use of force in the exercise of their authority as peace officers and during their day-to-day interactions with civilians.

39.    Upon information and belief, Defendant CITY'S history of unconstitutional policies include and are demonstrated by the following:

A.      On June 26, 2017, Nicole Onstad was brutally thrown to the ground by members of the Riverside Police Department despite the fact she presented no threat to the officers or anyone else and was complying with their

commands.  Ms. Onstad was then taken to the jail, where she was left handcuffed for hours.  Ms. Onstad suffered serious injuries as a result of the excessive use of force.

B.     On January 7, 2015, Ty Calhoun was yanked her by her right wrist and the back of her hair and forcibly and violently slammed into the concrete by officers with the Riverside Police Department, resulting in her head contacting the ground and causing significant pain and injury to her wrist and head, as well as causing her to break her knee.  Her injuries were so severe that she required surgery.

C.     On August 13, 2013, Riverside Police Department officers fired a beanbag shotgun at Nagy Salib, tackled him, and kicked him despite the fact he presented no threats to the officers or anyone else and was complying in all respects with the officer's commands.  A jury found the officer's actions were excessive.  The Riverside Police Department found the officer's actions were within department policy, notwithstanding the jury's verdict.

D.     On December 21, 2011, Riverside Police Department officers escalated a stop to shooting Michael Easley three times in the back paralyzing him.  Upon information and belief, the City of Riverside found that the officers' actions were within policy, did not reprimand, punish, terminate from employment, retrain, or provide additional training to the officers involved in the incident.  After years of litigation, the civil rights lawsuit settled for seven figures.

40.     The CITY'S actions and inactions as described above, including the Defendant CITY'S unconstitutional customs, practices, and polices, caused the deprivation of Plaintiff's rights by Defendant Officers; that is, Defendant CITY'S unconstitutional customs, practices, and polices are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

COMPLAINT FOR DAMAGES

41.     By reason of the aforementioned policies and practices of Defendant CITY, LOPEZ was severely injured and subjected to pain and suffering.

42.     Plaintiff seeks compensatory damages reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## THIRD CLAIM FOR RELIEF

### Municipal Liability for Ratification

### (42 U.S.C. §1983)

(By Plaintiff against Defendants CITY; and DOES 9-10)

43.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.     Defendant WRIGHT acted under color of law.

45.     The acts of Defendant WRIGHT deprived LOPEZ of his particular rights under the United States Constitution.

46.     Upon information and belief, a final policymaker, including Defendants CITY and DOES 9-10, acting under color of law, have a history of ratifying unreasonable uses of force, including deadly force.

47.     Upon information and belief, a final policymaker, including Defendants CITY and DOES 9-10, acting under color of law, had final policymaking authority concerning the acts of Defendant WRIGHT, and ratified Defendant WRIGHT'S acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of Defendant WRIGHT'S acts.

48.     Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendant WRIGHT were "within policy."

49.     The Defendant CITY'S unconstitutional ratification of Defendant WRIGHT'S use of excessive and unreasonable force caused the deprivation of Plaintiff's rights; that is, Defendant CITY'S ratification is so closely related to the

deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

50.     Upon information and belief, Defendant CITY'S history of ratification of unconstitutional conduce of its officers includes:

A.     On June 26, 2017, Nicole Onstad was brutally thrown to the ground by members of the Riverside Police Department despite that she presented no threat to the officers or anyone else and was complying with their commands.  Ms. Onstad was then taken to the jail, where she was left handcuffed for hours.  Ms. Onstad suffered serious injuries as a result of the excessive use of force.

B.     On January 7, 2015, as Ty Calhoun was yanked her by her right wrist and the back of her hair and forcibly and violently slammed into the concrete by officers with the Riverside Police Department, resulting in her head contacting the ground and causing significant pain and injury to her wrist and head, as well as causing her to break her knee.  Her injuries were so severe that she required surgery.

C.     On August 13, 2013, Riverside Police Department officers fired a beanbag shotgun at Nagy Salib, tackled him, and kicked him despite that he presented no threats to the officers or anyone else and was complying in all respects with the officer's commands.  A jury found the officer's actions were excessive.  The Riverside Police Department found the officer's actions were within department policy notwithstanding the jury's verdict.

D.     On December 21, 2011, Riverside Police Department officers escalated a stop to shooting Michael Easley three times in the back paralyzing him.  Upon information and belief, the City of Riverside found that the officers' actions were within policy, did not reprimand, punish, terminate from employment, retrain, or provide additional training to the officers involved in

the incident.  After years of litigation, the civil rights lawsuit settled for seven figures.

51.     By reason of the aforementioned acts and omissions, Plaintiff has and will experience financial loss, pain and suffering, and loss of earning capacity.

52.     Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

53.     Plaintiff seeks compensatory damages reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train

### (42 U.S.C. §1983)

(By Plaintiff against Defendants CITY; and DOES 9-10)

54.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55.     Defendant WRIGHT acted under color of law.

56.     The acts of Defendant WRIGHT deprived LOPEZ of his particular rights under the United States Constitution.

57.     On information and belief, CITY failed to properly and adequately train Defendant WRIGHT and other RPD Officers, including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force.

58.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of less than lethal and lethal force.

59.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

60.     The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiff's rights; that is, Defendant CITY'S failure to train is so closely

related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

61.     Upon information and belief, Defendant CITY'S history and demonstration of its failure to adequately train its officers includes:

A.     On June 26, 2017, Nicole Onstad was brutally thrown to the ground by members of the Riverside Police Department despite that she presented no threat to the officers or anyone else and was complying with their commands.  Ms. Onstad was then taken to the jail, where she was left handcuffed for hours.  Ms. Onstad suffered serious injuries as a result of the excessive use of force.

B.     On January 7, 2015, as Ty Calhoun was yanked her by her right wrist and the back of her hair and forcibly and violently slammed into the concrete by officers with the Riverside Police Department, resulting in her head contacting the ground and causing significant pain and injury to her wrist and head, as well as causing her to break her knee.  Her injuries were so severe that she required surgery.

C.     On August 13, 2013, Riverside Police Department officers fired a beanbag shotgun at Nagy Salib, tackled him, and kicked him despite that he presented no threats to the officers or anyone else and was complying in all respects with the officer's commands.  A jury found the officer's actions were excessive.  The Riverside Police Department found the officer's actions were within department policy notwithstanding the jury's verdict.

D.     On December 21, 2011, Riverside Police Department officers escalated a stop to shooting Michael Easley three times in the back paralyzing him.  Upon information and belief, the City of Riverside found that the officers' actions were within policy, did not reprimand, punish, terminate from employment, retrain, or provide additional training to the officers involved due

COMPLAINT FOR DAMAGES

to the incident.  After years of litigation, the civil rights lawsuit settled for seven figures.

62.     By reason of the aforementioned acts and omissions, Plaintiff has and will experience pain and suffering, and loss of earning capacity.

63.     Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

64.     Plaintiff seeks compensatory damages reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

## FIFTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §820 and California Common Law)

#### (By Plaintiff against all Defendants)

65.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66.     Defendant WRIGHT, while working as a CITY Police Officer and acting within the course and scope of his employment, intentionally shot LOPEZ several times.  The use of force by Defendant WRIGHT against LOPEZ was unreasonable and LOPEZ did not consent to such force.

67.     Defendant WRIGHT used excessive and unreasonable deadly force on Plaintiff LOPEZ when he shot LOPEZ without a warning, without an immediate defense of life situation, and while there were other reasonable options available.

68.     As a direct and proximate result of the actions of Defendant WRIGHT, LOPEZ suffered severe pain and suffering, harm, injuries, and damages.

69.     CITY is vicariously liable for the wrongful acts of the individual defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

70.     The conduct of Defendant WRIGHT was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff, individually, to an award of exemplary and punitive damages.

71.     Plaintiff seeks general and special damages, including punitive damages to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code §820 and California Common Law)

(By Plaintiff against All Defendants)

72.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 71 of this Complaint with the same force and effect as if fully set forth herein.

73.     The actions and inactions of Defendant WRIGHT were negligent and reckless, including, but not limited to:

A.     The failure to properly and adequately assess the need to use force against LOPEZ in order to effectuate a seizure.

B.     The failure to properly and adequately assess the need to use force and deadly force against LOPEZ.

C.     The negligent pre-shooting tactics and handling of the situation with LOPEZ, including, but not limited to: negligent planning; negligent command and control; negligent positioning; negligent communication with other officers as well as with LOPEZ; negligent mental and emotional attitude; negligent failure to de-escalate and decompress; negligent failure to contain; and negligent failure to control subjective fear.

D.     The negligent supervision and control of officers.

E.     The negligent manner in which information was misstated and omitted from police reports following the incident.

F.    The failure to properly train and supervise employees, both professional and non-professional, including the failure to properly and adequately assess the need to use force and deadly force against LOPEZ.

G.    The negligent use of force against LOPEZ.

74.    As a direct and proximate result of Defendant WRIGHT'S conduct, including both pre and post-shooting as alleged above, and other undiscovered negligent conduct, LOPEZ was caused to suffer severe pain and suffering.

75.    CITY is vicariously liable for the wrongful acts of the Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

76.    Plaintiff seeks damages, including both general and special damages to be proven at trial under this claim.

## SEVENTH CLAIM FOR RELIEF

### Violation of Cal. Civ. Code § 52.1 and California Common Law

(By Plaintiff against All Defendants)

77.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 76 of this Complaint with the same force and effect as if fully set forth herein.

78.    The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement.  California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims.  *See Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995).  "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1."  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976

(2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

79.   Defendant WRIGHT violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures when they used excessive and unreasonable force against him.  Defendant WRIGHT specifically intended to violate Plaintiff's constitutional rights as stated above, as demonstrated by Defendant WRIGHT'S reckless disregard for Plaintiff's constitutional rights.  Thus, Plaintiff can recover for violation of the Bane Act.  *See Reese v. County of Sacramento*, 888 F.3d 1030, 1040-45 (2018).

80.   The Defendant Officers violated LOPEZ'S Fourth Amendment right to be free from unreasonable seizures when they used excessive and unreasonable force.

81.   LOPEZ was caused to suffer severe pain and suffering for which he is entitled to recover damages.

82.   The conduct of Defendant WRIGHT was a substantial factor in causing the harm, losses, injuries, and damages of LOPEZ.

83.   CITY is vicariously liable for the wrongful acts of the Defendant Officers pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's acts would subject him or her to liability.

84.   The conduct of Defendant WRIGHT was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of LOPEZ, entitling him to an award of exemplary and punitive damages.

85.   Plaintiff seeks damages under this claim, as well as costs and attorneys' fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants CITY OF RIVERSIDE, EVAN WRIGHT, and DOES 1-10, inclusive, as follows:

     A.    For compensatory damages under federal and state law in an amount to be proven at trial.

     B.    For past and future physical pain and mental suffering.

     C.    For past and future loss of income, loss of earning capacity, and lost profits.

     D.    For punitive damages against the individual Defendant Officers in an amount to be proven at trial.

     E.    For interest.

     F.    For reasonable costs of this suit and attorneys' fees under state and federal law.

     G.    For such further relief at law or equity as the Court or jury may deem just and appropriate.

DATED:  December 23, 2021        **LAW OFFICES OF DALE K. GALIPO**
                                       **LAW OFFICES OF GRECH & PACKER**

                      By:   */s/ Dale K. Galipo*
                               Dale K. Galipo
                               Trenton C. Packer
                               Marcel F. Sincich
                               *Attorneys for Plaintiff*

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED:  December 23, 2021           **LAW OFFICES OF DALE K. GALIPO**
                                    **LAW OFFICES OF GRECH & PACKER**


                              By:   */s/ Dale K. Galipo*
                                    _____
                                    Dale K. Galipo
                                    Trenton C. Packer
                                    Marcel F. Sincich
                                    *Attorneys for Plaintiff*