**O**

# United States District Court
# Central District of California

XAVIER LOPEZ,

          Plaintiff,

   v.

CITY OF RIVERSIDE; et al.,

          Defendants.

Case № 5:21-cv-02140-ODW (JEMx)

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [19]**

## I.    INTRODUCTION

Plaintiff Xavier Lopez brings this excessive force action against Defendants the City of Riverside (the "City") and one of its police officers, Evan Wright, based on allegations that Wright used unreasonable deadly force when he fired multiple shots at Lopez while trying to arrest him.  Defendants move for summary judgment on all seven of Lopez's claims.  (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 19.) The Motion is fully briefed.  (*See* Opp'n, ECF No. 26; Reply, ECF No. 34.)  The Court heard argument from the parties on June 22, 2022.  (Min., ECF No. 37.)  As discussed below, genuine disputes of material fact preclude summary judgment as to all claims and the Court **DENIES** Defendants' Motion.

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted.   Lopez has a criminal record and has been incarcerated for prior criminal convictions.   (Defs.' Separate Statement Undisputed Material Facts ("DSUF") 1–2, ECF No. 19-1.)   In August 2020, Lopez was paroled from custody.   (DSUF 3.)

Defendants contend that, on September 15, 2020, Lopez failed to report to his parole officer; Lopez disputes this.   (DSUF 8; (Pl.'s Statement Genuine Disputes ("PSGD") 8, ECF No. 26-2.)   On September 16, 2020, a "parolee-at-large" warrant issued for Lopez's arrest and on September 21, 2020, Lopez was arrested.   (DSUF 8, 11, 13.)   On October 15, 2020, he was released from custody.   (DSUF 14.)   On December 29, 2020, another warrant issued for Lopez's arrest because, according to Defendants, Lopez's parole officer could not locate him.   (DSUF 15.)   Lopez disputes that his parole officer could not locate him.   (PSGD 15.)   On January 17, 2021, Riverside Police Department ("RPD") Officer Ransom De Castro responded to a call at the residence of Carina Avila, Lopez's ex-girlfriend, during which Avila reported that Lopez had "unlawfully entered her bedroom in her residence" and "lifted his shirt and exposed a black semiautomatic handgun," causing Avila to fear for her life. (DSUF 16.)   Lopez disputes the "nature and facts" of the January 17, 2021 incident. (PSGD 16.)

On January 19, 2021, RPD Officer Moses Prado spotted Lopez at a gas station and unsuccessfully attempted to detain him leading to a pursuit.   Officer Prado ultimately was unable to apprehend Lopez.   (DSUF 18–20.)   Prado then contacted Officer Wright of the RPD Multi-Enforcement Tactical Response Operations Team ("METRO")—a team tasked with apprehending typically violent fugitives—to assign resources to apprehend Lopez.   (DSUF 22, 26.)   Wright reviewed the information concerning Lopez, including Prado's police report, Lopez's criminal history, and the outstanding warrant for Lopez's arrest.   (DSUF 28–29.)

Avila assisted Wright in locating Lopez by informing Wright that Lopez planned on returning to Avila's home on January 26, 2021, at 4:00 p.m. (DSUF 39.) On that date, the METRO team set up surveillance near Avila's residence with the objective of arresting Lopez. (DSUF 41, 43, 44.) After approximately twenty minutes of surveilling the area, the officers identified Lopez exiting his vehicle in front of Avila's residence. (DSUF 47–49.) Wright drove his vehicle towards Lopez's location, stopping his vehicle just in front of Lopez, before he could enter Avila's residence. (DSUF 49–50.) According to Defendants, Wright parked and exited his vehicle with his duty weapon drawn, and verbally addressed Lopez by stating "Hey, Xavier, it's the cops, take your hands out of your pockets, bro, hands up, hands up, don't move, don't move." (DSUF 51.) Lopez disputes this, asserting that Wright was still in his running vehicle when he addressed Lopez and that Wright never said, "Hands up, hands up, don't move, don't move." (PSGD 51.)

According to Defendants, Lopez did not comply with Wright's commands, did not appear to be willing to cooperate, and, at that time, Lopez reached across his chest with his right hand, put it in his trench coat left breast pocket, which is when Wright claims to have seen the butt of a firearm in Lopez's hand as he began to remove his partially concealed hand from the inside of his trench coat. (DSUF 53–55.) Lopez argues that he immediately complied with Wright by putting his hands in the air, with his fingers spread out to show that he was not a threat and that his hands were empty. (PSGD 53–55.) Wright fired two shots in quick succession at Lopez, hitting him in the chest and abdomen. (DSUF 57.) According to Defendants, Wright notified everyone that Lopez had a gun while Wright fired the two shots. (*Id.*) However, according to Lopez, Wright did not make this statement until after he fired both shots at Lopez and Lopez had fallen to the ground. (PSGD 57.) It was then that Wright saw that Lopez's hands were empty. (DSUF 59.) The officers secured Lopez discovering his gun in his coat. Defendants then administered first aid to Lopez. (DSUF 60.)

Lopez filed this civil suit against Defendants, alleging: (1) Wright used excessive force against Lopez in violation of 42 U.S.C. § 1983; (2) the City has an unlawful custom and practice of using excessive force in violation of 42 U.S.C. § 1983 (*Monell* claim); (3) the City has unlawfully ratified such custom or practice in violation of § 1983 (*Monell* claim); (4) the City has unlawfully failed to train its police officers in violation of § 1983 (*Monell* claim); and—against both Defendants—the following state law claims: (5) battery; (6) negligence; and (7) violation of the Bane Act (Cal. Civ. Code § 52.1). (*See* Compl., ECF No. 1.)

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466,

1468 (9th Cir. 1987).  A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment, as is "uncorroborated and self-serving" testimony."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Courts should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

## IV.   PRELIMINARY MATTERS

The Court addresses the parties' various evidentiary objections and requests for judicial notice as follows.

### A.   Evidentiary Objections

Lopez raises numerous objections to the facts and evidence presented in Defendants' Statement of Undisputed Facts.  (Pl.'s Objs. DSUF, ECF No. 26-1.) Most of these objections assert that Defendants' facts are compound, overbroad, unfairly prejudicial, not relevant, or argumentative.  When analyzing motions for summary judgment, this Court typically finds these objections unnecessary and not useful because they "are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Accordingly, the Court **OVERRULES** all such objections.  (Pl.'s Objs. DSUF.)

Lopez also raises several objections to Defendants' references to, and exhibits derived from, Lopez's criminal record and other documents pertaining to Lopez's criminal history (e.g., police reports, criminal hearing transcripts, warrants, etc.) prior to the shooting that is the subject of this litigation.  For these references and exhibits, Lopez asserts the aforementioned boilerplate objections but also argues that these

constitute inadmissible character evidence and inadmissible hearsay.  As explained below, Defendants' Motion can be resolved without considering Lopez's prior criminal history, including the specific events leading up to the shooting.  Moreover, only the historical records of Lopez of which the responding officers were aware are relevant.  Because the Court need not resolve these objections at this time, the Court also **OVERRULES** Lopez's remaining objections.  (*Id.*)

Defendants similarly object to Lopez's evidence used to support his Opposition, including certain clips of police body camera footage (Defendants argue this is duplicative of the footage they provided), stills derived from that footage (Defendants argue this is not the "best evidence"), and an interview with Wright (Defendants argue it is misleading and not relevant).  (Defs.' Objs. Pl.'s Statement Additional Facts, ECF No. 32.)   In its analysis, the Court does not reference or consider Wright's interview, and finds it unnecessary to rely on Lopez's footage to resolve the Motion.  Thus, the Court **OVERRULES** Defendants' objections.  (*Id.*)

### B.     Requests for Judicial Notice

Additionally, Defendants request judicial notice of five exhibits comprised of various documents related to Lopez's criminal history, including copies of three separate criminal case dockets, a petition to revoke parole, and an arrest warrant. (Defs.' Notice Lodging & Req. Judicial Notice 2–3, ECF No. 20.)  As stated above, the Court does not need to consider Lopez's criminal history to resolve Defendants' Motion.  Thus, the Court **DENIES** as **MOOT** Defendants' request for judicial notice of these five exhibits.  (*Id.*)

Finally, Defendants request judicial notice for the fact that "the City of Riverside is a California charter city and Municipal Corporation, a California entity." (*Id.* at 3.)  Although this fact is relevant to Defendants' argument regarding municipal liability, as explained below, the Court rejects this argument because it is based on the presumption that the Court is granting qualified immunity, which is not the case. Thus, this fact regarding the City's status as a California charter city is not necessary

to the Court's resolution of Defendants' argument regarding municipal liability. Accordingly, the Court also **DENIES** as **MOOT** Defendants' request for judicial notice of this fact.  (*Id.*)

## V.    DISCUSSION

Defendants now seek summary judgment on the basis that Wright's conduct was objectively reasonable—and therefore not a constitutional violation—thereby entitling him to qualified immunity. (Mot. 15.)  Defendants argue that, pursuant to *Monell v. Department of Social Services.*, 436 U.S. 658 (1978), a finding of no constitutional violation or qualified immunity for Wright precludes a finding of the City's liability under § 1983. (Mot. 17.)  Finally, Defendants argue that the objective reasonableness of Wright's conduct also precludes Lopez's state law claims. (Mot. 18.)  As explained below, the Court finds that genuine issues of material fact preclude summary judgment as to all claims.

### A.    Excessive Force — Qualified Immunity

Lopez asserts an excessive force claim against Wright, based on Wright's use of deadly force when shooting Lopez.  (*See* Compl.)  Defendants contend they are entitled to summary judgment on Lopez's excessive force claim because the uncontroverted evidence shows Wright's use of force does not constitute a constitutional violation under the circumstances.  (Mot. 15–16.)  Defendants argue that the force used was objectively reasonable, thereby entitling Defendants to qualified immunity.  (*Id.*)  Defendants alternatively argue that even if a jury could find Wright's use of force was not objectively reasonable and therefore, is a constitutional violation, Wright is nevertheless entitled to qualified immunity because there was no clearly established fact-specific precedent at the time of the incident putting him on notice that his conduct was a constitutional violation.  (Mot. 16–18.)

"The Supreme Court has explained that '[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  In determining whether qualified immunity applies, the Ninth Circuit first determines "whether the officers actually violated a constitutional right based on the record and plaintiffs' alleged facts."  *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020).  If the court finds that "no constitutional right was violated, then no further analysis is required."  *Id.*  However, if the court finds "that the officers did violate a constitutional right [it would] then need to proceed to the second step of the inquiry to decide if the constitutional right 'was clearly established at the time of [the officers'] alleged misconduct.'"  *Id.* (second alteration in original) (quoting *Pearson*, 555 U.S. at 232).

>    1.    *Constitutional Violation*

"Because apprehending a suspect through the use of deadly force is considered a Fourth Amendment seizure of the person, [courts] must determine if the officers acted in an objectively reasonable manner when they [used] deadly force or if they violated [the suspect's] right to be free from unreasonable seizures."  *Id.* at 1157. Applying the holdings of *Graham v. Connor*, 490 U.S. 386 (1989), the Ninth Circuit analyzes reasonableness by "considering the nature and quality of the alleged intrusion" and "the governmental interests at stake, by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight" (the "*Graham* factors").  *Mattos*, 661 F.3d at 441 (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001)); *see Graham*, 490 U.S. at 396.  Notably, the fact that the suspect was armed—or even reasonably believed to be armed—with a deadly weapon does not render the officers' response per se reasonable under the Fourth Amendment.  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

In light of the above, "[w]here the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is 'a question of fact best resolved by a jury.'"  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003)).  As such, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Id.* at 1125.

There are genuine disputes of material fact as to at least two *Graham* factors which preclude summary judgment on the excessive force claim.  Specifically, the parties dispute facts material to: (1) whether Lopez posed an immediate threat of harm to the officers or others, which is the most significant factor, and (2) whether Lopez was actively resisting arrest or evading arrest by flight.  *See Mattos*, 661 F.3d at 441; *see also Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc) (finding whether plaintiff posed a threat to be the most important of the *Graham* factors), *cert. denied*, 545 U.S. 1128 (2005).  Thus, the Court does not consider the remaining factor (severity of the crime at issue) and denies Defendants' Motion based on these two genuine disputes of material fact.

### a.   *Whether Lopez Posed an Immediate Threat*

Defendants argue that Lopez posed an immediate threat to the officers and others because, when Wright approached Lopez and verbally addressed him, Lopez did not comply with Wright's commands and "did not appear willing to comply at that time."  (DSUF 53.)  Instead, Defendants argue, Lopez "reached across his chest with his right hand, [and] put it in his trench coat left breast pocket."  (DSUF 54.)  Defendants contend that Lopez began to remove his partially concealed hand from his coat when Wright saw the butt of Lopez's firearm in that hand.  (DSUF 55.)  Wright believed Lopez was going to kill him or another officer.  (DSUF 58.)  At that time, Defendants argue, Wright stopped his forward approach, retreated, and then fired his gun at Lopez to protect himself, the other officers, and any civilians that may have been nearby.  (DSUF 55–56.)  Defendants state that Wright notified

everyone that Lopez had a gun while firing his shots at Lopez.   (DSUF 57.) Defendants support these contentions by citing to the declaration testimony and body camera footage of Wright and other officers on the scene, and an RBD publicly-released video announcement regarding the incident, (*see* Defs.' Notice Manual Filing, ECF No. 21; Decl. Ryan Railsback ¶ 3, Ex. 7 ("Critical Incident Video"), ECF No. 19-6).

Lopez disputes these contentions.   First, Lopez argues that he "immediately complied [with Wright] by putting his hands in the air, fingers spread out to clearly show that he was not a threat and that his hands were empty and demonstrating the universal sign of submitting to the police."   (PSGD 53.)   Lopez argues he neither failed to comply with Wright's commands nor removed his gun from his coat. (PSGD 88–89.)   Specifically, Lopez "never made any fast or furtive movement that would indicate an intention to use a weapon against anyone but intentionally took [his] hands out of [his] pockets and raised his visibly empty hands in the air in compliance."   (PSGD 89.)   Lopez contends that despite his hands being clearly visible and empty, Wright never retreated and instead fired two shots at Lopez, hitting him in the chest and abdomen.   (PSGD 56–57; *see* Opp'n 6.)   According to Lopez, Wright did not announce that Lopez had a gun until after Lopez "fell face first to the ground."   (PSGD 57.)   Lopez supports his contentions by citing to some of the same evidence on which Defendants rely, that is, the declarations and body camera footage of Wright and other officers on the scene and the Critical Incident Video. Lopez also relies on his own deposition testimony.

Wright's body camera footage, as originally provided by Defendants, appears to most clearly and accurately depict the events that transpired.   (*See* Defs.' Notice Manual Filing; Decl. Evan D. Wright ("Wright Decl.") ¶ 17, Ex. 4 ("Wright BC Footage"), ECF No. 19-3.)   The remaining evidence, including the various deposition testimonies, the other officers' body camera footage, and the Critical Incident Video add little to no additional detail or clarity to this account.   (*See* Decl. Robert Monreal

¶ 11, Ex. 5, ECF No. 19-4; Decl. Henry S. Park ¶ 11, Ex. 6, ECF No. 19-5; Critical Incident Video.)  Thus, focusing on the Wright BC Footage, the Court observes the following:

- At approximately 0:48, while driving the police vehicle toward Lopez, Wright opens the driver door and begins exiting the vehicle;
- By approximately 0:51, Wright has exited the vehicle and is facing Lopez who is standing approximately ten feet away, facing toward Wright; Lopez has both hands up together toward the center of his chest and appears to be holding the lapels of his coat together;
- By approximately 0:52, Lopez's left hand is still holding the left front panel of his coat, but his right hand is now no longer fully visible and appears to be under the left breast panel of his coat; at this time, Wright clearly has his gun drawn and pointed at Lopez;
- From 0:52 to 0:54, Wright moves quickly toward Lopez, with his weapon still drawn and pointed at Lopez;
- At approximately 0:53, Lopez withdraws his hand from beneath the inside of his coat, holding a small unidentifiable black object down toward his chest;  Lopez then appears to push the object back into his inside coat pocket; notably, Lopez does not appear to grab for, clutch, withdraw the object or point the object at anyone; the object disappears from view almost immediately;
- At approximately 0:54, Lopez removes his partially concealed right hand from his coat, so that both hands are now completely visible and empty; instantaneously, Wright reaches his empty left hand out toward Lopez;
  - From approximately 0:49 to 0:54—or, from the time Wright begins opening his vehicle door to exit until the time Wright moves quickly toward Lopez—Wright states, "Hey Xavier, it's the cops, you gotta take your hands out of your pockets bro, hands up, hands up";
- By 0:55, both Lopez's hands are completely visible, held up by his head, fingers spread apart and empty; in this moment, Wright puts his left hand on his weapon so that he is holding it with both hands and appears ready to fire;

- Within milliseconds, still at 0:55, Wright fires his first shot at Lopez; Lopez immediately clutches his abdomen and begins falling to the ground; simultaneously, Wright fires his second shot at Lopez;
- By 0:57, Lopez has fallen to the ground with both hands clearly visible and empty.

Although the parties do not dispute that Lopez had a gun in his coat, Lopez's gun never fully or clearly appears in the footage, and to the extent it does, Lopez never appears to be actually holding it or pointing it, which suggests Lopez did not remove the gun from his coat but at most, merely pushed the gun back into his coat after it began to fall out. Significant to the Court's analysis, there are at least two full seconds wherein Lopez's hands are clearly in the air and visibly empty before Wright fires the first shot.

Accordingly, the Court's review of the Wright BC Footage supports both Defendants' and Lopez's accounts of the shooting. Thus, a reasonable jury could watch the Wright BC Footage and conclude Lopez's left hand was not fully visible, Lopez did not comply with Wright's commands, and Lopez appeared to reach inside his coat for a weapon. But a reasonable jury could also watch this footage and conclude Lopez's hands were clearly empty at all times, Lopez complied with Wright's commands and held his visibly empty hands in the air, and Lopez neither held nor appeared to reach for any weapon. Thus, the BC Footage does not blatantly contradict either version of the events and therefore does not resolve the factual inquiry of whether Lopez posed an immediate threat. *See A.G., 1-4 v. City of Fresno*, 804 F. App'x 701, 702 (9th Cir. 2020) (citing *Scott*, 550 U.S. at 381) (finding the court may "view[] the facts in the light depicted by the video[]" to the extent that it "blatantly contradict[s]" one party's version of the incident).

Thus, viewing these factual disputes in the light most favorable to Lopez as the non-movant, a reasonable jury could conclude that Lopez did *not* pose an immediate threat to anyone and Wright's deadly force was therefore *not* objectively reasonable. Accordingly, there is a genuine dispute of material fact precluding the Court from

resolving this factor—which is the most important factor in a *Graham* analysis—on summary judgment.

          *b.*   <u>Whether Lopez Was Attempting to Resist or Evade Arrest</u>

        The analysis as to whether Lopez was actively attempting to resist or evade arrest, in this case, is almost identical to the above immediate threat analysis. Citing to the same evidence described above, Defendants contend that Lopez resisted Wright's commands, "did not appear willing to comply at that time," and instead, revealed the butt of Lopez's firearm, therefore resisting or evading arrest. (Mot. 15; DSUF 53–55.) Conversely, again citing to the same evidence described above, Lopez argues that he immediately complied with Wright's commands by placing his visibly empty hands in the air. (PSGD 53–55.) Lopez also asserts that he did not attempt to run or flee, which the Wright BC Footage appears to confirm. (PSGD 86.) Nevertheless, as explained above, there is a genuine dispute of material fact as to whether Lopez complied with Wright's commands or reached for a weapon.

        Accordingly, the Court finds there is a genuine dispute of material fact as to whether Lopez was attempting to resist or evade arrest. Thus, the Court need not consider the remaining *Graham* factor of the severity of the crime Lopez committed. Additionally, the Court need not consider the additional, unofficial 'fourth factor' of a *Graham* analysis: whether Wright had alternative means of capturing Lopez.

        In view of the two critical disputes of material fact precluding a *Graham* analysis, the Court finds that Defendants are not entitled to summary judgment based on a lack of a constitutional violation.

          *2.*   *Clearly Established, Fact-Specific Precedent*

        Defendants alternatively argue that, even if they are not entitled to summary judgment based on the lack of a constitutional violation, they are nevertheless entitled to summary judgment on the excessive force claim because Lopez has no evidence to support the second step of the qualified immunity analysis: whether there was clearly established fact specific precedent that rendered Wright's use of deadly force against

Lopez unconstitutional.   Thus, the Court must determine whether the officers' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known."   *Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As discussed above, the Court finds that there are genuine disputes of material fact as to the circumstances surrounding Wright's use of deadly force against Lopez. Thus, the Court views all disputed facts in the light most favorable to Lopez, the non-movant.   Under this recitation of the facts, Lopez immediately and completely complied with Wright's commands to put his hands up, Lopez placed his visibly empty hands by his head, and never held or reached for a weapon.

Lopez cites to precedent rendering deadly force unconstitutional when used against a suspect who is complying with all officer orders, despite the suspect having a weapon.   (Opp'n 13, 15–16)[1]; s*ee C.V. by & through Villegas v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (finding that deadly force against a suspect was unreasonable and therefore, unconstitutional, when the suspect was complying with the officers' orders to drop his gun and did not point the gun at the officers or "mak[e] any move toward the trigger"); *Hayes v. County of San Diego*, 736 F.3d 1223, 1227–28 (9th Cir. 2013) (rendering as unconstitutional deadly force against a suspect, even when the suspect had a large knife in his hand, because it was not clearly established that the suspect was otherwise threatening the officers with the knife or evading arrest); *George*, 736 F.3d at 838 (rendering deadly force against a suspect as unconstitutional, despite the suspect having a pistol in his hand, because the suspect's pistol was pointed down and therefore was not a threat to the officers).

---

[1] Lopez also cites to *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022), wherein the Ninth Circuit denied a police officer qualified immunity when he shot a suspect who was armed with a bat-like weapon but was not otherwise threatening or attacking anyone. (Opp'n 16.)   However, this case was not published until after the shooting at issue here and thus cannot serve as notice to Wright that his conduct was unconstitutional.   Further, Lopez cites to a string of cases with facts that are clearly distinguishable from those in this case or that are not binding authority.   Nevertheless, Lopez identifies at least three cases (identified above) supporting his position that are timely, apposite, and binding.

Accordingly, if a jury resolves the above factual disputes in Lopez's favor—that is, if a jury finds that Lopez did comply with Wright's commands, did not reach for his weapon, and did not otherwise threaten the officers—there was clearly established, fact-specific precedent at the time of the shooting that renders Wright's deadly force unconstitutional.   The Court thus finds that Wright is not entitled to qualified immunity.

In summary, the Court finds that at least two genuine disputes of material fact preclude a finding that Wright acted with objective reasonableness, thereby precluding a finding of no constitutional violation.   Additionally, the Court finds that, if a jury resolves those disputes in favor of Lopez, there is clearly established fact-specific precedent that put Wright on notice that his conduct was unconstitutional, and Wright is therefore not entitled to qualified immunity.   Thus, the Court **DENES** Defendants' Motion as to Lopez's excessive force claim.

### B.   *Monell* Claims

Defendants also move for summary judgment on Lopez's § 1983 *Monell* claims and Lopez's state law claims as asserted against the City under a respondeat superior theory of liability.   Defendants contend they are entitled to summary judgment based on the conclusory argument that, under *Monell v. Department of Social Services.*, 436 U.S. 658 (1978), municipalities cannot be liable for such claims because there is no constitutional violation or, alternatively, "if Officer Wright enjoys qualified immunity."   As explained above, the Court finds that genuine disputes of material fact preclude a finding of no constitutional violation, and that Wright is not entitled to qualified immunity.   Accordingly, the Court **DENIES** Defendants' Motion as to Lopez's *Monell* claims and respondeat superior state law claims as asserted against the City.

### C.   State Law Claims

Finally, Defendants move for summary judgment as to Lopez's state law claims for battery, negligence, and violation of the Bane Act.   (Mot. 18–20.)

Defendants argue that these state law claims are "for all intents and purposes little more than a mirror image of [Lopez's] federal 'excessive force' claim" and therefore, "generally analyzed under the same reasonableness standard provided by federal law." (Mot. 18.)  Defendants contend that under the current state of the law, "a finding of reasonable conduct on the part of the officers under federal law will generally result in a similar finding as to related state claims." (Mot. 19.)  However, this argument is without merit because the Court finds that there is a genuine dispute of material fact as to the reasonableness of Wright's conduct.

Defendants also contend that a Bane Act claim is precluded by a finding of no constitutional violation on the part of the officer.  (Mot. 20.)  This argument again relies on the Court first finding that Wright did act with objective reasonableness and therefore did not commit a constitutional violation.  As stated above, there are at least two genuine disputes of material fact that preclude such a finding.  Thus, the Court **DENIES** Defendants' Motion for summary judgment as to Lopez's state law claims.

## VI.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion for Summary Judgment.  (ECF No. 19.)


**IT IS SO ORDERED.**

July 8, 2022

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**