**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| XAVIER LOPEZ,<br><br>      Plaintiff-Appellee,<br><br> v.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT,<br><br>      Defendants-Appellants,<br><br> and<br><br>DOES, 1 through 10, inclusive,<br><br>      Defendants. | No.   22-55723<br><br>D.C. No.<br>5:21-cv-02140-ODW-JEM<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted July 10, 2023
Pasadena, California

Before: SANCHEZ and MENDOZA, Circuit Judges, and DONATO,** District Judge.
Partial Dissent by Judge SANCHEZ.

---

    \*   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*   The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

During a tense police encounter, Officer Evan Wright shot Xavier Lopez twice. Mr. Lopez filed a 42 U.S.C. § 1983 claim, alleging that Officer Wright used excessive force and violated his Fourth Amendment rights. Officer Wright sought protection under qualified immunity and the district court denied that request. This appeal followed.[1] We affirm.

We review the denial of qualified immunity de novo. *See Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021). We must affirm the district court's denial if, after "resolving all factual disputes and drawing all inferences" in Mr. Lopez's favor, Officer Wright's conduct "(1) violated a constitutional right that (2) was clearly established at the time of the violation." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022).

1. To prove an excessive-force claim under the Fourth Amendment, Mr. Lopez must demonstrate that Officer Wright used unreasonable force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). An officer's use of deadly force is unreasonable if the officer did not have probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc).

---

[1] A denial of summary judgment is usually not an immediately appealable final decision, but that general rule does not apply when the summary judgment motion is based on a claim of qualified immunity. *See Foster v. City of Indio*, 908 F.3d 1204, 1209 (9th Cir. 2018) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014)).

When using deadly force, an officer must give the suspect a warning "whenever practicable," *id.* at 794, and must allow the suspect an opportunity to comply, *see, e.g.*, *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (finding an officer's use of deadly force to be objectively unreasonable when suspect was not given a warning or enough time to comply).

The district court found that Officer Wright responded to a police dispatch call, confronted Mr. Lopez, and ordered Mr. Lopez to take his hand out of his pocket. It appears that Mr. Lopez may not have initially complied with these commands and first reached for an object in his pocket. But as the district court found, and Officer Wright's body-cam footage confirms, Mr. Lopez had both hands empty and raised in the moments before he was fired upon. Despite Mr. Lopez appearing to comply with the officer's request, Officer Wright fired twice at Mr. Lopez. The district court thus concluded that a jury could reasonably find that, *at the moment* he was shot, (1) Mr. Lopez presented no immediate threat to Officer Wright and (2) Officer Wright's use of deadly force was a violation of Mr. Lopez's Fourth Amendment rights. *See Saucier v. Katz,* 533 U.S. 194, 206 (2001) (narrowing the Fourth Amendment and excessive force inquiry to "the moment" seizure was made); *Henderson v. Mohave Cnty.*, 54 F.3d 592, 594 (9th Cir. 1995) (same). Viewing the facts in Mr. Lopez's favor, we affirm this conclusion.

At what point Mr. Lopez began complying with the officer's instructions

and for how long, and whether he posed an immediate threat to officer safety, are triable questions for a jury to decide. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding that deadly force is not justified when a suspect no longer poses an immediate threat to the police or public).

2. We next determine whether Officer Wright violated a clearly established right. "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Plumhoff*, 572 U.S. at 778–79). At its core, the "clearly established" inquiry boils down to whether Officer Wright had "fair notice" that he acted unconstitutionally. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Again viewing the facts in Mr. Lopez's favor, we find that Officer Wright had fair notice that he should not have used deadly force. We have long held that an officer may not use deadly force against a suspect who does not pose an immediate threat. *See, e.g.*, *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others, or is fleeing and his escape will result in a serious threat of injury to persons."). Nor may an officer use deadly force when the suspect "appears to have been complying with [the

4

officer's] order to show his hands," was not "charging" the officer, and was "follow[ing] all orders . . . at the time [the suspect] was shot." *Hayes v. Cnty. of San Diego,* 736 F.3d 1223, 1233 (9th Cir. 2013); *see also C.V.*, 823 F.3d at 1256 (establishing unreasonable use of force in a similar situation).

Despite determining that Mr. Lopez failed to immediately comply with Officer Wright's requests and that he ultimately had a firearm on his person,[2] the district court found that Mr. Lopez had his hands in the air and was backing away *when* Officer Wright fired his first shot. On these facts, this finding is sufficient under our precedent to show that Officer Wright was put on notice that he could not use deadly force against a suspect, like Mr. Lopez, who appeared to be complying with officer commands and whose empty hands were raised before he was shot.

The dissent frames the legal question differently, asking whether Officer Wright was put on notice that he cannot use deadly force against a suspect reaching for a gun. This question, however, is not presented by the facts of our

---

[2] The dissent notes that Officer Wright's belief that Mr. Lopez was carrying a gun was ultimately proven "correct." But that fact has no bearing on the reasonableness of Officer's Wright's belief *at the time* he shot Mr. Lopez. *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *see also Tan Lam v. City of Los Banos*, 976 F.3d 986, 996 (9th Cir. 2020) ("The suspect's possession of a weapon at some point in the incident does not provide an officer with carte blanche to use deadly force.").

case. Officer Wright did not shoot Mr. Lopez as he was reaching in his jacket for what Officer Wright suspected to be a gun; he shot Mr. Lopez *after* he had lifted his hands in the air. The cases cited by the dissent are distinguishable on this fact alone. In *Cruz v. City of Anaheim*, we found that it was reasonable for five officers to simultaneously shoot a suspect who was ignoring the officers' commands and actively reaching for the waistband of his pants. 765 F.3d 1076, 1078 (9th Cir. 2014). In *Sabbe v. Washington County Board of Commissioners*, we found that it was reasonable for an officer to use deadly force against a suspect who appeared to be shooting and pointing a gun at the officers. 84 F.4th 808, 811 (9th Cir. 2023). Neither of these cases endorse Officer Wright's use of force against a suspect whose hands were empty and already raised.

The other two cases cited by the dissent support the majority's proposition that a suspect must have posed "an immediate threat" to justify the use of deadly force. *See Gonzalez*, 747 F.3d at 795 (interpreting Supreme Court precedent to hold that the most important factor in this analysis is the "immediacy of the threat" posed by a suspect); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (reversing a finding of qualified immunity because there was reasonable doubt regarding whether the suspect posed an immediate threat). *Gonzalez* was a unique situation in which an officer used deadly force to prevent a suspect from dangerously operating a vehicle, 747 F.3d at 805–06, and *George* involved a

suspect who may have been pointing a firearm directly at the officers. 736 F.3d at 832–33. Neither of these cases rebut the conclusion that Officer Wright had fair notice that he may not use deadly force against Mr. Lopez. *See Hayes,* 736 at 1232–35; *C.V.*, 823 F.3d at 1255–56.

As a final note, the Court recognizes that such encounters are tense and happen fast, and they must leave all participants riddled with indecision. Here, less than seven seconds elapsed between the time Officer Wright issued his first order and the time he fired his first shot. But in such moments, a life hangs in the balance, and the right decision must be made. In affirming the district court's denial of qualified immunity, the Court does not find that Officer Wright made the wrong decision, only that such questions are better left to juries.

Accordingly, the Court AFFIRMS the district court's denial of qualified immunity.[3]

**AFFIRMED.**

---

[3] Mr. Lopez's pending motion for judicial notice is DENIED as moot.

FILED

DEC 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Xavier Lopez v. City of Riverside*, No. 22-55723

SANCHEZ, Circuit Judge, dissenting in part:

    Officer Evan Wright shot Xavier Lopez moments after seeing Mr. Lopez reach into his coat pocket for an object the officer suspected was a firearm. Mr. Lopez ignored repeated commands to take his hands out of his pockets. The object Mr. Lopez was reaching for and holding in his coat pocket was, in fact, a loaded firearm. Milliseconds before Mr. Lopez was fired upon, he released the object and raised both hands in the air. The entire encounter—from officers announcing themselves to the shooting—lasted seven seconds.

    I agree with the majority that a jury could reasonably determine that Officer Wright used excessive force in violation of the Fourth Amendment. But no clearly established law put Officer Wright on notice that deadly force could not be used in these tense and rapidly evolving circumstances. If anything, our cases suggest the opposite: when an individual is "reasonably suspected of being armed," even "a furtive movement" can "create an immediate threat" sufficient to justify the use of deadly force. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).

    Because no clearly established legal precedent squarely governs the specific facts at issue in this case, I would reverse the district court's denial of qualified immunity and remand for further proceedings under Mr. Lopez's state law claims.

# I.

Officer Wright was part of a task force assigned to apprehend high-risk fugitives such as Mr. Lopez. Mr. Lopez had been convicted of several felonies, including assault with a firearm, and just the prior week had evaded arrest in a dangerous vehicular pursuit. Officers had reason to believe that Mr. Lopez was armed. Earlier that week, Mr. Lopez had brandished a semi-automatic handgun on his ex-girlfriend. Officers set up surveillance near the home of his ex-girlfriend with the objective of arresting Mr. Lopez.

Officer Wright's encounter with Mr. Lopez on January 26, 2021 was captured in its entirety by his bodyworn video camera, the authenticity of which is not disputed.[1] The District Court summarized the events depicted from Officer Wright's bodycam footage as follows:

1. At approximately 0:48, while driving the police vehicle toward Lopez, Wright opens the driver door and begins exiting the vehicle;

2. From approximately 0:49 to 0:54—or, from the time Wright begins opening his vehicle door to exit until the time Wright moves quickly toward Lopez—Wright states, "Hey Xavier, it's the cops, you gotta take your hands out of your pockets bro, hands up, hands up";

---

[1] Where, as here, video of the events is available, we "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). That is, we "consider the disputed facts in the light most favorable to [Lopez], alongside the undisputed facts and the video and audio recordings, which provide more than sufficient basis for reaching the legal conclusion that qualified immunity is warranted under the second step of the qualified immunity analysis." *Smith v. Agdeppa*, 81 F.4th 994, 1004 (9th Cir. 2023).

3. By approximately 0:51, Wright has exited the vehicle and is facing Lopez who is standing approximately ten feet away, facing toward Wright; Lopez has both hands up together toward the center of his chest and appears to be holding the lapels of his coat together;

4. By approximately 0:52, Lopez's left hand is still holding the left front panel of his coat, but his right hand is now no longer fully visible and appears to be under the left breast panel of his coat; at this time, Wright clearly has his gun drawn and pointed at Lopez;

5. From 0:52 to 0:54, Wright moves quickly toward Lopez, with his weapon still drawn and pointed at Lopez;

6. At approximately 0:53, Lopez withdraws his hand from beneath the inside of his coat, holding a small unidentifiable black object down toward his chest; Lopez then appears to push the object back into his inside coat pocket; notably, Lopez does not appear to grab for, clutch, withdraw the object or point the object at anyone; the object disappears from view almost immediately;

7. At approximately 0:54, Lopez removes his partially concealed right hand from his coat, so that both hands are now completely visible and empty; instantaneously, Wright reaches his empty left hand out toward Lopez;

8. By 0:55, both Lopez's hands are completely visible, held up by his head, fingers spread apart and empty; in this moment, Wright puts his left hand on his weapon so that he is holding it with both hands and appears ready to fire;

9. Within milliseconds, still at 0:55, Wright fires his first shot at Lopez; Lopez immediately clutches his abdomen and begins falling to the ground; simultaneously, Wright fires his second shot at Lopez;

10. By 0:57, Lopez has fallen to the ground with both hands clearly visible and empty.

I would add two other facts from the video recording that are not in dispute. Immediately after Officer Wright fired both shots, Officer Wright clearly stated, "He's got a gun" (at 0:57). And as officers initially searched Mr. Lopez while he lay on the ground, one officer announced, "Do not grab that gun dude, do not grab that gun" (at 1:13). Officers then located the firearm in Mr. Lopez's coat pocket a short time later (at 1:20); *see* 2:38-2:53 (visually depicting the recovered black firearm). Lopez does not dispute that he had a loaded firearm in his coat pocket.

## II.

"In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

We evaluate excessive force claims "based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). We are mindful that "police officers are often forced to make split-second judgments—in

4

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Viewing the facts in the light most favorable to Mr. Lopez, I agree that a reasonable fact finder could conclude that Officer Wright used excessive force in violation of the Fourth Amendment. Whether Mr. Lopez posed an immediate threat to officer safety at the moment he was shot with his hands raised, whether officers gave Mr. Lopez adequate warning and time to comply, and whether Mr. Lopez was complying with officers' instructions, are genuine disputes of material fact. We have often observed that summary judgment should be granted "sparingly" in excessive force cases, and I agree with my colleagues that we cannot conclude Officer Wright's use of deadly force was objectively reasonable as a matter of law. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (en banc).

But in my view, Officer Wright is entitled to qualified immunity under the second prong of the analysis because no Supreme Court or circuit precedent clearly establishes that lethal force was unreasonable under the circumstances of this case. A police officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). Law enforcement

officers "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (citation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1152 (citation omitted).

Mr. Lopez has not identified legal precedent that "squarely governs" the specific facts of this case. Officer Wright announced his presence as an officer as soon as he exited his vehicle and repeatedly told Mr. Lopez to take his hands out of his pockets. For several seconds of the video, from 0:49 to 0:54, Mr. Lopez did not comply with these instructions. The video instead shows Mr. Lopez make a furtive movement in his coat pocket toward what Officer Wright correctly suspected was a firearm. Mr. Lopez has not identified a case where we, or the Supreme Court, held that an officer who sees a suspect make a movement toward what the officer reasonably suspects is a gun must wait before resorting to lethal force. No such case exists.

To the contrary, "[o]ur case law is clear that when a suspect reaches for a gun . . . responding with deadly force does not violate the Constitution." *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 828 (9th Cir. 2023). We have observed that when a suspect is "reasonably suspected of being armed," even "a furtive movement" can "create an immediate threat" sufficient to justify the use of deadly force. *George*, 736 F.3d at 838. We have told officers that it is

6

"unquestionably reasonable" to shoot at a suspect that "reaches for a gun in his waistband, or even if he reaches there for some other reason." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014). After all, "[t]he law does not require an officer who immediately faces physical harm to wait before defending himself until the indication of impending harm ripens into the onslaught of actual physical injury." *Gonzalez*, 747 F.3d at 800 (Trott, J., concurring in part and dissenting in part). A reasonable officer in Officer Wright's position would not have understood from our precedent that application of lethal force in these circumstances was unlawful.

The majority disagrees. After citing the general proposition that an officer may not use deadly force against a suspect who does not pose an immediate threat, the majority cites *Hayes v. Cnty. of San Diego,* 736 F.3d 1223 (9th Cir. 2013) and *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252 (9th Cir. 2016) as precedent putting Officer Wright on notice that he could not use deadly force against Mr. Lopez. The problem, however, is that neither case "squarely governs" the specific scenario Officer Wright encountered—an officer having to make a split-second reaction to an armed suspect's movement toward a weapon.

Take *Hayes* first. There, police fatally shot a man who was holding a knife but standing (or slowly walking) six to eight feet away. 736 F.3d at 1232-35. We held that the man's mere possession of the knife did not justify deadly force

7

because there was no clear evidence that he was threatening officers with the knife or otherwise acting erratically with it. *Id.* In *C.V.* we concluded that a reasonable jury could determine that a police officer used excessive force when he shot a man who, by certain accounts, was complying with officers' orders to raise his hands in the air and was not pointing his BB gun at the officers. 823 F.3d at 1255-56. Because there were material factual differences between the officers' accounts, we concluded the district court erred in holding that use of force was justified as a matter of law. *Id.* We also held, however, that the defendants were entitled to qualified immunity because no precedent clearly established that using force in that situation would constitute excessive force under the Fourth Amendment. *Id.* at 1257.

    Neither case tells a reasonable officer that they would violate the Fourth Amendment by using lethal force when a suspect believed to be armed ignores repeated commands to take his hands out of his pockets, is seen reaching for an object that the officer reasonably—and correctly—suspects is a firearm, and the officer has to make a split-second decision. In other words, no "existing precedent [has] placed the . . . constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

    I respectfully dissent.