1 | **LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)

2 | dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)

3 | msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310

4 | Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

5 |

6 | **LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)

7 | tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200

8 | Riverside, CA 92506
Phone: (951) 682-9311

9 | *Attorneys for Plaintiff* XAVIER LOPEZ

10 |

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 |

14 | XAVIER LOPEZ,

15 |    Plaintiff,

16 |   v.

17 | CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10,

18 | inclusive,

19 |

20 |    Defendants.

| CASE No.: 5:21-cv-02140-PSG (JEMx)

[*Honorable Philip S. Gutierrez*]
Magistrate Judge John E. McDermott

**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 1 TO EXCLUDE AFTER-ACQUIRED AND INVESTIGATORY INFORMATION UNKNOWN**

[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]

**Pretrial Conference**:
January 19, 2024, at 02:00 p.m.
**Jury Trial**
February 1, 2024, at 09:00 a.m.

350 West 1st Street, 6A, 6th Floor
Los Angeles. California 90012

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff XAVIER LOPEZ hereby moves *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to any information unknown to Defendant Wright at the time of his use of deadly force, including:

a) Information unknown at the time of the incident related to Plaintiff's criminal history, including: details related to Plaintiff's arrests; details related to Plaintiff's convictions; details related to Plaintiff's contacts with law enforcement prior to the incident; any arrests or contact with law enforcement post-incident; restraining orders; any arrest that did not result in conviction; and statements from third-party individuals related to whether Plaintiff had a lot of trouble with the law.

b) Information unknown at the time of the incident related to Plaintiff's drug and alcohol history, including pre- and post-incident use or possession of drugs or alcohol; and whether third-party individuals believed that Plaintiff was under the influence of drugs or alcohol at some time prior to the incident or had any substance abuse problems during his life.

c) Information unknown at the time of the incident related to Plaintiff's toxicology results and whether he was under the influence or used drugs or alcohol on the day of the incident, including whether Plaintiff used or possessed drugs or alcohol in the morning of the incident.

d) Information unknown at the time of the incident related to other crimes, wrongs, or acts attributable to Plaintiff, including gang affiliation, gang monikers, contact with gang members, gang culture, gang activities, or tattoos.

1    e)    Information unknown at the time of the incident related to other

2    crimes, wrongs, or acts attributable to Plaintiff, including fights,

3    arguments, or contact with persons that reside in and round the Avila

4    house where the incident occurred, including: issues with an elderly

5    neighbor; throwing an object over a neighbor's fence; yelling or

6    arguing with in the street or at night; parties at Plaintiff's

7    grandmother's house; his manner of driving around the neighborhood;

8    police coming to the house to investigate; whether Plaintiff and Avila

9    were having problems with who Plaintiff could visit with; whether

10    Plaintiff ever stalked Availa; whether Plaintiff had a propensity for

11    violence; whether Plaintiff had a history of threatening anyone

12    including Antonio Avila, Carina Avila, Alice Garcia or any neighbors;

13    whether Plaintiff ever slashed or popped anyone's tires or shattered or

14    cracked anyone's windshield; whether Plaintiff ever entered the Avila

15    house without permission; whether Plaintiff ever threw a water bottle

16    at anyone's car; whether Plaintiff ever broke a door at the Avila house;

17    whether Plaintiff ever attempted to take anyone's cell phone or prevent

18    them from making a call; whether Plaintiff harassed, tormented, or

19    terrorized any neighbors or person; statements that Plaintiff is "the

20    worst of the worst"; statement that Plaintiff is "pretty dangerous";

21    whether neighbors called Plaintiff "the hemorrhoid"; statements that

22    Plaintiff is a heinous person, horrible person, or disgusting person;

23    statements that Plaintiff hurts people; statements that Plaintiff has

24    taken a person's peace of mind; Alice Garcia statements that she lives

25    in constant fear of Plaintiff; statements related to Plaintiff's family

26    such as "crackhead mom"; statements that people who use drugs

27    "probably might even hurt kids".

28

f) Information unknown (i.e., details) at the time of the incident related to the gun in Plaintiff's possession during the incident, including whether it was loaded, how it was acquired, the type of gun or ammunition, whether Plaintiff was known to carry a gun, whether third-party individuals knew Plaintiff to have a gun at any time.

g) Information unknown at the time of the incident related to Plaintiff's childhood; personal history; hanging around with "bad people"; his upbringing; family history; any issues related to child protective services; any issues with visitation or custody or his child; any issues with child support; and government assistance.

h) Information unknown at the time of the incident related to post-incident threatening messages and/or statements sent made by person's other than Plaintiff (e.g., Marisol Garcia, Plaintiff's mother) to any other third-party person (e.g., Carina Avila).

i) After-acquired investigatory reports, interviews, videos, and information obtained by officers with the Riverside Police Department ("RPD") after the incident.

- That on August 2, 2020, Mr. Lopez was released on parole.
- That on September 14, 2020, at 1:00 a.m., the RPD received a report that Plaintiff entered the Avila residence through an unlocked front entrance, went into his daughter's bedroom, and removed her from the house, then abandoned her at a neighbor's house in the dark.
- That on September 15, 2020, Plaintiff returned to the Avila residence and attempted to remove his child again.
- That on September 21, 2020, Plaintiff was arrested on his outstanding warrant and was subsequently released on October 15, 2020.

- That on September 21, 2020, RPD Officer Arthur Ramirez contacted Plaintiff during a routine pedestrian check when he discovered the active parolee-at-large warrant. Officer Ramirez arrested Plaintiff and he was placed in the Robert Presley detention center for burglary and child endangerment.

- That on September 30, 2020, Plaintiff was sanctioned 120 days in custody with an expected release date of November 19, 2020.

- That Plaintiff was released on or about October 15, 2020.

- The 9-1-1 call made by Carina Avila on January 17, 2021, and any reports generated from that call or officer response.

- The dash camera video from Officer Prado's vehicle on January 19, 2021.

- Post-Incident Officer Reports drafted related to this incident.

- Post-Incident Calls between Detectives and Carina Avila.

- Post-Incident Search Warrant or findings therefrom.

- Post-Incident RPD Critical Incident Video.

- DOJ Firearms Trace Summary.

- RPD Forensic Unit Semi-Auto Pistol Form.

- Post-shooting investigation items found on Lopez's person and/or in Lopez's vehicle with any inference to wrongs of bad acts, including drug and/or alcohol paraphernalia, clothing, documents, cell phone, and/or ammunition.

j)  Post-incident findings by the Riverside County District Attorney's Office related to whether the RCDA would press criminal charges against Defendant Wright.

k)  Post-incident findings by the RPD, Chief of Police, and/or any form of Use of Force Review Board or Internal Affairs related to whether the

use of deadly force by Defendant Wright was objectively reasonable, necessary, proportional, or within policy.

Plaintiff will suffer specific prejudice if this Motion *in Limine* is not granted because admission of the above information was unknown to Defendant Wright at the time of the incident giving rise to the above-referenced lawsuit. The above categories of information are irrelevant or have minimal probative value yet have substantial risks of confusing the jury; presentation of cumulative evidence; unnecessarily consuming time and misleading the jury in their task of determining whether the Wright is liable; and importantly, includes impermissible character evidence. Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 602, 801, 802, 805 and the prohibition of hindsight evidence in the reasonableness analysis of use of excessive force cases pursuant to *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011).

Plaintiff bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiff's Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached. (Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶2.)


Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**


By: _/s/      Marcel F. Sincich_
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich

1

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

**PLAINTIFF'S MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**PLAINTIFF'S MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

1  ## MEMORANDUM OF POINTS AND AUTHORITIES

2  ## I.   INTRODUCTION

3    This is a §1983 civil rights and state tort case arising from the use of excessive

4  and unreasonable officer-involved shooting of Plaintiff Xavier Lopez ("Lopez") by

5  Defendant Evan Wright ("Wright"), on January 26, 2021. Four Riverside Police

6  Department ("RPD") officers rapidly approached Lopez, failed to adequately

7  announce their identity as officers, failed to give a deadly force warning, failed to

8  de-escalate the situation, and failed to attempt less-intrusive alternatives. Instead,

9  Defendant Wright shot Lopez after Lopez complied with officer commands "Hands

10 up," while Lopez's visibly empty hands were up, in submission, and did not pose an

11 immediate threat of death or serious bodily injury to any person.

12    At approximately 4:00 p.m., Lopez was walking near the sidewalk on his way

13 to spend time with his daughter. Unbeknownst to him, Wright orchestrated a plan to

14 take him into custody by having his daughter set up a ruse for him to come to her

15 house, where the officers waited to ambush Lopez between his car and the house.

16 Hidden from Lopez, Officer Monreal announced that Lopez parked and exited his

17 vehicle. Driving an unmarked van, Wright rapidly approached Lopez and parked on

18 the street. As Wright was exiting the van he stated, "Hey Xavier, it's the cops." Still

19 partially in the van that screeched to a halt – Lopez did not hear the statement.

20 Initially, all Lopez saw was a large man running towards him with a gun pointed to

21 his chest. Lopez could not initially identify Wright as a police officer because he did

22 not have his glasses on, Wright approached in an unmarked civilian van without

23 lights and sirens, and Wright was not dressed in typical, easily identifiable, RPD

24 clothing.

25    Admittedly, Plaintiff had a gun in his left breast coat pocket. Initially, Lopez

26 attempted to take the gun out of his pocket to throw it to the ground, but the gun was

27 buttoned in his coat and got stuck. Only a small portion of the butt of the gun was

28 exposed and for less than 2/10ths of a second. The way Lopez touched the gun is

also informative. Lopez barely touched the butt of the gun with a few fingers, a far cry from gripping a gun in a furtive manner as though to use it.

Then recognizing that it was the police giving him the command, "Hands up, hands up," Lopez stuffed the gun back into his coat, and put his visibly empty hands in the air, around shoulder height, with his fingers spread and pointed to the sky, in a clear indication of compliance and submission, and to communicate he was not a threat to the officers or anyone else.

Plaintiff started to push the gun back into his coat approximately 1.8 seconds prior to being shot. At 1.8 seconds, the gun was no longer being removed from the coat. At approximately 1.3 seconds prior to being shot, Lopez began to raise his empty right hand in the air. His left hand was always empty. At approximately 1.2 seconds prior to being shot, Lopez's visibly empty right hand was moving away from his coat pocket. At approximately 1.1 seconds prior to being shot, Lopez's visibly empty right hand was up near his shoulder, palm out, in compliance with officer commands. At approximately 1.0 seconds prior to being shot, Lopez's visibly empty left hand began to join the right hand in the up, shoulder-high position. At approximately 0.87 seconds prior to the first shot being fired, there is no question from the video evidence that both of Lopez's visibly empty hands were up in compliance with office commands.

For approximately 0.87 seconds, Lopez slowly rotated his body to his left, in the direction of the other approaching officers who were also giving him commands. Defendant Wright shot Lopez with his visibly empty hands up near shoulder height, palms out, finger spread and pointed up. Then, 0.54 seconds after shooting Lopez, as Lopez was falling to the ground, Defendant Wight shot Lopez a second time.

Plaintiff never attempted to evade arrest, did not run, or flee, and was not resistive – he complied. Lopez never removed a gun from his coat. Lopez never pointed a gun at any person and never put his finger anywhere near the trigger of the gun. Lopez never made any furtive movement that would indicate an intention to use

a gun against anyone, but instead raised his visibly empty hands in the air in compliance. After the shooting, the stuck gun was cut out of Lopez's coat pocket.

By this Motion *in Limine*, Plaintiff moves to exclude from inference, testimony, exhibits, and argument at trial any information unknown to Defendant Wright at the time of his use of excessive and unreasonable force against Lopez, including: **(a)** unknown details regarding Plaintiff's criminal history; **(b)** Plaintiff's drug and alcohol history; **(c)** Plaintiff's post-incident toxicology results and whether he was under the influence or used drugs or alcohol on the day of the incident; **(d)** unknown details related to the gun including whether it was loaded, how it was acquired, whether Plaintiff typically carried a firearm, and the type of gun or ammunition; **(e)** other crimes, wrongs, or bad acts character evidence attributable to Plaintiff; **(f)** Plaintiff's childhood, personal history, upbringing, family history, issues related to child protective services, visitation, child support, and government assistance; **(g)** post-incident threatening messages and/or statements sent made by person's other than Plaintiff (e.g., Marisol Garcia, Plaintiff's mother) to any other third-party person (e.g., Carina Avila); **(h)** after-acquired investigatory reports, interviews, videos, information and documents; **(i)** post-incident findings by the Riverside County District Attorney's Office ("RCDA") related to whether the RCDA would press criminal charges against Defendant Wright; and **(j)** post-incident findings by the RPD, Chief of Police, and/or any form of Use of Force Review Board or Internal Affairs related to whether the use of deadly force by Defendant Wright was objectively reasonable, necessary, proportional, or within policy.

The central issue in this case is whether Defendant Wright's use of deadly force was excessive and unreasonable, thus whether Plaintiff was an immediate threat of death or serious bodily injury at the time of the use of force based on the circumstances Wrigth was confronted with at that time. The analysis is limited to information known to Wright at the time the force was used. Defendant's attempt to use other information is a distraction to the jury intended to inflame the passions of

**PLAINTIFF'S MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

the jury and should be excluded. Defendants will claim that Wright had information about Lopez prior to the incident but that does not open the door to everything about Lopez's life. Defendants should not be permitted to transform this wrongful officer-involved shooting case into a criminal prosecution or character assassination of Plaintiff, the victim of excessive force.

It is undisputed that Wright did not have knowledge at the time of his use of deadly force as to post-incident investigative materials such as the search of Lopez's person and vehicle, investigative reports, interviews, third party statements, or every aspect about Plaintiff's pre and post-incident life. It is also well-settled that information unknown is not relevant to the analysis and should be excluded. Yet, Defendants intend to introduce information unknown to Wright, not considered by Wright, and that did not weigh into his analysis as to whether he should use deadly force against Lopez in an attempt to justify that very same use of force.

Defendants' evidence is hearsay, speculative, unduly prejudicial, and impermissible character evidence designed to taint the jury's perspective of Plaintiff and deprive Plaintiff of a fair trial. Thus, for the following reasons, Plaintiff respectfully request the Court issue an order excluding information unknown to Wright at the time of his use of deadly force from the trial.

## II.   INFORMATION UNKNOWN IS EXPRESSLY PROHIBITED

Under the Federal Rule of Evidence, evidence that does not tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable is not admissible. Rules 401, 402. Since the Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). Adhering to the parameters of what the officer knew at the

time of the seizure in a Fourth Amendment reasonableness analysis is of the utmost importance because it maintains an essential balance and protects both law enforcement officers and the public. *See Id.* at 25-26; *United States v. Place*, 462 U.S. 696, 703 (1983).

After acquired information by investigators or during discovery cannot be considered. *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011). In *Glenn*, unknown to the shooting officer at the time of the incident, a witness told a 911 operator that the suspect "was threatening to kill everybody" and might "run at the cops with a knife." *Id*. Rejecting the "suggestion that…these statements provide uncontroverted evidence demonstrat[ing] that the officers' safety concerns were not at odds with information provided to law enforcement," the Ninth Circuit reiterated, "[w]e cannot consider evidence of which the officers were unaware…" *Id.* at 873, n.8, citing *Graham*, 490 U.S. at 396. Accordingly, juries are instructed that they "must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *Id*.; Ninth Circuit Model Jury Inst. 9.25.

Considering how the jury will be instructed and given the great weight of authority on this issue, it would be highly improper to permit the jury to learn about facts and circumstances that Defendant Wright did not know at the time he used deadly force against Lopez. Evidence of facts and circumstances unknown to Wright at the time of his use of deadly force are irrelevant and inadmissible because it was not part of the "totality of the circumstances" facing Wright at the time of his use of deadly force. Thus, Defendants should not be permitted to introduce any evidence of **(a)** unknown details regarding Plaintiff's criminal history; **(b)** Plaintiff's drug and alcohol history; **(c)** Plaintiff's post-incident toxicology results and whether he was under the influence or used drugs or alcohol on the day of the incident; **(d)** unknown details related to the gun including whether it was loaded, how it was acquired, and the type of gun or ammunition; **(e)** other crimes, wrongs, or bad acts attributable to

Plaintiff; **(f)** Plaintiff's childhood, personal history, upbringing, family history, issues related to child protective services, visitation, child support, and government assistance; **(g)** post-incident threatening messages and/or statements sent made by person's other than Plaintiff to any other third-party person; **(h)** after-acquired investigatory reports, interviews, videos, and documents; **(i)** post-incident findings by the Riverside County District Attorney's Office related to whether the RCDA would press criminal charges against Defendant Wright; and **(j)** post-incident findings by the RPD, Chief of Police, and/or any form of Use of Force Review Board or Internal Affairs related to whether the use of deadly force by Defendant Wright was objectively reasonable, necessary, proportional, or within policy. *See Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 275 n.* (4th Cir. 2011) (noting that the plaintiff's "criminal history and possession of illegal narcotics...are irrelevant to the excessive force analysis because, as the troopers themselves acknowledge, they 'did not know' these facts 'at the time'"—even though the facts of the incident were profoundly disputed); *Conan v. City of Fontana*, No. ED-cv 16-1261-KK, 2017 WL 8941499, at *8 (C.D. Cal. Oct. 6, 2017) (excluding evidence of plaintiff's "criminal history and drug use does not appear to be relevant to the liability phase, and, even if arguably relevant, it is outweighed by unfair prejudice under"); *Wisler v. City of Fresno*, No. CVF 06-1694 LJO SMS, 2008 WL 2954179, at *5 (E.D. Cal. July 30, 2008) (excluding evidence of marijuana because it was not known by defendants).

Here, the information known by Defendant Wright is entirely from **(1)** the information Wright collected from Officer Prado and his report (Sincich Decl. ¶3(A)-(B), ¶11), **(2)** Wright's criminal history check (Sincich Decl. ¶3(C)-(E)), **(3)** the information Wright collected from Parole Officer William Iriart (Sincich Decl. ¶3(F)), **(4)** statements made to Wright by Carina Avila (Sincich Decl. ¶3(G)-(H)), and **(5)** the information Wright learned from his own observations during the incident. This limited information and the relevant portions of which Wright actually

considered as part of his conduct during the incident, was memorialized in his Operations Plan for the benefit of him and his team. (Sincich Decl. ¶6, Exh. C.) Although an expanded version of the information in the Operations Plan, Wright's Declaration in Support of Summary Judgement is indicative of the information not only that he knew but also what Defendant believe is relevant to this matter. (Sincich Decl. ¶7, Exh. D.) Besides the Operations Plan drafted the day of the incident, the next best indication of what Wright actually knew and considered during the incident is the limited information he conveyed to investigators two days after the incident. (Sincich Decl. ¶3, Exh. A.)

Regarding the January 17, 2021 incident between Plaintiff and Ms. Avila, Defendant Wright did not review any reports related to any interaction between Plaintiff and Ms. Avila (Sincich Decl. ¶4(A)), did not know who the incident made Mr. Avila feel or details about a gun (Sincich Decl. ¶4(B)), and did not get any details about the incident (Sincich Decl. ¶4(C)). Further, Wright did not know of any other past issues between the Plaintiff and Ms. Avila (Sincich Decl. ¶4(D)), Wright did not have any prior contact with Plaintiff (Sincich Decl. ¶4(E)), and outside of Officer Prado and Ms. Avila, Defendant Wright did not have any other information regarding the Plaintiff (Sincich Decl. ¶4(F)). Defendant Wright did not review any police reports related to Plaintiff's criminal history. (Sincich Decl. ¶5.) Defendant Wright had no information that Plaintiff used drugs or alcohol on the day of the incident. (Sincich Decl. ¶9.)

The after-acquired character evidence gathered from third-party witnesses, regarding pre- and post-incident history, was not known to Defendant Wright at the time of his use of deadly force. (Sincich Decl. ¶¶13-29, Exhs. J-P.) Pre-incident conduct that was unknown to Wright and any post-incident actions and investigative materials were obviously not considered and not relevant to this matter. Defendant Wright did not have any details regarding any of incidents in Plaintiff's criminal history, nor does his plan and declaration indicate he knew of every law enforcement

contact Plaintiff ever had, had no information regarding whether Plaintiff used drugs or alcohol on the day of the incident, certainly did not have Plaintiff's post-incident toxicology, hand no details related to the gun including whether it was loaded, how it was acquired, and the type of gun or ammunition, had no information related to Plaintiff's childhood, personal history, upbringing, family history, issues related to child protective services, child support, and government assistance, and had no information about post incident investigative materials or agency findings. Defendant obviously did not have any information from post-incident interviews, reports, or investigative findings.

Despite being clearly irrelevant, by opposing this Motion, it is clear that Wright intends to offer into evidence information he did know to implicate Plaintiff as bad character and attempt to justify his use of deadly force. Information unknown did not play in the totality of circumstances confronting Wright when he used deadly force. Therefore, the information unknown to Wright at the time of his use of excessive and unreasonable deadly force should be excluded as impermissible hindsight evidence.

## III.   THIS EVIDENCE IS IMPERMISSIBLE CHARACTER EVIDENCE

Under Rule 404, many of the foregoing items of evidence Plaintiffs seek to exclude cannot be used to prove that Lopez acted in some general "bad character" during the incident. Rule 404(a)(1) specifically prohibits character evidence, stating that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Further, Ninth Circuit case law is clear that character evidence is normally not admissible in a civil rights case. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Character is not an essential element to this matter. For example, testimony or evidence from

information gathered after the incident relating to any unknown history or other crimes, wrongs, or acts, or investigative findings—poses a danger that the jury will (1) improperly infer that Wright knew this information, (2) will improperly infer that Lopez had the propensity to act violently towards Wright, and (3) will reach a verdict that does not reflect the circumstances facing Wright at the time.

Of the categories listed above, Rule 404 is most implicated by Defendants' wish to introduce evidence of (a) details regarding Plaintiff's criminal history unknown to Wright, (b) Plaintiff's drug and alcohol history, (e) other crimes, wrongs, or bad acts attributable to Plaintiff. Defendants intend to use information unknown as evidence of a "propensity for violence." (See also Plaintiff's Motion *in Limine* No. 4.) The above referenced material cannot be used to show Lopez's character or that he acted in conformity therewith. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) (excluding "any circumstantial evidence that requires an inference of a person's character to make it relevant"). Admission of the information unknown, including as listed herein, would be nothing more than a backdoor attempt to tarnish Lopez's character and pollute the jury against him. Any argument that this evidence is admissible under Rule 404(b)(2) or 406 is inconceivable. Still, the above-mentioned specific instances of conduct are not a permitted method of proving character. Rule 405 (Adv. Comm. Notes, stating specific instances of conduct "possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time). Thus, this impermissible character evidence should be excluded.

## IV.   THIS INFORMATION UNKNOWN IS UNDULY PREJUDICIAL

Information unknown should be excluded under Rule 403 because any probative value it may have, is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, waste of time, and needlessly presenting cumulative evidence. "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items seized from the Plaintiff...would undermine the protections of the Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or status as a presumed drug dealer justify the Defendant's use of force against him."); *Wisler*, 2008 WL 2954179, at *5; *Kunz v. DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008). The information and witnesses Defendants intend to introduce as indicated herein have minimal if any probative value at all. Yet Defendants seek to repeatedly introduce prejudicial information unknown to Wright, and even for the information that was known, Defendants must not be permitted to needlessly present witnesses and documents all to state the same or similar information ad nauseam that Wright could testify to based on his personal knowledge at the time. The jury should not be misled to believe that Lopez's past conduct is at issue—the jury should properly remain focused on Wright' conduct. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1021 (9th Cir. 2014), cert. denied, 135 S. Ct. 1482 (2015) (the issue is the conduct of the police, evidence regarding what a witness at the scene of the incident thought was irrelevant and unfairly prejudicial, when the witness never disclosed the thought to the police).

Furthermore, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986). Any testimony offered by the defense regarding some unrelated homicides, gang activity, or drugs, will lack foundation and call for speculation. Fed. R. Evid. 602. Plaintiff's concern is that Defendants will attempt to take every opportunity to insert gangs, arrests, crimes, wrongs, bad acts, and drug detail having nothing to do with this incident and unknown to Wright, into as many witnesses' testimony as possible to inflame the

passions of the jury against Plaintiff, depriving him of a fair trial. (See Plaintiff's Motions *in Limine* Nos. 2-5.) "[E]ven a murderer has a right to be free from [civil rights violations] and the correlative right to present his claim[s] of [violations] to a jury that has not been whipped into a frenzy of hatred." *Wilson v. City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993). Evidence of drugs and bad acts can only serve to unjustly inflame a jury's passions and prejudices against Plaintiff. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016); *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting motion *in limine* in an excessive force case to exclude drug paraphernalia officers discovered after the alleged excessive force occurred, because it was irrelevant and unduly prejudicial under Rule 403); *cf. Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of excessive force decedent's mental health history, even though officers knew about his past suicide attempt and mental illness history and argued it justified their actions in subduing him, because of danger jury would conclude subduing was reasonable based on status rather than conduct at the time); *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Ill. 2009) ("The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident. The introduction of expert testimony or testimony concerning facts unrelated to the physical encounter would merely divert the jury from the relevant inquiry.... Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff."). This inflammatory evidence is likely to mislead or confuse the jury into reaching a verdict that reflects its consideration of unrelated crimes, wrongs, bad acts and post-incident investigatory hindsight evidence, as a reason justifying the use of force or limiting Plaintiff's damages on an improper basis.

The following inflammatory evidence was not known by Wright; thus, its probative value is minimal if there is any at all, and substantially outweighed by the

danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence (Fed. R. Evid. 403): **(a)** unknown details regarding Plaintiff's criminal history; **(b)** Plaintiff's drug and alcohol history; **(c)** Plaintiff's post-incident toxicology results and whether he was under the influence or used drugs or alcohol on the day of the incident; **(d)** unknown details related to the gun including whether it was loaded, how it was acquired, and the type of gun or ammunition; **(e)** other crimes, wrongs, or bad acts attributable to Plaintiff; **(f)** Plaintiff's childhood, personal history, upbringing, family history, issues related to child protective services, visitation, child support, and government assistance; **(g)** post-incident threatening messages and/or statements sent made by person's other than Plaintiff (e.g., Marisol Garcia, Plaintiff's mother) to any other third-party person (e.g., Carina Avila); **(h)** after-acquired investigatory reports, interviews, videos, and documents; **(i)** post-incident findings by the Riverside County District Attorney's Office related to whether the RCDA would press criminal charges against Defendant Wright; and **(j)** post-incident findings by the RPD, Chief of Police, and/or any form of Use of Force Review Board or Internal Affairs related to whether the use of deadly force by Defendant Wright was objectively reasonable, necessary, proportional, or within policy.

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*), *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether Lopez posed an immediate threat of death or serious bodily injury to anyone when Wright used excessive and unreasonable force against him shooting Lopez while Lopez had his hands in the air. Refuting the inferences of gang affiliation, child abuse, prior gun possession, drugs, terrorizing neighbors, and investigative findings that Defendants may attempt to raise regarding alleged and unknown

conduct will necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, depriving Plaintiff of a fair trial. *Blancha*, 972 F.2d at 516. To essentially try several mini trials to rebut Defendants' character evidence, Plaintiff will be forced to call several witnesses to show his true character and rehabilitate the jurors view of him taking potentially days to conduct. (See Sincich Decl. ¶¶13-20, regarding the extent of time and information that risks being submitted to the jury.) As a result, it will unduly consume this Court's and the jury's time and resources. Accordingly, Plaintiff respectfully request that the Court also exclude evidence, reference, and argument regarding information unknown under Rule 403.

## V.     THIS EVIDENCE IS INADMISSIBLE HEARSAY

The Court should exclude the identified testimony, recordings and reports as having multiple layers of hearsay without any exception under Federal Rule of Evidence 801, 802, and 805. Given that this present Motion pertains to information unknown to Wright, Wright cannot testify to this information based on personal knowledge. Fed. R. Evid. 602. Thus, to the extent that the information Defendants intend to introduce would be through admission of hearsay statements and documents, it should also be excluded. Investigative documents from RPD officer reports, laboratory reports, details and police reports related to Lopez's criminal history, RCDA findings, and RPD findings were all made from out of this court, and Defendant impermissibly intends to offer them for the truth of the matter asserted.

## VI.    INVESTIGATORY REPORTS AND FINDINGS ARE INADMISSIBLE BECAUSE THEY INVADE THE PROVINCE OF THE JURY

Finally, the Court should exclude the following on an additional ground that this proposed evidence invades the province of the jury: after-acquired investigatory reports, interviews, videos, and documents; post-incident findings by the RCDA related to whether the RCDA would press criminal charges against Defendant Wright; and post-incident findings by the RPD, Chief of Police, and/or any form of

Use of Force Review Board or Internal Affairs related to whether the use of deadly force by Defendant Wright was objectively reasonable, necessary, proportional, or within policy.

The above-referenced investigations, which deemed the shooting reasonable, are grounded in standards and evidence different from those presented at this trial. This diminishes their relevance and intrudes upon the jury's responsibility to independently ascertain facts based only on the trial evidence. *See Vazquez v. City of Long Beach*, 2016 WL 9114912, at *2 (C.D. Cal. Apr. 19, 2016) (excluding reports from the internal affairs investigation regarding the same allegations as plaintiff's claims in part because the "jury will be charged with determining whether Defendants' conduct was unconstitutional based on evidence that is presented during trial").

## VII. SPECULATION

There are several statements made by third-party witnesses related to Plaintiff that should also be excluded because they are speculative and lack foundation. Fed. R. Evid. 403, 602.

- Statements by Carina Avila regarding drug use. Ms. Avila has never seen Plaintiff use drugs and does not know from his behavior if Plaintiff had used drugs. (Sincich Decl. ¶13(G)-(H).)

- Statements by Antonio Avila that Plaintiff carries a firearm. Mr. Avila never stated that he ever saw Plaintiff with a firearm. (Sincich Decl. ¶18.)

- Statements from Alice Garcia that plaintiff has stolen any property. When asked all Ms. Garcia referenced was that he stole her peace of mind. (Sincich Decl. ¶19(F).)

- Statements from Alice Garcia that Plaintiff is always armed. Ms. Garcia has never seen Plaintiff with a weapon. (Sincich Decl. ¶19(M).)

- Statements from Alice Garcia that Plaintiff is always on drugs. Ms. Garcia's only basis for the statement is to just look at him. (Sincich Decl. ¶19(S).)

1     • Statements from Alice Garcia that Plaintiff has ever physically hurt any

2  person. Ms. Garcia has never seen Plaintiff ever physically harm any person.

3  (Sincich Decl. ¶19(Z).)

4     Given the speculative nature of these statements, experts should not rely on

5  them, and Defendants should not be permitted to illicit the aforementioned

6  information at trial.

7  / / /

8  **VIII.  CONCLUSION**

9     For the foregoing reasons, Plaintiff respectfully requests an order excluding

10  any evidence, witness, or argument at trial to the above categories of information

11  that was unknown to Defendant Wright at the time of his use of deadly force.

12

13  Respectfully submitted,

14  DATED: December 18, 2023     **LAW OFFICES OF DALE K. GALIPO**
                         **LAW OFFICES OF GRECH & PACKER**

15

16                       By: _____*/s/*_____*Marcel F. Sincich*_____

17                            Dale K. Galipo

18                            Trenton C. Packer
                            Marcel F. Sincich

19                            *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Xavier Lopez, certifies that this brief contains 4,902 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By: ____/s/____ _Marcel F. Sincich_____
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich
_Attorneys for Plaintiff_