**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* XAVIER LOPEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE No.: 5:21-cv-02140-PSG (JEMx)<br><br>[*Honorable Philip S. Gutierrez*]<br>Magistrate Judge John E. McDermott<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 2 TO LIMIT ADMISSION OF INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**Pretrial Conference**:<br>January 19, 2024, at 02:00 p.m.<br>**Jury Trial**<br>February 1, 2024, at 09:00 a.m.<br><br>350 West 1st Street, 6A, 6th Floor<br>Los Angeles, California 90012 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff XAVIER LOPEZ hereby moves *in limine* for an order limit the evidence, testimony, argument, or reference at trial to any information that Defendant Evan Wright claims to have known at the time of the incident regarding Lopez's criminal history and alleged drug use, both with regard to the content of such information and the duration of testimony devoted to it. Although some information Wright had about Lopez may be marginally relevant to certain claims to be tried in this action, repeated and unrestricted presentation of these details throughout the trial via multiple witnesses would unfairly prejudice Lopez, create a substantial risk of these details being used as improper character propensity evidence, and mislead the jury into believing Lopez himself is on trial for prior bad acts unrelated to his shooting – any of which would compromise the fairness of this trial.

Further, Plaintiff seeks exclusion of information that Defendant Wright recently claimed for the first time – and is expected to claim again at trial – to have known that was not included in his Operations Plan the day of the incident, Statement to Investigators two days after the incident, or within his Declaration in support of Defendants' Motion for Summary Judgment. In other words, details Defendants seek to elicit at trial that represent an expansion of what Defendant Wright claims to have originally known at the time of the incident, as demonstrated in his September 2023 Responses to Plaintiff's Interrogatories, should be excluded. (See Sincich Decl. ¶8, Exh. E.)

The information Plaintiff seeks to limit and exclude includes:

**1.**    Limit the information gathered from Officer Prado personally related to the **January 19, 2021, incident with Officer Prado**, including:

   **A.**    Officer Prado told Wright that he had been in a vehicle pursuit with Plaintiff, that Plaintiff had a warrant and was a parolee at large.

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

(Sincich Decl. ¶3(A).)

**B.**    Lopez was involved in a vehicle pursuit with RPD Officers on 01-19-20 (21001775). Lopez was the solo occupant of the vehicle and he was able to avoid apprehension. (Sincich Decl. ¶6(A).)

**C.**    On January 19, 2021, at approximately 8:14 a.m., I was contacted by RPD Officer Moses Prado ("Officer Prado") who told me that he was involved in a vehicle pursuit involving Xavier Lopez ("Plaintiff"). Officer Prado was able to identify the driver and learned there was an outstanding parolee-at-large (PAL) warrant to apprehend him. (Sincich Decl. ¶7(A).)

**D.**    "I obtained basic information from Officer Prado including a summary of the pursuit details and Plaintiffs identifying information so I could conduct my own investigation into Plaintiffs status for purposes of completing the assignment. Officer Prado indicated that it was a short pursuit because it had to be terminated when Plaintiff entered the 91 freeway from the wrong direction. Officer Prado cancelled the pursuit because it was too dangerous to follow Plaintiff in oncoming highway traffic." (Sincich Decl. ¶7(B).)

**2.**    Limit the information gathered from Officer Prado's police report related to the **January 19, 2021, incident with Officer Prado**, including:

**A.**    Subject: CVC 2800.2 – Felony Evading, Reporting Officer: 1820 – Prado, Moses J, "On Tuesday, January 19th, 2021, I was working uniformed patrol for the Riverside Police Department (RPD), driving a marked police unit (Unit #3848), in the City of Riverside. At approximately 0530 hours, I attempted to conduct a traffic enforcement stop. The vehicle fled and pursuit ensued. The suspect eluded arrest." (Sincich Decl. ¶11(A).)

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

**B.** Suspect Name: Xavier Lopez, Age: 29, Race: Hispanic, Height: 6'3", Weight: 210; Hair: Brown; Eyes: Brown; Parole: Yes; Probation. (Sincich Decl. ¶11(B).)

**C.** Pursuit Distance: 1.6 miles. (Sincich Decl. ¶11(C).)

**D.** "S/Lopez was leaning into the passenger side of a Nissan Sentra [] that was occupied by two unknown occupants parked at the 76 gas station located at 6020 Arlington Avenue. I drove into the parking lot at which point S/Lopez stood up, looked at me, then entered a silver Chrysler Sebring two door…. The vehicle had a dark film on the front side of the windows (CVC 26708)." (Sincich Decl. ¶11(D).)

**E.** "I positioned my vehicle behind S/Lopez's vehicle to initiate a traffic enforcement stop. I activated my lights and sirens with a forward facing red light at Adams Street and California Avenue. … The vehicle failed to yield and continued driving southbound on Adams Street at the speed limit. As S/Lopez approached Briarwood Drive, he accelerated to about 60 miles per hour (CVC22350) and traversed to the wrong side of the roadway on Adams Street in violation of CVC 21651(b). I continued in the southbound lanes of traffic." (Sincich Decl. ¶11(E).)

**F.** "S/Lopez entered the westbound 91 freeway off-ramp and continued against traffic on the wrong side of the road (CVC 21651(b)) with total disregard for the public's safety (CVC 2800.2). I did not continue the vehicle pursuit at this point and maintained visual of S/Lopez. S/Lopez continued onto the 91 freeway westbound lanes and ultimately made an illegal U-turn (CVC 21801) between Adams Street and Madison Street. Due to the heavy traffic on the freeway, I lost visual of S/Lopez at which time the pursuit was terminated." (Sincich Decl. ¶11(F).)

iv      Case No.: 5:21-cv-02140-PSG (JEMx)

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

**G.** "A records check on the vehicle returned with the registered owner of 'Xavier Lopez.' Using law enforcement databases, I identified the subject I saw enter the suspect's vehicle at the gas station as S/Xavier Lopez with a date of birth of 06/30/1991." (Sincich Decl. ¶11(G).)

**H.** "S/Lopez was also arrested in the same vehicle on 09-21-20 by Riverside PD Officer Solano." (Sincich Decl. ¶11(H).)

**I.** "A records check on S/Lopez revealed he had an active felony warrant for his arrest for a parole violation (BPR2001853)." (Sincich Decl. ¶11(I).)

3.    Limit the information gathered from Defendant Wright's contact with **Plaintiff's Parole Officer, William Iriart**, including:

**A.** Parole Officer William Iriart gave Wright Carina Avila's contact information and stated that the relationship between Ms. Avila and Plaintiff is "rocky as far as he knew" (Sincich Decl. ¶3(F).)

**B.** "I contacted his parole officer, William Iriart, to obtain additional information on Plaintiff, but he had limited information and had not spoken to Plaintiff since December 29, 2020. He was able to provide the name and telephone number of Plaintiff's prior girlfriend, Carina Avila ("Avila"), who is also the mother of his child." (Sincich Decl. ¶7(E).)

4.    Limit the information gathered from Carina Avila related to the **January 17, 2021, incident at the Avila house**, including:

**A.** That Plaintiff had come to her house a few days prior with a handgun, tweaked out, on drugs, and she basically had to kick him out. (Sincich Decl. ¶3(G).)

**B.** "Plaintiff came to Avila's residence armed with a gun." (Sincich Decl. ¶7(G).)

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

**C.**   "After the initial surveillance effort failed, I contacted Avila to obtain additional information to locate Plaintiff. Avila was very cooperative and provided additional addresses, information on family relatives, Plaintiff's cell phone number, and information concerning recent contact she had with Plaintiff concerning their daughter. Avila reported that Plaintiff had recently been to her home, armed with a gun and 'tweaked out.' She asked Plaintiff to leave." (Sincich Decl. ¶7(H).)

**D.**   That a week prior to the incident Lopez tried to take his daughter, and Ms. Avila told him to leave, followed by Lopez telling her to, "Shut the fuck up," and that Lopez pulled up his shirt exposing a gun in his waistband. That Ms. Avila felt in danger for her life. That Ms. Avila believed that in the last couple of interactions she has had with Lopez he seemed "tweaked out" because she believed his thoughts and actions were all over the place.

   Thus, the limited information Wright had about the likelihood that Plaintiff may have a gun.

   Thus, the limited information about the likelihood that Plaintiff may have a history of using drugs or alcohol.

**E.**   Excluding the police report and information contained within the police report related to this incident and any further details not conveyed to Defendant Wright by Ms. Avila.

**5.**   Limit the testimony and argument regarding **Plaintiff's criminal history** that was known to Defendant Wright, including prior arrests and convictions.

   **A.**   The criminal history information that Wright knew and actually considered is evidenced by his day of the incident Operations Plan (Sincich Decl. ¶6, Exh. C); and his statement to investigators two days

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

after the incident (Sincich Decl. ¶3-4, Exh. A). Testimony regarding this information should be appropriately limited at trial.

The criminal history information Wright knew includes: Lopez was a parolee at large, suspected for violating 2800.2 CVC and 3056 PC (Sincich Decl. ¶6(A)); criminal history with arrests/contacts for 11377(a) H&S, 148 PC, 459 PC, 496 PC, 10851 CVC, 2800.2 CVC, 3455 PC, and 245(a)(2) PC (Sincich Decl. ¶6(B)); and (i) 2/22/14 Vehicle Theft PC 666.5(a), (ii) 7/14/14 Recklessly Evading Arrest VC 2800.2, (iii) 2/26/15 Receiving Stolen Vehicle PC 496d(a) and PC 666.5(a), (iv) Receiving Stolen Property PC 666.5(a), and (v) 9/19/19 Assault with a Firearm PC 245(a)(2)(01) (Sincich Decl. ¶7(D)).

**B.**     Defendant Wright did not review any police reports related to Plaintiff's criminal history. (Sincich Decl. ¶5.) Evidence regarding these reports, including testimony by Defendant Wright, should therefore be excluded. *See* Plaintiff's Mot. *in Limine* No. 1.)

**C.**     Defendant Wright did not have any prior contact with Plaintiff (Sincich Decl. ¶4(E)).

**D.**     Defendant Wright had no information that Plaintiff used drugs or alcohol on the day of the incident. (Sincich Decl. ¶9.)

**E.**     Regarding the January 17, 2021 incident between Plaintiff and Ms. Avila, Defendant Wright did not review any reports related to any interaction between Plaintiff and Ms. Avila (Sincich Decl. ¶4(A)), did not know who the incident made Mr. Avila feel or details about a gun (Sincich Decl. ¶4(B)), and did not get any details about the incident (Sincich Decl. ¶4(C)).

**F.**     Defendant Wright did not know of any other past issues between the Plaintiff and Ms. Avila (Sincich Decl. ¶4(D)).

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

**6.** Exclude any additional information Wright belatedly claimed in his September 2023 interrogatory responses and may at trial for the first time claim to have known during the incident, and that he never identified in his Operations Plan, Statement to Investigators, or Declaration in Support of Defendants' Motion for Summary Judgment.

Plaintiff will suffer specific prejudice if this Motion *in Limine* is not granted. Despite the possibility that Wright will claim to have possessed the above information at the time of the shooting, these details are all nevertheless substantially collateral issues, any remote relevance is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence; and these details are also impermissible character evidence. Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 602, 801, 802, 805 and the prohibition of hindsight evidence in the reasonableness analysis of use of excessive force cases pursuant to *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011).

Plaintiff bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiff's Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached. (Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶2.)

Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By:   _/s/        Marcel F. Sincich_
      Dale K. Galipo
      Trenton C. Packer
      Marcel F. Sincich
      _Attorneys for Plaintiff_

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.    INTRODUCTION ......................................................................... 1

II.   DEFENDANTS' ERRONEOUS ATTEMPT TO EXPAND THE
      INFORMATION KNOWN TO DEFENDANT WRIGHT .............................. 5

III.  IMPERMISSIBLE CHARACTER EVIDENCE.................................. 7

IV.   UNDULY PREJUDICIAL, CONFUSING, MISLEADING, CUMULATIVE,
      UNDUE CONSUMPTION OF TIME, TRIAL WITHIN A TRIAL ............... 10

V.    CONCLUSION .............................................................. 15

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Arlio v. Lively,*
    474 F.3d 46 (2d Cir. 2007) ................................................................................17

4

*Blancha v. Raymark Industries,*
    972 F.2d 507 (3d Cir. 1992) ............................................................................17

5

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007) ..........................................................................11

6

*C.B. v. City of Sonora,*
    769 F.3d 1005 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1482 (2015) .............15

7

*Carrillo v. City of Los Angeles,*
    No. CV 15-05896 SJO (KLSx), 2017 WL 11634043 (C.D. Cal. Feb. 3, 2017)8

8

*Engman v. City of Ontario,*
    No. EDCV 10-284 CAS (PLAx), 2011 WL 2463178 (C.D. Cal. June 20, 2011)
    ..........................................................................................................................14

9

*Estate of Diaz v. City of Anaheim,*
    840 F.3d 592 (9th Cir. 2016) ................................................................15, 16, 17

10

*Gates v. Rivera,*
    993 F.2d 697 (9th Cir. 1993) ..............................................................................7

11

*Glenn v. Washington Cnty.,*
    673 F.3d 864 (9th Cir. 2011) .........................................................................viii

12

*Graham v. Connor,*
    490 U.S. 386 (1989) ........................................................................................11

13

*Gregory v. Oliver,*
    2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ....................................................16

14

*Hermosillo v. County of San Bernardino,*
    2017 WL 5479645 (C.D. Cal. Feb. 16, 2017) ................................................13

15

*Hosey v. City of Los Angeles,*
    No. CV 09-98427 MMM (JCx), 2011 WL 13213573 (C.D. Cal. Feb. 25, 2011)
    ..........................................................................................................................14

16

*Jackson v. City of Gahanna,*
    2011 WL 587283 (S.D. Ohio Feb. 9, 2011) ...................................................13

17

*Kunz v. DeFelice,*
    538 F.3d 667 (7th Cir. 2008) ..........................................................................13

18

*Larez v. City of Los Angeles,*
    946 F.2d 630 (9th Cir. 1991) ..........................................................................12

19

*Mason v. City of Chicago,*
    631 F. Supp. 2d 1052 (N.D. Ill. 2009) ...........................................................16

20

*Nelson v. City of Davis,*
    685 F.3d 867 (9th Cir. 2012) ..........................................................................12

21

*Old Chief v. United States,*
    519 U.S. 172 (1997) ..........................................................................................9

22

*Paeste v. Gov't of Guam,*
    624 F. App'x 488 (9th Cir. 2015) .....................................................................8

23

24

25

26

27

28

*Palmerin v. Riverside*,
    794 F.2d 1409 (9th Cir. 1985)...............................................................................10

*Rascon v. Hardiman*,
    803 F.2d 269 (7th Cir. 1986).................................................................................16

*Rockwell v. Yukins*,
    341 F.3d 507 (6th Cir. 2003).................................................................................17

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005).................................................................................12

*Smith v. County of Riverside*,
    2018 WL 7500278 (C.D. Cal. Nov. 14, 2018)..................................................15

*United States v. Aims Back*,
    588 F.2d 1283 (9th Cir. 1979).................................................................9, 12, 13

*United States v. Brown*,
    562 F.2d 1144 (9th Cir. 1977)...................................................................................9

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000)................................................................................12

*United States v. Herrera Medina*,
    609 F.2d 376 (9th Cir. 1979)..................................................................................10

*United States v. Mendoza–Prado*,
    314 F.3d 1099 (9th Cir. 2002)..................................................................................8

*United States v. Riggins*,
    539 F.2d 682 (9th Cir. 1976)....................................................................................9

*Valtierra v. City of Los Angeles*,
    99 F. Supp. 3d 1190 (C.D. Cal. 2015).....................................................................8

*Velazquez v. City of Long Beach*,
    793 F.3d 1010 (9th Cir. 2015)................................................................................11

*Wilson v. City of Chicago*,
    6 F.3d 1233 (7th Cir. 1993)...................................................................................16

*Wisler v. City of Fresno*,
    2008 WL 2954179 (E.D. Cal. July 30, 2008) .....................................................13

<u>Rules</u>

Advisory Committee Notes, Federal Rules of Evidence, Rule 405 ...........................8

Federal Rules of Evidence, Rule 403 ......................................................................12

Federal Rules of Evidence, Rule 404 .............................................................7, 9, 10

Federal Rules of Evidence, Rule 405 ......................................................................11

Federal Rules of Evidence, Rule 406 ......................................................................10

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3       This is a §1983 civil rights and state tort case arising from Defendant Evan
4   Wright's excessive and unreasonable shooting of Plaintiff Xavier Lopez on January
5   26, 2021. Four Riverside Police Department ("RPD") officers, including Wright,
6   rapidly approached Lopez on the street from in unmarked van wearing atypical
7   police attire, failed to adequately announce their identity as police officers, failed to
8   give a warning that deadly force would be used, failed to de-escalate the situation,
9   and failed to attempt less-intrusive alternatives. Defendant Wright shot Lopez after
10  he complied with officer commands to put his hands up in submission, when he was
11  not resisting, was not fleeing, and did not pose an immediate threat of death or
12  serious bodily injury to any person.

13      At approximately 4:00 p.m., Lopez was walking near the sidewalk on his way
14  to spend time with his daughter. Unbeknownst to him, Defendant Wright had
15  orchestrated a plan to take him into custody by having Lopez's daughter set up a
16  ruse for Lopez to come to her house, where the officers lay and wait to insnare
17  Lopez between his car and the house. Prior to the incident, Defendant Wright
18  contacted Carina Avila, the mother of Plaintiff's daughter, and thereby learned some
19  information about Plaintiff's alleged possession of and threats with a firearm and
20  possible drug use. Despite this information, Wright requested that Carina Avila have
21  her daughter lure Plaintiff to the location in order to make the arrest. Defendant
22  Wright only knew the following related to Plaintiff's history of other crimes,
23  wrongs, or acts: basic information from Officer Prado and his report related to a
24  vehicle pursuit, very limited information from Plaintiff's parole officer, basic
25  information from Carina Avila, and a basic criminal history search. (Sincich Decl.
26  ¶¶3, 5, 6, 7.)

27      Hidden from Lopez, Officer Monreal announced that Lopez parked and exited
28  his vehicle. Driving an unmarked van, Defendant Wright rapidly approached Lopez

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

and parked on the street. As Defendant Wright was exiting the van he stated, "Hey Xavier, it's the cops." Still partially in the van that screeched to a halt – Lopez did not hear the statement. Initially, all Lopez saw was a large man running towards him with a gun pointed to his chest. Lopez could not initially identify Defendant Wright as a police officer because he did not have his glasses on, Defendant Wright approached in an unmarked civilian-looking vehicle without lights and sirens, and Defendant Wright was not dressed in typical, easily identifiable, RPD clothing.

Plaintiff had a gun in his left breast coat pocket. Initially, Lopez attempted to take the gun out of his pocket to throw it to the ground, but the gun was buttoned in his coat and got stuck. Then recognizing that it was the police giving him the command, "Hands up, hands up," Lopez stuffed the gun back into his coat, and put his visibly empty hands in the air, around shoulder height, with his fingers spread wide and pointed to the sky, in a clear indication of compliance and submission, and to communicate he was not a threat to the officers or anyone else.

Only a small portion of the butt of the gun could be seen in Defendant Wright's body-worn camera video – only by reviewing it in slow-motion or frame-by-frame – and even then, that small portion of a back object is only seen for less than 2/10ths of a second. The way Lopez touched the gun is also informative. Lopez barely touched the butt of the gun with a few fingers, never gripping a gun as though to use it.

Plaintiff started to push the gun back into his coat approximately 1.8 seconds prior to being shot. Thus, at 1.8 seconds, the gun was no longer being removed from the coat. At approximately 1.3 seconds prior to being shot, Lopez began to raise his empty right hand in the air. His left hand was always visibly empty. At approximately 1.2 seconds prior to being shot, Lopez's visibly empty right hand was moving away from his coat pocket. At approximately 1.1 seconds prior to being shot, Lopez's visibly empty right hand was up near his shoulder, palm out, in compliance with officer commands. At approximately 1.0 seconds prior to being

2          Case No.: 5:21-cv-02140-PSG (JEMx)

shot, Lopez's visibly empty left hand began to join the right hand in the up, shoulder-high position. At approximately 0.87 seconds prior to the first shot being fired, there is no question from the video evidence that both of Lopez's visibly empty hands were up in compliance with office commands.

For approximately 0.87 seconds, Lopez slowly rotated his body to his left, in the direction of the other approaching officers who were also giving him commands. Lopez was shot with his visibly empty hands up near shoulder height, palms out, finger spread and pointed up. Then, 0.54 seconds after shooting Lopez, as Lopez was falling to the ground, Defendant Wight shot Lopez a second time.

The Plaintiff never attempted to evade arrest, did not run, or flee, and was not resistive – he complied. Lopez never removed a gun from his coat. Lopez never pointed a gun at any person and never put his finger anywhere near the trigger of the gun. Lopez never made any furtive movement that would indicate an intention to use a gun against anyone, but instead took his hands out of his pockets and raised his visibly empty hands in the air in compliance. After the shooting, officers had to use shears to cut the gun out of Lopez's coat pocket.

Plaintiff's claims are about – and this case should therefore remain focused on – whether Defendant Wright's use of deadly force was excessive and unreasonable. This is not a criminal prosecution of Plaintiff, and the focus of Defendants' presentation at trial cannot be an attempt at a character assassination of Plaintiff that ensure an unfair trial misleading the jury to focus on whether Plaintiff is a drug use, a criminal, a bad father, and a bad person.

Because the central issue in this case is whether Defendant Wright's use of deadly force was excessive or unreasonable. the facts of consequence to the issues to be tried are whether Lopez posed an immediate threat of death or serious bodily injury to Wright or anyone else, whether a warning was given or feasible, whether there were less intrusive alternatives available and feasible, and whether Lopez was resisting or fleeing. Other information is not relevant to this matter and should be

excluded. Plaintiff anticipates that Defendants will erroneously attempt to argue that everything Wright knew about Lopez (and even information Wright did not know) is relevant to whether Lopez was an immediate threat of death or serious bodily injury, as Defendants previously attempted to do in their Motion for Summary Judgment. Defendants will erroneously claim that the "totality of the circumstances" should be so broadly interpreted as to include everything Defendant Wright claims to have memorized a week before the incident as opposed to relevant information presented to him and considered by him at the time of the incident in order to evaluate Lopez's threat level.

By this Motion *in Limine*, Plaintiff moves to limit the testimony, exhibits, and argument at trial any information related to other crimes, wrongs, or acts, even if known to Defendant Wright at the time of his use of excessive and unreasonable force against Lopez, that is irrelevant, prejudicial, and impermissible character evidence including: **(A)** information gathered from Officer Prado personally related to the January 19, 2021 incident with Officer Prado; **(B)** information gathered from Officer Prado's police report related to the January 19, 2021 incident with Officer Prado; **(C)** information gathered from Defendant Wright's contact with Plaintiff's Parole Officer, William Iriarte; **(D)** information gathered from Carina Avila related to the January 17, 2021 incident at the Avila house; and **(E)** regarding Plaintiff's criminal history that was known to Defendant Wright, including prior arrests and convictions.

Defendants are likely to attempt to use impermissible character evidence designed to distract the jury from focusing on Defendant Wright's conduct and intended to inflame the passions of the jury against Lopez and should therefore be excluded. Defendants likely will also attempt to elicit the same testimony from Plaintiff, each officer involved, and each expert witness. Even relevant information is not admissible if it is impermissible character evidence, and any remote probative value is substantially outweighed by its prejudicial effect.

Thus, for the following reasons, Plaintiff respectfully requests the Court issue an order limiting and excluding the foregoing information, testimony, and argument from the trial in this action, as explained herein.

## II.    DEFENDANTS' ERRONEOUS ATTEMPT TO EXPAND THE INFORMATION KNOWN TO DEFENDANT WRIGHT

The information known by Defendant Wright stems entirely from **(1)** the information Wright collected from Officer Prado and his report (Sincich Decl. ¶3(A)-(B), ¶11), **(2)** Wright's criminal history check (Sincich Decl. ¶3(C)-(E)), **(3)** the information Wright collected from Parole Officer William Iriart (Sincich Decl. ¶3(F)), **(4)** statements made to Wright by Carina Avila (Sincich Decl. ¶3(G)-(H)), and **(5)** the information Wright learned from his own observations during the incident. This limited information and the relevant portions of which Wright actually considered as part of his conduct during the incident, was memorialized in his Operations Plan for the benefit of him and his team. (Sincich Decl. ¶6, Exh. C.) Clearly, if the author of the Operations Plan, Defendant Wright, did not believe that other details about Plaintiff's life were relevant to the plan he created to prepare himself and his team for Plaintiff's apprehension, then it is not relevant in the trial regarding Wright's assessment of the threat Plaintiff posed or to other issues regarding Wright's use of deadly force during that apprehension.

Besides the Operations Plan drafted the day of the incident, the next best indication of what Wright actually knew and considered during the incident is the limited information he conveyed to investigators two days after the incident specifically related to his use of deadly force. (Sincich Decl. ¶3, Exh. A.) Plaintiff contends that the information contained in Defendant Wright's statement is the only information he knew and considered related to his use of deadly force. All other information that Defendants may attempt to elicit at trial was either unknown to Defendant Wright at the time, or not information he considered in confronting Lopez.

Although an expanded version of the information in the Operations Plan and Statement to Investigators, Defendant Wright's Declaration in Support of Summary Judgement is indicative of the information not only that Wright knew but also what Defendants believe is relevant to this matter. (Sincich Decl. ¶7, Exh. D.) Again, additional details related to Plaintiff's criminal history or history of bad acts were not known to Defendant Wright or not considered by him. Interestingly, in his Declaration over a year after the incident, Defendant Wright mentioned for the first time that he reviewed Officer Prado's dash camera video. (Sincich Decl. ¶7(C).) No mention of the video was made in his Operations Plan or Statement to Investigators.

Regarding the January 17, 2021, incident between Plaintiff and Ms. Avila, Defendant Wright did not review any reports related to any interaction between Plaintiff and Ms. Avila (Sincich Decl. ¶4(A)), did not know how the incident made Mr. Avila feel (Sincich Decl. ¶4(B)), did not know any details about a gun (i.e., whether it was loaded, the make or model, where Lopez got it, or how long he had it) (Sincich Decl. ¶4(B)), and did not get any other details about the incident (Sincich Decl. ¶4(C)). Further, Wright did not know of any other past issues between Plaintiff and Ms. Avila (Sincich Decl. ¶4(D)), did not have any prior contact with Plaintiff (Sincich Decl. ¶4(E)), and confirmed to investigators that "outside of what was provided to [Wright] from [Officer] Prado and the girlfriend [Ms. Avila]," Defendant Wright did not have any other information regarding the Plaintiff (Sincich Decl. ¶4(F)). Defendant Wright did not review any police reports related to Plaintiff's criminal history. (Sincich Decl. ¶5.) Defendant Wright had no information that Plaintiff used drugs or alcohol on the day of the incident. (Sincich Decl. ¶9.)

Yet in Defendant Wright's Responses to Interrogatories, he again expanded his claimed knowledge of Plaintiff's history to include information he never mentioned, including in his Operations Plan, Statement to Investigators, Declaration, or Deposition, including: information from Officer DeCastro related to the January 19, 2021, incident; and that Plaintiff was incoherent, waving a gun, using

methamphetamine, and that Ms. Avila feared for her safety during the January 17, 2021 incident. (Sincich Decl. ¶8.)

The next potential expansion is Defendants' attempt to introduce information never mentioned by Defendant Wright through their police practices experts, including that Plaintiff reached for a gun a second time, that Plaintiff reached for Wright's gun, or that Plaintiff was trying to block Wright's hand. (Sincich Decl. ¶25; See Plaintiff's Motion *in Limine* No. 4.)

Without an order limiting this highly inflammatory character evidence, there is a substantial risk that Plaintiff will be surprised at trial by testimony from involved officers or Defense expert witnesses that claim relevance because it was purportedly known by Defendant Wright. Besides what Defendant Wright put in his Operations Plan and conveyed in his Statement to Investigators, there is insufficient foundation that Wright actually knew any other details about Plaintiff.

Plaintiff also anticipates that Defendant Wright will attempt to testify as to all the information he claimed to know in his Responses to Interrogatories – for the first time, over two years after the incident – which would be unfairly prejudicial and would constitute impermissible character propensity evidence, as further explained below.

## III.   IMPERMISSIBLE CHARACTER EVIDENCE

Under Rule 404, the foregoing items of evidence about Plaintiff's history that Plaintiff seeks to exclude cannot be used to prove that Plaintiff possessed negative character traits and acted in accordance with those traits during the incident. Rule 404(a)(1) specifically prohibits character evidence, stating that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Further, Ninth Circuit case law is clear that character evidence is normally not admissible in a civil rights case. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character

7    Case No.: 5:21-cv-02140-PSG (JEMx)
**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**

evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). Character is not an essential element to any claim or defense to be tried in this case.

Details of a civil rights plaintiff's criminal history are particularly vulnerable to being exploited as improper character evidence. As this Court has previously observed, admission of "the nature of [an excessive force victim's] criminal history or law enforcement contacts . . . , even with a limiting instruction, risks being used as improper character evidence in violation of Rule 404(b)." *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1194 (C.D. Cal. 2015); *see Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991) (in §1983 excessive force case, evidence offered by defendant that plaintiff was involved in drunken altercation five days before the incident in question was inadmissible under Rule 404(b)), *superseded by statute on other grounds as recognized in Paeste v. Gov't of Guam*, 624 F. App'x 488 (9th Cir. 2015); *Carrillo v. City of Los Angeles*, No. CV 15-05896 SJO (KLSx), 2017 WL 11634043, at *4 (C.D. Cal. Feb. 3, 2017) (observing that admission of evidence regarding §1983 plaintiff's prior arrests risked "demonstrat[ing] that Plaintiff has a criminal character and . . . could lead a jury to find in favor of Defendants because Plaintiff is a 'bad guy,' not because Defendants' seizure was objectively reasonable") (citing *Old Chief v. United States*, 519 U.S. 172 (1997)).

Yet, Defendants have made it absolutely clear that they intend to use evidence of Plaintiff's history for the purpose of showing "propensity." Defendants' expert Craig Allen dedicated an entire section of his Report to the same, aptly titled, "**CRIMINAL BEHAVIOR PERTINENT TO MR LOPEZ'S PROPENSITY FOR VIOLENCE.**" (Sincich Decl. ¶22.) As the Ninth Circuit has made clear, however: "Evidence, even though it may be otherwise admissible, should be excluded where it tends to prove only criminal disposition." *United States v. Aims Back*, 588 F.2d 1283, 1285 (9th Cir. 1979) (citing *United States v. Brown*, 562 F.2d 1144 (9th Cir. 1977); *United States v. Riggins*, 539 F.2d 682, 683 (9th Cir. 1976)).

If allowed, Defendants will attempt to lead the jury to infer that Lopez committed several prior assaults with a deadly weapon, without any concrete evidence to support that suggestion, all to erroneously show that Lopez had "a real propensity for violence" towards officers. Defendants' intent is clear—to use other alleged and inferred crimes, wrongs, and acts of Lopez as "[e]vidence of a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait." *See* Fed. R. Evid. 404(a), (b). Through their expert, Defendants admit that they are impermissibly attempting to use this prejudicial information to show that Lopez had a propensity for violence towards police officers to prove that Lopez acted in accordance with that character trait by pointing a gun at Defendant Wright—which is plainly impermissible under the Federal Rules. *Id.*

Defendants cannot now change their intent to circumvent the law and their own admission by erroneously claiming that this information is relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). First, even if one of these justifications for introducing character evidence applied, such evidence "is admissible only if: (1) the prior act is similar and close enough in time to be relevant, (2) the evidence of the prior act is clear and convincing and (3) ... the probative value of the evidence outweighs any potential prejudice." *United States v. Herrera Medina*, 609 F.2d 376, 379 (9th Cir. 1979) (citations omitted). Second, none of these exceptions apply in this case. It is inconceivable that a gun-related arrest years prior to the incident should be used to show that Lopez somehow had a motive to draw a gun on an officer then abandon the effort just to raise his empty hands in the air. None of these details establish that Lopez had the opportunity to harm officers in a way that is not already established by admissible evidence that Lopez had and reached for a gun during the incident. And they do not suggest any preparation or plan, as Lopez was unaware the officers would be coming, given that

it was a surprise sting operation involving plain clothes and unmarked vehicles. Clearly, knowledge, identity, absence of mistake, and lack of accident are not at issue. Further, there is no habit or routine applicable to this case. See Fed. R. Evid. 406.

The above-referenced material cannot be used to show Lopez's character or that he acted in conformity therewith. *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th Cir. 1985) (excluding "any circumstantial evidence that requires an inference of a person's character to make it relevant"). Admission of this impermissible character evidence would be nothing more than a backdoor attempt to tarnish Plaintiff's character and pollute the jury against him. The above-mentioned specific instances of conduct are not a permitted method of proving character. Rule 405 (Adv. Comm. Notes, stating specific instances of conduct "possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time). Thus, this impermissible character evidence should be excluded.

## IV.  UNDULY PREJUDICIAL, CONFUSING, MISLEADING, CUMULATIVE, UNDUE CONSUMPTION OF TIME, TRIAL WITHIN A TRIAL

Relevant evidence here is facts that will assist the jury in determining the *Graham* factors. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)).

Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the

10        Case No.: 5:21-cv-02140-PSG (JEMx)

availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012).

The primary application of the *Graham* factors and its progeny are the circumstances the officer was confronting at the moment of the shots on scene. Other information that the officer knew prior to the incident is collateral and holds far less probative value. Instructively, a subject's history is not a factor for consideration in the Ninth Circuit Model Jury Instructions, No. 9.25. "[E]vidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986).

Even inasmuch as certain details Defendant Wright claims to have known about Lopez's history have some minimal relevance to Wright's threat assessment, the information should nonetheless be excluded or limited because any potential probative value is substantially outweighed by the danger it poses of causing unfair prejudice, confusing the issues, misleading the jury, wasting time, and needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items seized from the Plaintiff ... would undermine the protections of the Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or status as a presumed drug dealer justify the Defendant's use of force against him."); *Wisler v. City of Fresno*, 2008 WL 2954179, at *5 (E.D. Cal. July 30, 2008); *Kunz v. DeFelice*, 538 F.3d 667, 676-77

(7th Cir. 2008). The information Defendants intend to introduce has minimal if any probative value at all. Yet, Defendants seek to introduce information that is so prejudicial there is no way Plaintiff will be afforded a fair trial.

"As the Ninth Circuit has explained, 'evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value.'" *Hermosillo v. County of San Bernardino*, 2017 WL 5479645, at *2 (C.D. Cal. Feb. 16, 2017) (quoting *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1979)); *see id.* (finding "that any probative value regarding [decedent's] prior arrests (as opposed to convictions) or the nature of the outstanding warrant would be substantially outweighed by the significant risk of unfair prejudice to plaintiffs"). Even if such evidence has minimal probative value in establishing Defendant Wright's estimation of the potential threat Lopez posed, such probative value is substantially outweighed by the risk that the jury will be unfairly prejudiced against Lopez as an individual based on jurors' views about the propriety of Lopez's past decisions or about what they perceive to be his morals. *See Engman v. City of Ontario*, No. EDCV 10-284 CAS (PLAx), 2011 WL 2463178, at *10 (C.D. Cal. June 20, 2011) (concluding, in case where § 1983 defendants sought to introduce evidence of plaintiff's prior DUI convictions and involvement in a bar fight, "that even if the evidence of plaintiffs' prior convictions and bad acts were admissible for a non-character purpose, the probative value of such evidence is substantially outweighed by the unfair prejudice to plaintiffs" under Rule 403); *Hosey v. City of Los Angeles*, No. CV 09-98427 MMM (JCx), 2011 WL 13213573, at *5 (C.D. Cal. Feb. 25, 2011) (explaining, in § 1983 case arising from domestic violence call, that evidence plaintiff had been in prior domestic arguments "that involved 'some shoving'" was "substantially prejudicial" and that "[t]here is a substantial risk that the jury may infer from th[at] fact ... that plaintiff engaged in acts of domestic violence on the day of the incident," and excluding evidence under Rule 403 after "[b]alancing the substantial risk of unfair prejudice against the minimally probative

value of the evidence").

Plaintiff also anticipates that Defendants will seek to introduce evidence that Defendant Wright believed Lopez may have been on drugs on the date of the incident, based merely on Ms. Avila's statement that Lopez had seemed "tweaked out" a week beforehand. Such evidence has no probative value in this case, where there is no indication that it played any role in Wright's threat assessment or that the mere moments of Lopez's conduct that Wright observed prior to the shooting suggested Lopez was intoxicated at the time of the shooting. *See Smith v. County of Riverside*, 2018 WL 7500278, at *3 (C.D. Cal. Nov. 14, 2018) (excluding evidence of decedent's prior marijuana use absent "any evidence that Decedent's behavior was consistent with marijuana intoxication" and reserving ruling as to evidence of prior methamphetamine use pending presentation of "sufficient evidence to establish that individuals under the influence of methamphetamines behave similarly to Decedent at the time immediately preceding the shooting"). Under these circumstances, the (highly speculative) evidence Defendants may present regarding Lopez's potential drug use is "minimally probative of damages, and [] highly likely to influence improperly the jury's evaluation of [defendant's] use of force, when he never suggested he thought [the decedent] may have been intoxicated." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016).

As soon as the jury hears "inferences" Defendants will argue existed from the speculative and limited information Defendant Wright knew, it risks enflaming the passions of any reasonable jury into overlooking Wright's Constitutional violation or finding that substantial damages could never be awarded to a person with this criminal history, bad act, and drug use. There is no un-ringing of that bell in an officer-involved shooting case. The jury should not be misled to believe that Lopez's past conduct or unrelated activity by other persons is at issue—the jury should properly remain focused on Defendant Wright' conduct. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1021 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1482 (2015).

13                    Case No.: 5:21-cv-02140-PSG (JEMx)

Plaintiff's concern is that Defendants will attempt to take every opportunity to draw references to other crimes, wrongs, and acts out of as many witnesses' testimony as possible to inflame the jury against Plaintiff, depriving him of a fair trial. Defendants' intent is made clear in part by their depositions of Plaintiff, Carina Avila, Marisol Garcia, Alice Garcia, Suzana Fuentes, and their retained experts' reports. If allowed, Defendants will unnecessarily consume hours, if not days, just as in these depositions, questioning every witness about collateral issues. "[E]ven a murderer has a right to be free from [civil rights violations] and the correlative right to present his claim[s] of [violations] to a jury that has not been whipped into a frenzy of hatred." *Wilson v. City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993); *see Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016); *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *cf. Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of excessive force decedent's mental health history, even though officers knew about his past suicide attempt and mental illness history and argued it justified their actions in subduing him, because of danger jury would conclude subduing was reasonable based on status rather than conduct at the time); *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Ill. 2009). This inflammatory evidence is likely to mislead and confuse the jury into reaching a verdict that reflects consideration of gangs and unrelated homicides as justification for Defendant Wright's excessive force or limiting Plaintiff's damages on an improper basis. Further, since the only potential relevance of this information is to Defendant Wrights' assessment of Lopez's potential threat, eliciting testimony on these topics from additional witnesses is needlessly cumulative and serves only to unfairly prejudice Plaintiff.

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*), *Arlio v.*

*Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether Lopez posed an immediate threat of death or serious bodily injury to anyone when Defendant Wright used excessive force against him. Refuting the inferences that Defendants may attempt to raise will necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, depriving Plaintiff of a fair trial. *Blancha*, 972 F.2d at 516. Moreover, "[t]he Advisory Committee Note to Federal Rule of Evidence 403 also recognizes the potential inadequacies of a limiting instruction, counseling that 'in reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction.'" *Estate of Diaz*, 840 F.3d at 603 (alteration adopted).

Accordingly, Plaintiff respectfully posits that any limiting instruction on these issues would be inadequate, and requests that the Court also exclude the subject information pursuant to Rule 403. In the event that the Court does not exclude this information, Plaintiff requests that the Court curtail the number of witnesses who may testify as to these topics and the duration of such testimony to avoid unfair prejudice to Plaintiff.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an order excluding any other crimes, wrongs, or acts from trial in this matter.

Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**


By:   ___/s/_____Marcel F. Sincich_____
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich
*Attorneys for Plaintiff*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          The undersigned, counsel of record for Plaintiff Xavier Lopez certifies that

3    this brief contains 5,074 words, which complies with the word limit of L.R. 11-6.1.

4

5    DATED: December 18, 2023          **LAW OFFICES OF DALE K. GALIPO**
                                       **LAW OFFICES OF GRECH & PACKER**

6

7                                      By:   */s/        Marcel F. Sincich*
                                             ─────────────────────────────
8                                            Dale K. Galipo
                                             Trenton C. Packer
9                                            Marcel F. Sincich
                                             *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION IN LIMINE NO. 2 – TO LIMIT INFORMATION DEFENDANT WRIGHT CLAIMS TO HAVE KNOWN AT THE TIME OF THE INCIDENT**