**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* XAVIER LOPEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE No.: 5:21-cv-02140-PSG (JEMx)<br><br>[*Honorable Philip S. Gutierrez*]<br>Magistrate Judge John E. McDermott<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 3 TO EXCLUDE DEFENDANTS INACCURATE AND PREJUDICIAL ANIMATIONS**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**Pretrial Conference**:<br>January 19, 2024, at 02:00 p.m.<br>**Jury Trial**<br>February 1, 2024, at 09:00 a.m.<br><br>350 West 1st Street, 6A, 6th Floor<br>Los Angeles, California 90012 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff XAVIER LOPEZ hereby moves *in limine* for an order excluding several of Defendants' animations created by retained expert Brady Held on the following grounds:

1. Mr. Held's animation of the incident in reverse is confusing, misleading, not helpful to the trier of fact, does not represent what Defendant Wright was presented with, and is inaccurate (see below). (Sincich Decl. ¶31, Exh. T(8), Held Animation No. 8 "Backwards from Shot #1".)

2. Mr. Held's animations that contain a highlighted, floating, yellow gun are unduly prejudicial, confusing, misleading, not based on sufficient facts and date, but based on speculation. (Sincich Decl. ¶¶31, Exh. T(2), Held Animation No. 2 "OTS Real Time" and Exh. T(3), Held Animation No. 3 "OTS Slow".)

3. Mr. Held's animations are not from the perspective of Defendant Wright and therefore are confusing and misleading and not helpful in determining the circumstances presented to Defendant Wright at the time. (Sincich Decl. ¶¶31, Exhs. T(2)-(8), Held Animation Nos. 2-8.)

4. Mr. Held's animations are inaccurate, thus his methodology is flawed, as he makes assumptions based on information that is not found in the videos, and is unduly prejudicial, confusing to the trier of fact, and misleading regarding the two Defense-created left land pumping actions displayed in the animations. (Sincich Decl. ¶¶31, Exhs. T(2)-(8), Held Animation Nos. 2-8.)

5. Mr. Held bases his animation on unreliable documents including the Critical Incident Video, which has no foundation, and was not presented with all of Parris Ward's exhibits.

Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 702, and 703.

Plaintiff bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiff's Motions *in Limine* Nos. 1-5 and Exhibits attached thereto, Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached. (Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶2.)

Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By: /s/   *Marcel F. Sincich*
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1
I.    INTRODUCTION ...................................................................................... 1
II.    LEGAL STANDARD ................................................................................ 3
III.    ANIMATIONS SHOULD BE EXCLUDED FROM TRIAL ......................... 5
    A.    Defendants' Arm Pumping Animations Should be Excluded ................ 7
    B.    Defendants' Floating Gun Animations Should be Excluded ................ 11
    C.    Defendants' Backwards/Reverse Animation Should be Excluded ....... 13
IV.    CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

### Cases

*Bowoto v. Chevron Corp.*,
  2006 WL 1627004 (N.D. Cal. June 12, 2006) .............................................. 10

*Bullock v. Daimler Trucks North America, LLC*,
  819 F. Supp. 2d 1172 (D. Colo. 2011) ........................................................ 10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .......................................................................... 3, 4, 10

*Elsayed Mukhtar v. California State Univ., Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ....................................................................... 3

*Goebel v. Denver & Rio Grande W. R.R. Co.*,
  215 F.3d 1083 (10th Cir. 2000) ..................................................................... 4

*Hardin v. Ski Venture, Inc.*,
  50 F.3d 1291 (4th Cir. 1995) ...................................................................... 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................................... 3

*Lust v. Merrell Dow Pharmaceuticals, Inc.*,
  89 F.3d 594 (9th Cir. 1996) .......................................................................... 3

*Racz v. R.T. Merryman Trucking, Inc.*,
  1994 WL 124857 (E.D. Pa. Apr. 4, 1994) .................................................. 11

*Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation*,
  259 Fed.Appx. 499 2008 WL 84540 (3rd Cir. 2008) .................................... 4

*Schneider v. Fried*,
  320 F.3d 396 (3rd Cir. 2003) ........................................................................ 4

*Smelser v. Norfolk Southern Ry. Co.*,
  105 F.3d 299 (6th Cir. 1997) ........................................................................ 3

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) ...................................................................... 4

### Rules

Federal Rules of Evidence, Rule 702 ................................................................. 3, 4

v   Case No.: 5:21-cv-02140-PSG (JEMx)
PLAINTIFF'S MOTION IN LIMINE NO. 3 – TO EXCLUDE DEFENDANTS' ANIMATIONS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a §1983 civil rights and state tort case arising from the use of excessive and unreasonable officer-involved shooting of Plaintiff Xavier Lopez ("Lopez") by Defendant Evan Wright ("Wright"), on January 26, 2021. Four Riverside Police Department ("RPD") officers rapidly approached Lopez, failed to adequately announce their identity as officers, failed to give a deadly force warning, failed to de-escalate the situation, and failed to attempt less-intrusive alternatives. Instead, Defendant Wright shot Lopez after Lopez complied with officer commands "Hands up," while Lopez's visibly empty hands were up, in submission, and did not pose an immediate threat of death or serious bodily injury to any person.

Lopez was merely walking near the sidewalk on his way to spend time with his daughter when Wright rapidly approached Lopez in an unmarked van. As Wright was exiting the van he stated, "Hey Xavier, it's the cops." Wright was still partially in the van that screeched to a halt when he gave the purported commands and Lopez did not hear the statement. Initially, all Lopez saw was a large man running towards him with a gun pointed to his chest. Lopez could not initially identify Wright as a police officer because he did not have his glasses on, Wright approached in an unmarked civilian van without lights and sirens, and Wright was not dressed in typical, easily identifiable, RPD clothing.

Also initially, Lopez attempted to take a gun out of his coat pocket to throw it to the ground, but the gun was buttoned in his coat and got stuck. Only a small portion of the butt of the gun was exposed and for approximately less than 2/10ths of a second—an event that can only be seen in the video watching it in slow motion or clicking through screenshots frame-by-frame. The way Lopez touched the gun is also informative. Lopez barely touched the butt of the gun with a few fingers, never gripping a gun in a furtive manner as though to use it.

Then, recognizing that it was the police giving him the command, "Hands up, hands up," Lopez stuffed the gun back into his coat, and put his visibly empty hands in the air, around shoulder height, with his fingers spread and pointed to the sky, in a clear indication of compliance and submission, and to communicate he was not a threat to the officers or anyone else. Tellingly, after Lopez placed his hands in the air, another officer on scene, Officer Monreal, switched his commands from "Hands up" to "Don't move."

Defendant Wright shot Lopez with his visibly empty hands up near shoulder height, palms out, fingers spread and pointed up. He then shot Lopez again as he was falling to the ground. Plaintiff never attempted to evade arrest, did not run or flee, and was not resistive – he complied. Lopez never removed a gun from his coat. Lopez never pointed a gun at any person and never put his finger anywhere near the trigger of the gun. Lopez never made any furtive movement that would indicate an intention to use a gun against anyone, but instead raised his visibly empty hands in the air in compliance.

Plaintiff's claims going to trial include (1) violation of the Fourth Amendment, Excessive Force, pursuant to 42 U.S.C. §1983; (2) Municipal Liability for Unconstitutional Custom, Practice, or Police, pursuant to 42 U.S.C. §1983; (3) Municipal Liability for Failure to Train, pursuant to 42 U.S.C. §1983; (4) Municipal Liability for Ratification, pursuant to 42 U.S.C. §1983; (5) Battery under state law; (6) Negligence under state law; and (7) violation of the Bane Act.

By way of the instant motion *in limine*, Plaintiff moves to exclude Defendants' animations created by defense expert Brady Held, on the grounds that his animations are not helpful to the jury, are not consistent with the video evidence, and are not reliable recreations. Specifically, Plaintiff seeks to exclude (1) any of Mr. Held's animations that contain a prejudicially floating, yellow-highlighted gun attached to Lopez's chest, (2) any of Mr. Held's animations that contain two left-and pumping motions by Lopez, and (3) Mr. Held's backwards view animation.

Thus, Plaintiff seeks to exclude Mr. Breen's animations from trial pursuant to Fed. R. Evid. 402, 403, 404, 702, 703.

## II.  LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). To be admissible, expert testimony must generally satisfy a two-prong test, reliability, and relevance. *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended sub nom. *Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003) (footnote omitted). To establish relevance, the testimony must be helpful to the trier of fact and beyond the common knowledge of jurors. *Daubert*, 509 U.S. at 597. Rule 702 requires courts to assess the reliability of expert testimony based on scientific, technical, or "other specialized" knowledge before admitting it. *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending the Daubert gatekeeping requirement to "technical" and "other specialized" knowledge).

The proponent of the expert testimony bears the burden of proving admissibility. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("[i]t is the proponent of the expert who has the burden of proving admissibility"); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("the party presenting the expert must show that the expert's findings are based on sound science"). Assessment of the expert's qualifications to testify is not answered in the abstract but based on whether the expert's "qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (internal quotations omitted). The court determines whether the expert's training and qualifications relate to the specific subject matter of his proposed testimony.

A court may satisfy its "gatekeeping" function by conducting a pretrial hearing, or by ruling on a Rule 702 objection at trial, "so long as the court has

sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*, 509 U.S. at 597). Although "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination, ... a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel*, 215 F.3d at 1088 (citation omitted). To establish reliability, the testimony must be derived from valid scientific knowledge, the witness must possess sufficient expertise, and the state of pertinent scientific knowledge must permit the assertion of a reasonable opinion. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Testimony is grounded in valid knowledge if it is "based on the methods and procedures of science [or other expertise] rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation*, 259 Fed.Appx. 499, 500, 2008 WL 84540, 1 (3rd Cir. 2008) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003), and *Daubert*, 509 U.S. at 590 (to qualify as scientific knowledge, "an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.").

Federal Rule of Evidence 702 allows opinion testimony by an expert only if the expert is qualified by knowledge, skill, experience, training, or education and only if: (a) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

## III. ANIMATIONS SHOULD BE EXCLUDED FROM TRIAL

Plaintiff's position is that the three officers' body-worn camera videos will likely be shown to the jury and clearly show what occurred from the officers' perspectives. There is no need for any animations. Even Mr. Held testified that the combination of the three BWC videos gives the viewer the best opportunity to track what Lopez was doing. (Sincich Decl. ¶33(O).) Mr. Held admits that an animation is almost impossible to recreate what Wright saw. (Sincich Decl. ¶33(N).) There are no gaps to fill in the videos that require an animation that inaccurately depicts the videos. These are not black and white surveillance camera videos using outdated technology that is difficult to view. This is not a matter where the videos are from such a drastically different angle that they show a different perspective from that of the officers. These BWC videos clearly show the incident from cameras attached to the involved officers' chests closely depicting what was presented in front of them. In fact, instead of creating an animation whereby the camera angle is from the position of Defendant Wright's actual eyes to show what was in his potential field of view, Defendants present animations that are purposefully different from Wright's perspective, including from bird's eye view. The animations are not helpful to the jury, are not from Wright's perspective, are not necessary, and are nevertheless inaccurate. In fact, insofar as the BWC videos are shaky due to officer movement, both parties retained video experts to stabilize and synchronize the videos to assist the trier of fact in viewing what occurred from actual objective video evidence. These stabilized videos are the only thing the jury should see other than the raw footage.

Plaintiff understands the Court may not be able to decide what portions of the animations, if any, it will permit without understanding the key differences between the unaltered video and the animations. Indeed, it may require careful consideration of the unadulterated videos, the slow-motion and stabilized videos, and synchronized videos (or pdf frame of each) in a side-by-side comparison to the

animations to fully understand the inaccuracies and differences between them. To assist in the Court's analysis, Plaintiff has provided all the animations as well as all the Defense video expert's attachments to his expert disclosures. (Sincich Decl. ¶¶31-32, Exh. T(1)-(8) and U(1)-(12).)

  Further, as the Court can see in Mr. Held's "Camera Match" animation, Mr. Held has the ability to place the animation as a shadow overlay on top of Officer Park's BWC video. In doing so, the Court can readily see the inaccuracies between the two. (Sincich Decl. ¶T(1).) The current "Camera Match" animation only provides particular moments where there is an overlay. Thus, Plaintiff respectfully requests that the Court order Defendants to produce a true camera match file with the animation overlay displayed over the raw BWC video the entire time so that the Court can see all the inflammatory inaccuracies and evaluate the challenged animations. Mr. Held has testified this is possible. (Sincich Decl. ¶33(A).)

  Mr. Held's task was to review body-worn camera footage, analyze that footage, and animate the positions of the officers and Lopez throughout the shooting event. (Sincich Decl. ¶33(B).) It is essential in Mr. Held's work to ensure that the placement of the individuals is as accurate as possible. (Sincich Decl. ¶33(C).) Mr. Held was supposed to make the animations as close as possible to exactly what occurred in the videos. (Sincich Decl. ¶33(D).) However, as described below, Mr. Held failed to do so and instead created animations that reflect Defendants' theory of the case, not precisely what is in the videos.

  If an individual's position is even slightly off initially when matching the virtual environment to the video, then it would have an effect on other depictions later in the animation. (Sincich Decl. ¶33(H).) There are several examples of inaccuracies in Mr. Held's animations due to budgetary constraints, time constraints, and decisions on where Mr. Held chooses to focus his attention. (Sincich Decl. ¶33(I).) For instance, Mr. Held admitted to inaccurately placing Lopez closer to

Defendant Wright in the animation than what is depicted in the video along with other inaccuracies in the animation. (Sincich Decl. ¶33(L).)

Mr. Held has been excluded from testifying at trial before; his animations have been excluded from being published to the jury before, including the most recent trial Mr. Held participated in; and Mr. Held has been ordered to alter his animations prior to them being presented to the jury before, including the court ordering an element of the animation removed. (Sincich Decl. ¶33(Q)-(S).)

### A.    Defendants' Arm Pumping Animations Should be Excluded

Defendant Wright has stated in his statement to investigators and at deposition why he used deadly force against Plaintiff. Namely, Wright says he saw Plaintiff partially withdraw a gun from his coat as officers approached. That's it. Now, after realizing Plaintiff's visibly empty right hand that once touched the gun in his pocket was up in the air for over a second prior to the first shot, Defendants will attempt to justify Defendant Wright's use of excessive and unreasonable force by confusing and misleading the jury with alternative theories based on circumstances that were not presented to Defendant Wright. Despite Wright's assertions, Defendants will argue that Lopez reached for a gun a second time, reached for Wright's gun, and tried to block Wright's hand. These theories are completely inconsistent with video and testimonial evidence. Defendant Wright never mentioned anything of the sort to justify his use of deadly force, no other officer testified that they saw anything of the sort, and importantly the same is not seen in any of the three pertinent body-worn camera videos.

Nevertheless, to bolster Defendants' theory they retained a police practices expert to opine that Lopez attempted to reach for his gun a second time, and that Lopez was blocking Wright with his left arm. (Sincich Decl. ¶24, see also Plaintiff's Motion *in Limine* No. 4.) Given that this conduct is seen nowhere on the videos, Defendants had Mr. Held create animations showing two pumping motions by Lopez in order to support Defendants' post-incident unsupported theories that are

completely inconsistent with the video and testimonial evidence.[1] (Sincich Decl. ¶31, Exhs. T(2)-(8), Held Animation Nos. 2-8.)

First, the animations are not from Defendant Wright's perspective, which makes them unhelpful for the jury given the salient issues for the jury's consideration are the perspectives of Wright and Lopez. Mr. Held admitted that it was possible to create the animation so that it reflected Defendant Wright's eye level (Sincich Decl. ¶33(M)), but he chose or was instructed not to make the animation to reflect Defendant Wright's perspective.

Second, each of the depictions suggests a reaching motion by Lopez in the direction of Wright that does not appear in the unadulterated video. Seven of Mr. Held's animations are particularly egregious in this regard as they appear to show Lopez's left arm moving back and forth in a pumping action towards Wright. This is not depicted in the raw video. For instance, after Plaintiff's counsel painstakingly took Mr. Held through several BWC videos and frame-by-frame images, Mr. Held admitted that from 1.0 to 0.87 seconds prior to the first shot, there is distance being created between Defendant Wright and Lopez's left hand, and that Lopez's left hand is being rotated up so that his palm is forward. (Sincich Decl. ¶33(P).) This is inapposite of what Mr. Held depicts in his animations at that time, namely a prejudicial left-handed pumping motion towards Defendant Wright that does not exist in the videos.

Further, one of the primary sources of information on which Mr. Held based his animations was from the work of Defendants' video expert Parris Ward. Mr. Ward created a stabilized version of Officers Wright and Park's videos, a slow-motion version of Officers Wright and Park's videos, a synchronized video of the

---

[1] Mr. Held's animations rely in part on a self-serving critical incident video prepared by the City of Riverside and distributed to the public in an effort to influence public perception of the shooting. The jury should never see this video and its use as a predicate for the animations is problematic at best.

officers' videos, and a slow-motion version of the synchronized video. Along with that, Defense expert Mr. Ward provided .pdf documents that capture the videos above frame-by-frame.

Defendants' expert Mr. Ward's Report attachments show that at approximately 1.8 seconds prior to being shot, Lopez was no longer removing the gun from his coat pocket but starting to push the gun back into his coat. At approximately 1.3 seconds prior to being shot, Lopez began to raise his empty right hand in the air from his coat while Lopez's left hand was always empty. At approximately 1.2 seconds prior to being shot, Lopez's visibly empty right hand was moving away from his coat pocket given that at approximately 1.1 seconds prior to being shot, Lopez's visibly empty right hand is seen in the video up near his shoulder, palm out, in compliance with officer commands. At approximately 1.0 seconds prior to being shot, Lopez's visibly empty left hand began to join the right hand in the up, shoulder-high position from being held parallel to the ground. At approximately 0.87 seconds prior to the first shot being fired, Mr. Ward's attachments clearly show both of Lopez's visibly empty hands were up in compliance with officer commands. For approximately 0.87 seconds, Lopez slowly rotated his body to his left, in the direction of the other approaching officers who were also giving him commands, followed by Defendant Wright shooting Lopez with his visibly empty hands up near shoulder height, palms out, fingers spread and pointed up. Then, 0.54 seconds after shooting Lopez, as Lopez was falling to the ground, Wright shot Lopez a second time.

Even from Defense expert Mr. Ward's attachments, slowing and stabilizing the videos, no left-hand pumping motion is seen, and Lopez never reached for a gun a second time. (Sincich Decl. ¶ 32(11).) For an example of the drastic inflammatory misrepresentation of facts that these animations represent, the Court could compare Lopez's left arm position at -1.23 seconds prior to the first shot in the animation to the Officer Park BWC video. The comparison obviously shows that Lopez is not

reaching towards Defendant Wright. A careful analysis of Lopez's hand positions in the 1.87 seconds prior to the first shot will reveal an inaccurate depiction of events in the animation. If Defendants are permitted to present these unsupported and prejudicial animations and unsupported expert testimony regarding this "pumping" action and second reaching motion, it will carry a substantial risk of completely misleading the jury and confusing the issues. Fed. R. Evid. 403. Further, the time it will take to pick apart every detail of Mr. Held's animations that are inaccurate—and there are many—will create a substantial danger of wasting time, needlessly presenting cumulative evidence, undue delay and creating a mini-trial within the trial. *Id.*

Not only is it unsupported by the videos, but Defendants' theory is not supported by any of the involved officers' statements or testimony. Thus, these speculative, unreliable, and highly inflammatory animations unduly prejudice Plaintiff. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 578, 595 (1993). Those concerns weigh even more strongly when evaluating compelling and realistic visual images like the ones Defendants' expert Mr. Held created that Plaintiff seeks to exclude. An inaccurate computer model could "affirmatively mislead the jury" in a way that cannot be adequately addressed through cross-examination, because "[t]he computer model is a powerful tool, and … runs a risk of making a strong impression on the mind of the jury." *Bowoto v. Chevron Corp.*, 2006 WL 1627004, at *3 (N.D. Cal. June 12, 2006) (excluding inaccurate computer model under Rule 403); see also *Bullock v. Daimler Trucks North America, LLC*, 819 F. Supp. 2d 1172, 1175 (D. Colo. 2011) ("Because of its dramatic power, trial judges should carefully and meticulously examine proposed

animation evidence for proper foundation, relevancy and the potential for undue prejudice.").

The danger is that the jury will assign more weight to the animations than they do the physical evidence, the actual videos themselves, and witness testimony. *See*, *e.g.*, *Racz v. R.T. Merryman Trucking, Inc.*, 1994 WL 124857, at *5 (E.D. Pa. Apr. 4, 1994) (finding that any relevance of a computer animation is outweighed by the danger of confusion and prejudice, because "seeing is believing" and the "jury may give undue weight to an animated reconstruction" of the incident).

To label the animations, which do nothing more than depict a skewed defense version of the video evidence masquerading as "expert opinion," improperly influences the jury toward one version of the facts without any academic or scientific basis for the persuasion. Indeed, Defendants' expert Mr. Held has been excluded from presenting animations at trial previously. The touchstone of whether a witness may testify as an expert under Fed. R. Evid. 702 is…whether he would be "helpful," but it is helpfulness to the trier of fact, not to a party's case, that counts. *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995) (finding no abuse of discretion where limitations were placed on expert testimony).

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order excluding Defendants' seven inaccurate animations from trial.

### B. Defendants' Floating Gun Animations Should be Excluded

Two of Mr. Held's animations depict an inflammatory floating, yellow-highlighted gun attached to Lopez's person. Mr. Held admitted to depicting in his animations something that is not in the body-worn camera videos, including the yellow gun. (Sincich Decl. ¶33(E).) The unaltered video already requires video experts to stabilize and zoom in to capture nothing but a small portion of a black object that cannot be affirmatively identified as anything in particular for only a frame or two of one video. Defendant Wright testified that what he understood to be the butt of a gun quickly disappears from view until it is cut out of Lopez's coat

pocket after he is shot. There is no evidence whatsoever to show where the gun is at any point after it disappears into Lopez's pocket. There is no evidence whatsoever to show in which direction the gun was facing at all times in the coat or whether it tumbled after Lopez pushed it back into his pocket after it disappeared from view. The only evidence on the issue suggests it fell deep into Lopez's coat pocket because it had to be cut out of the pocket with shears. The use of shears and the position of the gun when pulled from the pocket by officers after the incident is inconsistent with the location of the gun suggested by the animations. The yellowed gun in the animations is speculative at best, and borders on a misrepresentation of the facts.

Nevertheless, the highlighted gun was placed in that position, again by Defendants, to create a theory that Plaintiff's visibly empty hands were right next to his gun so they can argue that he was or could have reached for it a second time. However, there is no basis for the Defense argument, no basis for the placement of the gun in that location, and no basis for the size of the yellow-highlighted gun in the animations. Defendant Wright never saw a yellow-highlighted gun, Wright never saw a full gun prior to his use of deadly force, and Wright never saw where the gun went after the butt of the gun disappeared from his view. Mr. Held even admits that he has no basis for the position of the yellow gun that he depicted in his animations from anything he reviewed in this case. (Sincich Decl. ¶33(J).) The animations do not depict the circumstances that Defendant Wright was confronted with. If the yellowed images are presented to the jury, they will confuse and mislead the jury into believing the gun may have remained far more accessible than it actually was. Given that the location of the gun is not tethered to any facts, Defendants should be ordered to remove the yellowed gun image from animations "OTS Real Time" and "OTS Slow."

/ / /

### C. Defendants' Backwards/Reverse Animation Should be Excluded

Defendants' backwards animation attempts to reverse the shooting incident and creates the impression that Lopez was moving towards Defendant Wright immediately before the shots were fired. An animation showing the incident in reverse is not helpful to the trier of fact but instead creates confusion and misleads the jury. There is no factual basis for this recreation or purpose of it. Thus, the reverse animation should be excluded from trial.

## IV. CONCLUSION

Mr. Held's animations rely on speculative defense theories that have no reliable methodology, are not based on reliable facts and data, and are not helpful to the jury, particularly regarding Lopez's left-hand movements, the depiction of the floating yellow gun, and the sequence of events that are inconsistent with the facts. Therefore, the Court should exclude (1) any of Mr. Held's animations that contain a prejudicially floating, yellow-highlighted gun attached to Lopez's chest, (2) any of Mr. Held's animations that contain two left-hand pumping motions by Lopez, and (3) Mr. Held's backwards view animation.

Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By: __/s/         Marcel F. Sincich__
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich
*Attorneys for Plaintiff*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Xavier Lopez certifies that this brief contains 4,227 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

DATED: December 18, 2023   **LAW OFFICES OF DALE K. GALIPO**
                          **LAW OFFICES OF GRECH & PACKER**

By: /s/        Marcel F. Sincich
    Dale K. Galipo
    Trenton C. Packer
    Marcel F. Sincich
    *Attorneys for Plaintiff*