**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* XAVIER LOPEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE No.: 5:21-cv-02140-PSG (JEMx)<br><br>[*Honorable Philip S. Gutierrez*]<br>Magistrate Judge John E. McDermott<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* No. 4 TO EXCLUDE AND LIMIT OPINIONS OF DEFENDANTS' TWO POLICE PRACTICES EXPERTS**<br><br>[(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*]<br><br>**Pretrial Conference**:<br>January 19, 2024, at 02:00 p.m.<br>**Jury Trial**<br>February 1, 2024, at 09:00 a.m.<br><br>350 West 1st Street, 6A, 6th Floor<br>Los Angeles. California 90012 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff XAVIER LOPEZ hereby moves *in limine* for an order excluding one of Defendants two retained police practices experts, Craig Allen and Jeffrey Martin, on the following grounds:

**1.** Defendants retained two police practices experts who have substantially the same backgrounds, whose testimony would be unnecessarily cumulative, duplicative, a waste of the Court's and juries time and resources, would be unduly prejudicial to bolster Defendants' position, and would be confusing to the jury. (Sincich Decl. ¶¶29-30.)

**a.** Both Mr. Allen and Mr. Martin intend to provide opinions related to liability of Plaintiff's claims for excessive force, batter, negligence, and violation of the Bane Act against Defendant Wright.

**b.** Both Mr. Allen and Mr. Martin intend to provide opinions related to *Monell* liability.

**c.** Both Mr. Allen and Mr. Martin intend to provide opinions related to perception reaction time.

**d.** Both Mr. Allen and Mr. Martin intend to provide opinions related to propensity evidence. (See Plaintiff's Motions *in Limine* Nos. 1-2.)

**e.** Both Mr. Allen and Mr. Martin intend to provide factual findings disguised as opinions that usurp the province of the jury.

**f.** Both Mr. Allen and Mr. Martin intend to provide legal conclusions disguised as opinions that usurp the province of the Court.

**g.** Both Mr. Allen and Mr. Martin intend to provide testimony related to officer training.

**h.** Both Mr. Allen and Mr. Martin intend to provide opinions related to officer tactics.

**i.**     Both Mr. Allen and Mr. Martin intend to provide opinions related to Plaintiff's possession of a gun.

**j.**     Both Mr. Allen and Mr. Martin intend to provide opinions related to Plaintiff's criminal and personal history.

Further, PLEASE TAKE NOTICE that Plaintiff XAVIER LOPEZ hereby moves *in limine* for an order excluding the testimony and opinions of the remaining Defense police practices expert permitted to testify at trial on the following grounds: **Regarding Craig Allen**:

**2.**     Defendants intend to illicit impermissible propensity evidence. (Sincich Decl. ¶22.)

**3.**     Defendants intend to illicit impermissible credibility determinations. (Sincich Decl. ¶23.)

**4.**     Defendants intend to illicit information that is not helpful and unreliable as it calls for speculation and lacks foundation. (Sincich Decl. ¶24.)

**5.**     Defendants intend to illicit information unknown to Defendant Wright. (Sincich Decl. ¶25.)

**6.**     Mr. Allen's opinions related to perception reaction time should be excluded as these opinions that are outside of his expertise, require scientific study that he does not have, and is speculative and lacks foundation, with no identifiable methodology or critical analysis; using ipse dixit to arrive at opinions. (Sincich Decl. ¶30, Exh. Q, Allen Report at 11, 19-21, and 32.)

**7.**     Mr. Allen's legal conclusions including analysis of statutes and Ninth Circuit law should be excluded. (Sincich Decl. ¶30, Exh. Q.)

**8.**     Mr. Allen's factual conclusions should be excluded. (Sincich Decl. ¶30, Exh. Q.)

**9.**     Mr. Allen's video analysis should be excluded. (Sincich Decl. ¶30, Exh. Q.)

**10.**     Mr. Allen's Opinion 4 that Lopez's intent was to exert control or deflect Wright's left hand; opinion that Lopez's hand configuration allows quick access to the handgun or engage physically with Wright should be excluded. (Sincich Decl. ¶30, Exh. Q, Allen Report at 17.)

**11.**     Mr. Allen's Opinion 7 that Lopez was continually accessing his pocket at 1.3 seconds, doing nothing that would indicate surrender, and manipulating the gun is a misinterpretation of fact, not supported by the objective video evidence, and has no reliable basis, therefore should be excluded. (Sincich Decl. ¶30, Exh. Q, Allen Report at 18.)

**12.**     Mr. Allen's Conclusion that "Mr. Lopez again attempted a second time to access the area where his firearm was at approximately 1.2 seconds prior to the shooting" is a misinterpretation of fact, not supported by the objective video evidence, and has no reliable basis as it was never mentioned by Defendant Wright, therefore should be excluded. (Sincich Decl. ¶30, Exh. Q, Allen Report at 32.)

**Regarding Jeffrey Martin**:

**13.**     To the extent that Defendants intend to illicit impermissible propensity evidence (see Plaintiff's Motion in Limine Nos. 1 and 2).

**14.**     Defendants intend to illicit information that is not helpful and unreliable as it calls for speculation and lacks foundation. (Sincich Decl. ¶27.)

**15.**     Mr. Martin's opinions related to perception reaction time should be excluded as these opinions that are outside of his expertise, require scientific study that he does not have, and is speculative and lacks foundation, with no identifiable methodology or critical analysis; using ipse dixit to arrive at opinions. (Sincich Decl. ¶30, Exh. R, Martin Report, Opinions 2 and 7 at 20-22, and 26.)

1    **16.**    Mr. Martin's legal conclusions, including analysis of statutes and Ninth

2    Circuit law should be excluded. (Sincich Decl. ¶30, Exh. R.)

3    **17.**    Mr. Martin's factual conclusions should be excluded. (Sincich Decl.

4    ¶30, Exh. R.)

5    **18.**    Mr. Allen's video analysis should be excluded. (Sincich Decl. ¶30, Exh.

6    R.)

7    **19.**    Mr. Allen's *Monell* opinions should be excluded. (Sincich Decl. ¶30,

8    Exh. R, Martin Report, Opinion 9 at 26.)

9

10    Plaintiff makes this Motion under Federal Rules of Evidence, Rules 401, 402,

11    403, 702, 703, and 802.

12    Plaintiff bases this motion on this Notice of Motion and Motion, the attached

13    Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in

14    Support of Plaintiff's Motions *in Limine* Nos. 1-5 and Exhibits attached thereto,

15    Plaintiff's [Proposed] Order, any argument raised at the hearing on this motion, and

16    all other pleadings and papers on file with this Honorable Court.

17    **Statement of Local Rule 7-3 Compliance**: This motion is made following a

18    conference of counsel during which no resolution could be reached. (Declaration of

19    Marcel F. Sincich ("Sincich Decl.") at ¶2.)

20

21    Respectfully submitted,

22    DATED: December 18, 2023          **LAW OFFICES OF DALE K. GALIPO**

23                                      **LAW OFFICES OF GRECH & PACKER**

24                                      By:   _/s/_     _Marcel F. Sincich_

25                                            Dale K. Galipo
                                             Trenton C. Packer
26                                            Marcel F. Sincich
                                             *Attorneys for Plaintiff*
27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    INTRODUCTION .................................................................................. 1

II.   LEGAL STANDARD .............................................................................. 1

III.  DEFENDANTS SHOULD BE LIMITED TO ONE POLICE PRACTICES
      EXPERT ............................................................................................... 3

IV.   DEFENDANTS' POLICE PRACTICES EXPERTS' OPINIONS SHOULD BE
      EXCLUDED FROM TRIAL ...................................................................... 6

      A. MR. ALLEN AND MR. MARTIN'S LEGAL AND ULTIMATE ISSUES OPINIONS ......... 6

      B. MR. ALLEN AND MR. MARTIN'S FACTUAL DETERMINATIONS, CREDIBILITY
         DETERMINATIONS, VIDEO ANALYSIS, AND SPECULATIVE OPINIONS ARE NOT
         HELPFUL OR RELIABLE AND ARE INADMISSIBLE ............................................. 7

      C. MR. ALLEN AND MR. MARTIN'S PERCEPTION/REACTION OPINIONS ARE
         INADMISSIBLE ............................................................................................ 13

V.    CONCLUSION .................................................................................... 18

1

## **TABLE OF AUTHORITIES**

Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013)...................................................................13

*Allen v. Hylands Inc.*,
   No. CV-121150-DMG-MANx, 2015 WL 12720304 (C.D. Cal. Aug. 20,
   2015), aff'd, 773 F. App'x 870 (9th Cir. 2019) ......................................5

*Alves v. County of Riverside*,
   CV 19-2083 JGB (SHKx) (C.D. Cal. March 13, 2023)..........................17

*Anderson v. Suiters*,
   499 F.3d 1228 (10th Cir. 2007)................................................................7

*Banda v. Herc Rentals, Inc.*,
   No. 18-CV-05329-JCS, 2020 WL 353461 (N.D. Cal. Jan. 21, 2020) ...........16

*Barabin v. Scapa Dryer Felts, Inc.*,
   No. C07-1454JLR, 2018 WL 1570781 (W.D. Wash. Mar. 30, 2018)..............5

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) .................................................................................12

*California ex rel. Brown v. Safeway, Inc.*,
   615 F.3d 1171 (9th Cir. 2010)................................................................12

*Campbell Indus. v. M/V Gemini*,
   619 F.2d 24 (9th Cir. 1980)......................................................................5

*Chatman v. City of Chicago*,
   No. 13 C 5697 Dckt. #225 (N.D. Ill.).....................................................16

*Cooper v. Takeda Pharms. Am., Inc.*,
   239 Cal. App. 4th 555 (2015)..................................................................12

*Crow Tribe of Indians v. Racicot*,
   87 F.3d 1039 (9th Cir. 1996)....................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .........................................................................passim

*Davis v. Mason Cnty.*,
   927 F.2d 1473 (9th Cir. 1991)..................................................................5

*Dominguez v. City of Los Angeles*,
   No. CV174557-DMG-PLAx, 2018 WL 6164278 (C.D. Cal. Oct. 9, 2018)..14,
   15, 16

*Elsayed Mukhtar v. California State Univ., Hayward*,
   299 F.3d 1053 (9th Cir. 2002), amended sub nom. *Mukhtar v. California State
   Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003) ....................................1, 6, 13

*Engman v. City of Ontario*,
   No. ED-cv-10-284 CAS PLAx, 2011 WL 2463178 (C.D. Cal. June 20, 2011)5

*Est. of Avila v. City of Long Beach*,
   No. CV-1705607-AB-JPRx, 2018 WL 7501260 (C.D. Cal. Dec. 18, 2018)..16

*Est. of Barabin v. Asten Johnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014)..................................................................13

Federal Rules of Evidence, Rule 704 ...........................................................7

*Garrit v. City of Chicago,*
　　No. 16-CV-7319, 2022 WL 124554 (N.D. Ill. Jan. 13, 2022) ....................... 16

*Gideon v. Johns-Manville Sales Corp.,*
　　761 F.2d 1129 (5th Cir. 1985) ............................................................. 12

*Goebel v. Denver & Rio Grande W. R.R. Co.,*
　　215 F.3d 1083 (10th Cir. 2000) ............................................................ 2

*Graham v. Connor,*
　　490 U.S. 386 (1989) ............................................................................ 6

*Guidroz-Brault v. Missouri P.R. Co.,*
　　254 F.3d 825 (9th Cir. 2001) ............................................................... 12

*Hangarter v. Provident Life & Acc. Ins. Co.,*
　　373 F.3d 998 (9th Cir. 2004) ................................................................. 6

*In re Hanford Nuclear Reservation Litigation,*
　　534 F.3d 986 (9th Cir. 2008) ............................................................ 4, 5

*Johnson v. Memphis Light Gas & Water Div.,*
　　695 F. App'x 131 (6th Cir. 2017) ........................................................ 12

*Jones v. Beelman Truck Co.,*
　　No. 4:13-CV-252 CAS, 2015 WL 3620651 (E.D. Mo. June 9, 2015) ........... 16

*Kumho Tire Co. v. Carmichael,*
　　526 U.S. 137 (1999) ....................................................................... 2, 13

*Lust v. Merrell Dow Pharmaceuticals, Inc.,*
　　89 F.3d 594 (9th Cir. 1996) .................................................................. 2

*Major League Baseball Properties, Inc. v. Salvino, Inc.,*
　　542 F.3d 290 (2d Cir. 2008) ............................................................... 12

*McCoy v. Whirlpool Corp.,*
　　287 F. App'x 669 (10th Cir. 2008) ...................................................... 12

*Moniz v. City of Delano, California,*
　　No. 1:13-cv-00093-JLT, 2015 WL 128124 (E.D. Cal. Jan. 8, 2015) .............. 5

*Murray v. S. Route Mar. SA,*
　　870 F.3d 915 (9th Cir. 2017) ............................................................... 13

*Reed v. Lieurance,*
　　863 F.3d 1196 (9th Cir. 2017) ............................................................... 8

*Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation,*
　　259 Fed.Appx. 499 2008 WL 84540 (3rd Cir. 2008) ............................... 3

*Richardson by Richardson v. Richardson-Merrell, Inc.,*
　　857 F.2d 823 (D.C. Cir. 1988) ........................................................... 12

*Ruud v. United States,*
　　256 F.2d 460 (9th Cir.), cert. denied, 358 U.S. 817 (1958) ....................... 4

*Schneider v. Fried,*
　　320 F.3d 396 (3rd Cir. 2003) ................................................................ 3

*Scott v. Henrich,*
　　39 F.3d 912 (9th Cir. 1994) .................................................................. 6

*Shirar v. Guerrero,*
　　No. ED-cv-13906-JGB-DTBx, 2017 WL 6001270 (C.D. Cal. Aug. 2, 2017) . 7

*Smelser v. Norfolk Southern Ry. Co.*,
105 F.3d 299 (6th Cir. 1997)......................................................................2

*Smith v. City of Hemet*,
394 F.3d 689 (9th Cir. 2005)....................................................................10

*Tompkins v. Medtronic, Inc.*,
17 F.3d 396 (9th Cir. 1994)........................................................................5

*United States v. Alisal Water Corp.*,
431 F.3d 643 (9th Cir. 2005)......................................................................5

*United States v. Candoli*,
870 F.2d 496 (9th Cir. 1989)......................................................................8

*United States v. Finley*,
301 F.3d 1000 (9th Cir. 2002)..............................................................2, 11

*United States v. Weitzenhoff*,
35 F.3d 1275 (9th Cir. 1993)......................................................................6

*Valtierra v. City of Los Angeles*,
99 F. Supp. 3d 1190 (C.D. Cal. 2015)......................................................6

*Zuchowicz v. United States*,
140 F.3d 381 (2d Cir. 1998)....................................................................12

<u>Rules</u>

Federal Rules of Evidence, Rule 402 ................................................................1

Federal Rules of Evidence, Rule 403 ..............................................1, 11, 15

Federal Rules of Evidence, Rule 404 ......................................................1, 10

Federal Rules of Evidence, Rule 702 ......................................................passim

Federal Rules of Evidence, Rule 703 ................................................................1

Federal Rules of Evidence, Rule 802 ................................................................1

PLAINTIFF'S MOTION *IN LIMINE* NO. 4 – TO EXCLUDE AND LIMIT DEFENDANTS' POLICE PRACTICES EXPERTS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      INTRODUCTION

On January 26, 2021, Riverside Police Department Officer Evan Wright (subsequently promoted to Sergeant) shot Plaintiff Xavier Lopez while Lopez was not an immediate threat of death or serious bodily injury. The claims going to trial include (1) violation of the Fourth Amendment, Excessive Force, pursuant to 42 U.S.C. §1983; (2) Municipal Liability for Unconstitutional Custom, Practice, or Police, pursuant to 42 U.S.C. §1983; (3) Municipal Liability for Failure to Train, pursuant to 42 U.S.C. §1983; (4) Municipal Liability for Ratification, pursuant to 42 U.S.C. §1983; (5) Battery under state law; (6) Negligence under state law; and (7) violation of the Bane Act.

By way of the instant motion *in limine*, first, Plaintiff moves for an order of this Court to limit Defendants to one police practices expert, either Craig Allen or Jeffrey Martin. Secondly, regarding the remaining police practices expert permitted to testify, Plaintiff moves to exclude their testimony to the extent that it is not helpful to the jury, usurps the province of the jury, usurps the province of the Court, outside of their expertise, unsupported basis without sufficient facts and data, unreliable methodology, and based on speculative theory, ipse dixit, and not facts relevant to this matter. *See* Fed. R. Evid. 402, 403, 404, 702, 703, 802.

## II.      LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). To be admissible, expert testimony must generally satisfy a two-prong test, reliability, and relevance. *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), amended sub nom. *Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003) (footnote omitted). To establish relevance, the testimony must be helpful to the trier of fact and beyond the common knowledge of jurors. *Daubert*, 509 U.S. at 597. Rule 702 requires courts to assess the reliability of expert testimony based on

1  scientific, technical, or "other specialized" knowledge before admitting it. *Daubert*,

2  509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)

3  (extending *Daubert* gatekeeping requirement to "technical" and "specialized"

4  knowledge).

5      The proponent of the expert testimony bears the burden of proving

6  admissibility. *Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir.

7  1996) ("[i]t is the proponent of the expert who has the burden of proving

8  admissibility"); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d

9  1311, 1316 (9th Cir. 1995) ("the party presenting the expert must show that the

10  expert's findings are based on sound science"). Assessment of the expert's

11  qualifications to testify is not answered in the abstract but based on whether the

12  expert's "qualifications provide a foundation for a witness to answer a specific

13  question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997)

14  (internal quotations omitted). The court determines whether the expert's training and

15  qualifications relate to the specific subject matter of his proposed testimony.

16      A court may satisfy its "gatekeeping" function by conducting a pretrial

17  hearing, or by ruling on a Rule 702 objection at trial, "so long as the court has

18  sufficient evidence to perform 'the task of ensuring that an expert's testimony both

19  rests on a reliable foundation and is relevant to the task at hand.'" *Goebel v. Denver*

20  *& Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert*,

21  509 U.S. at 597). Although "the gatekeeper inquiry under Rule 702 is ultimately a

22  flexible determination, ... a district court, when faced with a party's objection, must

23  adequately demonstrate by specific findings on the record that it has performed its

24  duty as gatekeeper." *Goebel*, 215 F.3d at 1088 (citation omitted). To establish

25  reliability, the testimony must be derived from valid scientific knowledge, the

26  witness must possess sufficient expertise, and the state of pertinent scientific

27  knowledge must permit the assertion of a reasonable opinion. *United States v. Finley*,

28  301 F.3d 1000, 1007 (9th Cir. 2002). Testimony is grounded in valid knowledge if it

is "based on the methods and procedures of science [or other expertise] rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Reger v. A.I. DuPont Hosp. for Children of Nemours Foundation*, 259 Fed.Appx. 499, 500, 2008 WL 84540, 1 (3rd Cir. 2008) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3rd Cir. 2003), and *Daubert*, 509 U.S. at 590 (to qualify as scientific knowledge, "an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – *i.e.*, "good grounds," based on what is known.").

Federal Rule of Evidence 702 allows opinion testimony by an expert only if the expert is qualified by knowledge, skill, experience, training, or education and only if: (a) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The issue here is not whether Mr. Allen or Mr. Martin have significant experience in law enforcement. Rather, the first question for the Court is whether his proffered testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." The next question is whether there is a reliable methodology applied to reach the opinions offered.

## III. DEFENDANTS SHOULD BE LIMITED TO ONE POLICE PRACTICES EXPERT

Defendants retained two police practices experts – both planning on testifying about the same subject area. Defendants only counter to Plaintiff's concern for duplicative, cumulative, and unduly prejudicial bolstering testimony is that their retained experts "have different backgrounds/fields of expertise: Allen is our use of force expert and Martin is our human factors experts." (Sincich Decl. ¶36, Exh. W, Correspondence re. Motions *in Limine*.) Fed. R. Evid. 403. Despite Defendants

assertion, there is significant overlap in these experts' backgrounds and expected testimonies. The following are just some examples that both Mr. Allen and Mr. Martin have backgrounds as: police officers, field training officers, narcotics investigators, patrol sergeants, training sergeants, internal affairs, firearms instructors, defensive tactics instructors, scenario-based instructors, taser instructors, less-lethal instructors, patrol tactics, use of force instructors, and in the Force Science Institute, de-escalation, search warrants, academy instructor, psychology, and human factors. (Sincich Decl. ¶29.)

Further, Mr. Allen and Mr. Martin's opinions and expected testimonies are not carefully compartmentalized so as to address different claims of relief in this matter. Instead, both defense police practices experts expect to opine on many of the same topics. The significant overlap in the areas of testimony of these experts that Defendants seek to illicit at trial include statements of fact, video analysis, use of force opinions, perception/reaction time opinions, *Monell* opinions, and legal conclusion. (Sincich Decl. ¶30.) In particular, both experts opine as to the reasonableness of Defendant Wrigth's use of deadly force (Sincich Decl. ¶30(R)-(S)); Defendant Wright's tactical conduct (Sincich Decl. ¶30(U), (Z), (AA), (BB)); human factors opinions related to perception/reaction time (Sincich Decl. ¶30(T), (V), (X), (FF)); and *Monell* (Sincich Decl. ¶30(GG)).

The district court has discretion to exclude evidence when its probative value is substantially outweighed by the danger of misleading the jury or confusing the issues. *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1016 (9th Cir. 2008); *see Ruud v. United States*, 256 F.2d 460 (9th Cir.), cert. denied, 358 U.S. 817 (1958) (the Court's inherent power to limit the number of experts at trial has long been recognized). District courts have similarly excluded or limited expert testimony that is duplicative, substantially overlapping, or is otherwise unnecessarily cumulative. *See, e.g., Allen v. Hylands Inc.*, No. CV-121150-DMG-MANx, 2015 WL 12720304, at *1-4 (C.D. Cal. Aug. 20, 2015), aff'd, 773 F. App'x 870 (9th Cir.

2019) (excluding expert testimony as cumulative because the experts opined on many of the same topics and relied on the same or very similar evidence for their opinions); *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 28 (9th Cir. 1980) (excluding expert testimony that would be "merely cumulative"); *Tompkins v. Medtronic, Inc.*, 17 F.3d 396 (9th Cir. 1994) (the district court did not abuse its discretion when it refused to permit cumulative expert testimony); *see In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (acknowledging the district court's discretion to exclude evidence under FRE 403, especially "with respect to expert witnesses"); *Engman v. City of Ontario*, No. ED-cv-10-284 CAS PLAx, 2011 WL 2463178, at *8 (C.D. Cal. June 20, 2011) (determining that expert testimony was cumulative where the opinions of the experts overlapped substantially); *see also Moniz v. City of Delano, California*, No. 1:13-cv-00093-JLT, 2015 WL 128124, at *7 (E.D. Cal. Jan. 8, 2015) (limiting the presentation of experts to testimony that does not duplicate the testimony of other experts); *Barabin v. Scapa Dryer Felts, Inc.*, No. C07-1454JLR, 2018 WL 1570781, at *2-4 (W.D. Wash. Mar. 30, 2018).

In this case, there is a substantial overlap in the opinions of Defendants' two retained police practices experts, they both opine on the same areas of liability, and have significantly the same opinions in those areas. This is exactly the sort of overlapping and duplicative testimony that the Ninth Circuit and California District Courts have excluded as needlessly cumulative under Rule 403. *See United States v. Alisal Water Corp.*, 431 F.3d 643, 659-60 (9th Cir. 2005); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484 (9th Cir. 1991). Thus, Plaintiff respectfully requests that this Court limit Defendants to only one police practices expert, especially concerning: (1) the reasonableness of Defendant Wright's conduct; (2) whether Defendant Wright's conduct comported with officer training; (3) whether a reasonable officer would conclude that Plaintiff was an immediate threat of death or serious bodily injury; and (4) whether there were reasonable alternatives.

## IV.  DEFENDANTS' POLICE PRACTICES EXPERTS' OPINIONS SHOULD BE EXCLUDED FROM TRIAL

### A.  Mr. Allen and Mr. Martin's Legal and Ultimate Issues Opinions

It is well-established that an expert witness "may not may not give an opinion as to [his] *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Mukhtar v. Cal. State Univ., Hayward,* 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (emphasis in original); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law."). Indeed, "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life & Acc. Ins. Co*., 373 F.3d 998 (9th Cir. 2004) (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). Specifically, the reasonableness of Defendant Wright's actions in light of the circumstances confronting him is "a question for the jury, or if no material facts are in dispute, for the Court." *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015), citing *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

Mr. Allen and Mr. Martin acknowledge and repeat that *Graham v. Connor*, 490 U.S. 386 (1989) set the legal standard of objective reasonableness for examining use of force cases. However, both inject their own *opinions* that the force used was "reasonable" and provide interpretation of Ninth Circuit authority. (Sincich Decl ¶30(R), Exhs. Q and R). Opining that the use of force was "reasonable," is exactly the kind of legal conclusion that goes to the ultimate issue in this case that the law prohibits. Instead, this type of testimony may only be properly elicited through hypothetical questioning, to avoid interfering with eh province of the jury. *Valtierra,* 99 F. Supp. 3d at 1198. Further, there is little a juror could gain from Mr. Allen and Mr. Martin's legal opinion or interpretation of *Graham* or Ninth Circuit law (Sincich Decl. ¶30(EE)) when the Court will instruct the jury on the legal standard for this matter. This is particularly worrisome for Plaintiff given that defense police practices expert Mr. Martin is also an attorney in the State of California. (Sincich Decl. ¶29,

Exh. S at 1.) Mr. Martin should be precluded from providing legal interpretation, lethal theory, or argument in his role as a police practices expert in this matter.

"Police practices experts may only testify as to whether an action conformed with a reasonable standard of practice, not whether the particular officer's action was reasonable under the specific circumstances he faced." *Shirar v. Guerrero,* No. ED-cv-13906-JGB-DTBx, 2017 WL 6001270, at *5 (C.D. Cal. Aug. 2, 2017); see Fed. R. Evid. 702; *see also Anderson v. Suiters*, 499 F.3d 1228, 1273 (10th Cir. 2007) ("While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored.").

Mr. Allen and Mr. Martin's opinions are impermissible legal conclusions that invade the province of the jury and the Court. Thus, Mr. Allen and Mr. Martin's opinions do not appear helpful to "understand the evidence or to determine a fact in issue" as required under FRE 702(a). Accordingly, Mr. Allen and Mr. Martin's legal opinions should be excluded.

Plaintiff also understands that the federal rules do not specifically preclude experts from testifying as to the ultimate issue (here, i.e., whether the use of force was "reasonable"), and that courts take different stances on the issue. Regarding ultimate issue opinions, Plaintiff merely seeks that the Court's ruling applies to both parties.

**B.      Mr. Allen and Mr. Martin's Factual Determinations, Credibility Determinations, Video Analysis, and Speculative Opinions Are Not Helpful or Reliable and are Inadmissible**

Similarly, it is outside the purview of expert witness testimony to make factual and credibility determinations, given that those are the purview of the jury. Federal Rule of Evidence 702 requires that an expert's testimony be helpful to "the trier of fact to understand the evidence" or to the help the trier of fact "determine a fact in issue." Fed. R. Evid. 702(a). Rather, "[t]he jury must decide a witness' credibility."

*United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). Ninth Circuit case law is clear that "[a]n expert witness is not permitted to testify specifically to a witness' credibility." *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017), quoting *Candoli*, 870 F.2d at 506 (finding expert witness testimony bolstering a witness's credibility to be improper.).

Defendants retained five experts in this matter—four of which provide opinions related to video analysis. One defense expert analyzed the videos and created animations (Sincich Decl. ¶31); one defense expert analyzed the videos to stabilize, slow down, and combine them (Sincich Decl. ¶32); and both police practice expert provide video analysis opinions (Sincich Decl. ¶30(Q), Exh. Q, Allen Report at 15-18, 21-22, and Exh. R, Martin Report at 6-9.) Here, Defendant Wright refuses to admit that Plaintiff had his visibly empty hands in the air at the time of his use of deadly force despite it being an obvious fact based on the objective video evidence. A few examples are as follow:

Q. Okay. Did you see his hands up at any time?

A. His hands were in a lot of different places.

(Wright Depo at 29:24-25.)

I'm only asking you if you ever saw him put his hands up.

A. His hands were in a lot of different places, sir.

(Wright Depo at 30:11-13.)

Q. Okay. And I guess while you were watching his hands, did you ever see him put his hands up?

A. His hands were in a lot of different places, and, you know, always near that gun as soon as I saw it.

(Wright Depo at 38:4-7.)

Q. When you watched the slow motion of the video, did you see at some point him having his hands up?

A.    If you're going to -- if you're going to take still -- if you're going to base that off of still photo instead of completely watching the video from, you know, start to finish, where it's fast -- fast paced and rapidly evolving, yeah, his hands were in a lot of different places.

(Wright Depo at 38:10-17.)

But when you watched it in slow motion, did you see at some point him with his hands up?

A.    If you -- if I'm going to dissect the body -- the body-worn camera after the fact, but, you know, during the situation his hands were in a lot of different places including gripping a firearm.

That's – that's the best answer I can give.

(Wright Depo at 39:3-9.)

A reasonable jury could view the video in real time and not see a gun in Plaintiff's hands at all but obviously see Plaintiff's hands up prior to the first shot. The Court has already recognized the same stating, "a reasonable jury could also watch this footage and conclude Lopez's hands were clearly empty at all times, Lopez complied with Wright's commands and held his visibly empty hands in the air, and Lopez neither held nor appeared to reach for any weapon." (Doc. 38, Order Denying Summary Judgment, at 12:16-19.) The Court also reviewed the video evidence and observed "Lopez's hands are completely visible, held up by his head, fingers spread apart and empty; in this moment, Wright puts his left hand on his weapon so that he is holding it with both hands and appears ready to fire." Doc. 38 at 11:25-28.)

Defendants attempt to bolster Wright's erroneous "hands in different places" testimony with animations that include movements by Lopez that are not supported by the video evidence (see Plaintiff's Motion *in Limine* No. 3), and by using defense police practices experts to form inappropriate conclusions of fact (see Sincich Decl. ¶30(P).) These conclusions of fact and Defendants experts' opinions should be read

with the understanding Defendants intend to illicit impermissible character evidence, information unknown to Defendant Wright, and make credibility determinations. Mr. Allen's intent to do so is particularly obvious and more egregious.

Defense expert Mr. Allen dedicated an entire section of his report to utilizing Plaintiff's criminal history specifically as proof of his propensity for violence. (Sincich Decl. ¶22.) This in itself is impermissible. Fed. R. Evid. 404. Defendants also intend to illicit impermissible credibility determinations from Mr. Allen such as his opinions that Lopez's statements are "self-serving at best" and that "Wright correctly perceived" the incident. (Sincich Decl. ¶23.) The Ninth Circuit has long held and explained that in use of force cases, the jury's role in making factual and credibility determinations is of exceptional importance. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Defendants also intend to illicit information unknown to Defendant Wright. (Sincich Decl. ¶25.) Not only should these opinions and testimony be excluded from trial, but to the extent that Mr. Allen's ultimate opinions are based on these impermissible determinations and information, his opinions should also be excluded from trial.

Finally, Defendants intend to illicit information that is not helpful and unreliable as it calls for speculation and lacks foundation. (Sincich Decl. ¶¶24, 27.) Mr. Allen bases his opinions on the improper expert opinions of Defendant Wright that 99.9% of people do not reach for weapons when approached by law enforcement. (Sincich Decl. ¶24(A).) There is no basis for Wright's speculative and improper opinion, and it demonstrates the lack of reliability of Mr. Allen's opinions by relying on it. Mr. Allen also opines that "Mr. Lopez attempted to reach for his handgun a second time." (Sincich Decl. ¶24(B).) This is another example of Defendants creating alternative theories to justify Wright's wrongful conduct that is not supported by the video evidence and never mentioned by Wright in his statement to investigators or at deposition. Additionally, Mr. Allen attempts to form the basis for Mr. Held's improper animations showing Lopez performing some sort of left-

hand blocking maneuver. (Sincich Decl. ¶24(C); see Plaintiff's Motion *in Limine* No. 3.) This is not supported by the objective video evidence. (Sincich Decl. ¶32, Exh. U.)

Mr. Martin also plans on testifying to inflammatory opinions that are unreliable, speculative, and have no foundation in the facts of this case. For instance, Mr. Martin makes an illogical leap that if Wright took cover, it would have resulted in Lopez running into the house and taking a hostage. (Sincich Decl. ¶27(A).) This opinion has no basis in the evidence and seriously risks unfair prejudice to Plaintiff, especially because Lopez never attempted to run nor take a hostage, but ultimately put his hands up and was shot. Fed. R. Evid. 403, 702. Mr. Martin goes to the extreme with anticipated testimony that if Wright had issued a warning, Lopez would have shot Wright. (Sincich Decl. ¶27(B).) Such an opinion is incredibly prejudicial and has no probative value at all under the circumstances of this case. Defendants argue that if Wright stated, "Put your hands up or I will shoot you", then Lopez would have shot Wright completely ignoring that Lopez did put his hands up, even without a warning, and still got shot.

Rule 702(c)-(d) as well as *Daubert* and *Finley* require reliability in the principles and methods used to create opinions and that the principles and methods are reliably applied to the facts of the case taking into account whether the testimony is derived from valid specialized knowledge and whether the witness has sufficient expertise to assert a reasonable opinion. Here, Plaintiff does not dispute Mr. Allen's or Mr. Martin's qualifications, but does take issue with their methods, which are not reliable, as the basis for most of their opinions are Defendants version of facts given priority over contrary objective and physical evidence, no matter how persuasive the latter, including that Lopez surrendered. Since their purely one-sided approach undermines the reliability of their methods, and there is either sparse or non-existent application of principles or unreliable application in the form of impermissible legal

1  opinions and conclusion of fact. For these reasons, Mr. Allen and Mr. Martin fail to

2  meet the reliability standard imposed by Rule 702(c)-(d) and *Daubert* and *Finley*.

3      "'An expert's opinions that are without factual basis and are based on

4  speculation or conjecture'" are inappropriate. *California ex rel. Brown v. Safeway,*

5  *Inc.*, 615 F.3d 1171, 1181 (9th Cir. 2010), *on reh'g en banc sub nom. California ex*

6  *rel. Harris v. Safeway, Inc.*, F.3d 118 (9th Cir. 2011) (quoting *Major League*

7  *Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008). "Rule

8  702 requires that expert testimony relate to scientific, technical, or other specialized

9  knowledge, which does not include unsupported speculation and subjective beliefs."

10 *Guidroz-Brault v. Missouri P.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Mr. Allen

11 and Mr. Martin's opinions, as described herein, are based not on identifiable facts in

12 evidence, but on a string of their own hypotheticals tethered to Defendants'

13 inferences not the videos or even Wright's testimony.

14     "[A]n expert's opinion that something could be true if certain assumed facts

15 are true, without any foundation for concluding those assumed facts exist in the case

16 before the jury, does not provide assistance to the jury because the jury is charged

17 with determining what occurred in the case before it, not hypothetical possibilities."

18 *Cooper v. Takeda Pharms. Am., Inc.*, 239 Cal. App. 4th 555, 577 (2015); *Johnson v.*

19 *Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 (6th Cir. 2017); *McCoy v.*

20 *Whirlpool Corp.*, 287 F. App'x 669, 677 (10th Cir. 2008); *Zuchowicz v. United*

21 *States*, 140 F.3d 381, 389 (2d Cir. 1998); *Richardson by Richardson v. Richardson-*

22 *Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988); *Gideon v. Johns-Manville Sales*

23 *Corp.*, 761 F.2d 1129, 1137 (5th Cir. 1985).

24     "When an expert opinion is not supported by sufficient facts to validate it in

25 the eyes of the law, or when indisputable record facts contradict or otherwise render

26 the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v.*

27 *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

28

Accordingly, Mr. Allen and Mr. Martin's opinions related regarding or based on propensity evidence, credibility determinations, Wright's improper opinions, Defendants unsupported theory of Lopez reaching for a gun a second time or blocking Wright, and information unknown to Wright should be excluded from trial.

## C.    Mr. Allen and Mr. Martin's Perception/Reaction Opinions Are Inadmissible

As previously described, this Court's "gatekeeping" obligation under *Daubert* includes only admitting expert testimony that is reliable and relevant. This includes an analysis of the qualifications of the experts (i.e. whether the witness has the required "knowledge, skill, experience, training, or education" to be an expert), as well as the reliability of the subject matter of the opinion. Fed. R. Evid. 702 (a), See also *Daubert*, 509 U.S. at 589. "District judges play an active and important role as gatekeepers examining the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017). The Court is tasked with screening "nonsense opinions" which are not helpful to the jury, and are therefore irrelevant, rather than excluding expert opinions which are merely impeachable. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969-970 (9th Cir. 2013). This role is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. California State Univ. Hayward,* 299 F.3d 1053, 1063-1064 (9th Cir. 2002) amended sub nom. *Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003), and overruled on other grounds by *Est. of Barabin v. Asten Johnson, Inc*., 740 F.3d 457 (9th Cir. 2014).

The expert's opinion must be based on "scientific knowledge;" opinions based on unsubstantiated generalizations or opinions not derived by the scientific method must be excluded. *Daubert*, 43 F.3d at 1316. In *Kumho Tire,* the Supreme Court provided a framework by which to determine the reliability of scientific evidence,

and therefore its admissibility. 562 U.S. 137, 149-150. Under *Kumho Tire's* holding, courts assess whether a "theory or technique… can be (and has been) tested" and whether the method "has been subjected to peer review and publication; [w]hether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the techniques operation; and [w]hether the theory or technique enjoys general acceptance within a relevant scientific community." *Id.* These factors are not "a definitive checklist or test," and the court's ultimate determination is tied to the facts of each case.

Mr. Allen and Mr. Martin include opinions regarding Wright's state of mind and "perception-reaction time" ("PRT"). Courts in this District have excluded such subject matter for its failure to meet *Daubert* and *Kumho Tire's* standards. *See Dominguez v. City of Los Angeles*, No. CV174557-DMG-PLAx, 2018 WL 6164278 at *8 (C.D. Cal. Oct. 9, 2018), aff'd, 836 F. App'x 489 (9th Cir. 2020) (excluding testimony of perception reaction time on the basis that the expert's background as a law enforcement professional and trainer was insufficient to qualify him as an expert able to testify about perception reaction time, and on the basis that perception reaction time was not sufficiently scientifically supported to be considered reliable under *Kumho Tires* and *Daubert*.)

In his report, Mr. Martin cites to "Police Quarterly," and "Law Enforcement Executive Forum," as peer-reviewed publications that ostensibly review the literature on subjects including PRT, and articles authored by William Lewinski, the founder of the largely discredited Force Science Institute.[1] (See Sincich Decl. ¶26, Exh. R, Report at 20-21.) However, Martin does not offer any standards as to how an individual's PRT is measured, how the average reaction timeframe of 0.2-1.2 seconds is determined and how that became the accepted timeframe, nor the

---

[1] https://www.nytimes.com/2015/08/02/us/training-officers-to-shoot-first-and-he-will-answer-questions-later.html

anatomical processes implicated in reacting. *Dominguez*, 2018 WL 6164278 at *8 (identifying factors of PRT's lack of reliability).

Mr. Allen and Mr. Martin's speculative opinions as to the state of mind of Wright concerning his cognitive process and PRT should be excluded. Both Mr. Allen and Mr. Martin opine extensively as to PRT, yet neither is qualified to make such opinions and neither set forth an adequate basis to provide such opinions in this matter. Neither Mr. Allen nor Mr. Martin offer an actual opinion as to Wright's PRT—which is the only relevant PRT in this matter. Mr. Allen and Mr. Martin are not neuroscience experts and have not conducted any tests on any persons PRT in circumstances similar to this matter—especially not and particularly not on Wright. Further, Plaintiff contends that it is common knowledge that human beings cannot perceive and react simultaneously. It is also common knowledge that if a person is athletic, experienced, and specifically trained for something (i.e., a 14-year veteran of the SWAT team) they will have amongst the fastest PRT. Thus, expert testimony here would not be helpful to the jury in determining or understanding a fact at issue. Fed. R. Evid. 702.

Instead, there is a substantial risk that a jury could feel that they cannot disagree with so many experts saying something different from what the objective evidence shows—Lopez's hands up. Defendants' retention of two experts to bolster what Wright will already testify to creates a substantial risk of undue prejudice and undue consumption of time. Fed. R. Evid. 403. Defendants use of experts to justify Wright's failure to recognize that Lopez had no gun in his right hand for over a second prior to the first shot and over a second and a half before the second is not based on sufficient facts and data and not based on reliable methods. Fed. R. Evid. 702. There is no apparent foundation for the Defense experts' opinions.

Plaintiff argues that (1) Mr. Allen and Mr. Martin lack the requisite knowledge, skill, experience, training or education regarding PRT and related behavioral science topics; (2) Mr. Allen and Mr. Martin's proposed testimony will

tell the jury what inferences to draw from the video evidence and will not assist it; (3) Mr. Allen and Mr. Martin fail to base their testimony on sufficient facts or data and does not apply reliable principles and methods to the facts of the case; and (4) Mr. Allen and Mr. Martin's proposed testimony about PRT and police practices would be cumulative because Plaintiff would stipulate to the authenticity of the body-worn camera videos that the jury can review to make their own inferences.

Mr. Allen and Mr. Martin's experience in law enforcement does not give them the ability to form medical expert opinions on how long it takes for the human brain to process stimuli before the body can react to such stimuli. "Such an opinion would imply a scientific knowledge of the human brain." *Dominguez*, 2018 WL 6164278, at *7 (*citing Daubert*, 509 U.S. at 590). Mr. Allen and Mr. Martin "[are] not [] scientist[s] or neurologist[s] and ha[ve] never performed a study that evaluates neurological reaction time in police-involved shootings, nor ha[ve] [they] ever published in the field of "perception reaction time." *See Id*. Further, Mr. Allen and Mr. Martin's "training does not render [them] qualified to opine on the human brain's capabilities." *Garrit v. City of Chicago*, No. 16-CV-7319, 2022 WL 124554, at *8 (N.D. Ill. Jan. 13, 2022) (*citing Chatman v. City of Chicago*, No. 13 C 5697 Dckt. #225 at 5 (N.D. Ill.) (finding opinions on action vs. reaction were not based in science).

Similarly, in *Est. of Avila v. City of Long Beach*, No. CV-1705607-AB-JPRx, 2018 WL 7501260, at *1 (C.D. Cal. Dec. 18, 2018), the plaintiffs moved to exclude a police practices expert from testifying as to PRT on the ground that it is not admissible under Rule 702; irrelevant under Rules 401-402; and unduly prejudicial, confusing, and time-consuming under Rule 403. *See*, *e.g.*, *Jones v. Beelman Truck Co.*, No. 4:13-CV-252 CAS, 2015 WL 3620651, at *2 (E.D. Mo. June 9, 2015) (excluding opinions regarding perception and response as outside of specialization); *Banda v. Herc Rentals, Inc.*, No. 18-CV-05329-JCS, 2020 WL 353461, at *11 (N.D. Cal. Jan. 21, 2020) (granting motion because expert was not an expert in perception-

reaction). Recently, in *Alves v. County of Riverside,* the Court granted plaintiff's motion to exclude a police practices expert from opining on PRT, on the basis that his experience as a police officer and instructor with the Force Science Institute did not qualify him to opine on cognitive behaviors, and on the basis that PRT and "human factors," constituted the kind of unsupported shoddy opinions the District Court is tasked with excluding from the jury. *Alves v. County of Riverside,* CV 19-2083 JGB (SHKx) (C.D. Cal. March 13, 2023).

Mr. Allen's and Mr. Martin's opinions related to PRT should be excluded as these opinions that are outside of their expertise, require scientific study that they do not have, and is speculative and lacks foundation, with no identifiable methodology or critical analysis; using ipse dixit to arrive at opinions. (Sincich Decl. ¶30(FF), Exh. Q, Allen Report at 11, 19-21, and 32; and ¶30(FF), Martin Report at 20-22, and 26.) To the extent that Defendants intend to illicit impermissible propensity evidence through police practices expert, see Plaintiff's Motion *in Limine* Nos. 1 and 2.

Given that Mr. Allen and Mr. Martin do not have any evidence of Defendant Wright's or Lopez's specific PRTs, they offer nothing but defining the general concept on the same. The general PRT concept does not require expert opinion; children's games and sport mimic the concept that we all inherently know. play "think fast" experimenting with the innate knowledge that there is a PRT. Many children's games are designed specifically to test whose PRT is faster—because everyone is different. Information takes time to process and once perceived it takes time to respond. There is no standard PRT that Mr. Allen and Mr. Martin can testify to. It can range anywhere from 0.15 to 2 seconds because it can be affected by a myriad of factors including: fatigue, experiences, familiarity the circumstances, vision, weather, distractions, anticipation, visibility, personality type, exercise, and intelligence. Mr. Allen and Mr. Martin did not consider all these factors and did not conduct any studies on the parties to opine on PRT.

This evidence constitutes unreliable methodology, insufficient basis,

insufficient support, and insufficient training and experience to. Mr. Allen and Mr. Martin have no scientific training, background, or education and did not complete any scientific tests on the reactionary gap of Wright to be relevant or helping the trier of fact determine any dispositive issues. Thus, Rule 702 bars any purported expert opinion as to this subject matter. Additionally, the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, and presenting needless cumulative evidence of the Wright purported appropriate conduct ignoring the fact that Lopez was shot in the back without every pointing a gun at any officer.

## V.   CONCLUSION

Defendants should be limited to one police practices expert—either Mr. Allen or Mr. Martin. For the expert that testifies, his opinions of fact, opinions of law, ultimate issue opinions, perception-reaction opinions, and credibility determinations should be excluded from trial pursuant to Fed. R. Evid. 702. These opinions will not help the jury in resolving the issues of facts presented, are not based on sufficient facts, nor are they the product of reliable principles and methods, are outside of his expertise and usurp the function of the Court and jury.


Respectfully submitted,

DATED: December 18, 2023          **LAW OFFICES OF DALE K. GALIPO**
                                  **LAW OFFICES OF GRECH & PACKER**


                                  By:   _/s/        Marcel F. Sincich_
                                        Dale K. Galipo
                                        Trenton C. Packer
                                        Marcel F. Sincich
                                        *Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Xavier Lopez, hereby certifies that this brief contains 5,921 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

DATED: December 18, 2023

**LAW OFFICES OF DALE K. GALIPO**
**LAW OFFICES OF GRECH & PACKER**

By:   */s/      Marcel F. Sincich*
Dale K. Galipo
Trenton C. Packer
Marcel F. Sincich
*Attorneys for Plaintiff*