# "EXHIBIT D"

PHAEDRA A. NORTON, City Attorney SBN 200271
REBECCA L. MCKEE, Assistant City Attorney, SBN 279485
DEBRA K. COOK, Deputy City Attorney, SBN 250114
**OFFICE OF THE CITY ATTORNEY – City of Riverside**
3750 University Avenue, Suite 250
Riverside, CA 92501
Telephone (951) 826-5567
Facsimile (951) 826-5540

Attorneys for Defendants
CITY OF RIVERSIDE, a California charter city and municipal corporation and
EVAN WRIGHT, an individual

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>                Plaintiffs,<br><br>v.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive<br><br>                Defendants. | CASE NO. 5:21-cv-02140-ODW (JEMx)<br>*[Assigned to Hon. Otis D. Wright II, Courtroom: 5D]*<br><br>**DECLARATION OF EVAN D. WRIGHT IN SUPPORT OF DEFENDANTS' RULE 56 MOTION FOR SUMMARY JUDGMENT**<br><br>**[ F.R.C.P. 56]**<br><br>Date:        June 6, 2022<br>Time:        10:00 a.m.<br>Courtroom:  5A<br><br>Date Action Filed: 12/28/21<br>Trial Date: July 25, 2023 |

I, EVAN D. WRIGHT, am over the age of eighteen and make this declaration on personal knowledge in support of Defendants' motions for summary judgment. If called as a witness in this action, I could and would testify competently as follows:

1.    I am a sworn peace officer employed by the City of Riverside in its Police Department ("RPD"), ID number 1453.  I currently serve as a peace

DECLARATION OF EVAN D. WRIGHT IN
SUPPORT OF RULE 56 MSJ

1   officer in RPD's Multi-Enforcement Tactical Response Operations Team

2   (METRO). My office is located at 7020 Central Avenue, Riverside, California

3   92504. I have over fifteen (15) years of experience in professional law

4   enforcement. I became a sworn peace officer in December 2006 after attending

5   the San Bernardino Sheriff's Academy. After graduating from the academy, I

6   worked RPD Patrol from 2006-2014. I was then assigned to the Post-Release

7   Accountability & Compliance Team (PACT) for approximately one year. PACT

8   is a probation patrol team tasked with apprehending at-large fugitives in violation

9   of their parole agreements. I currently work in RPD METRO, an assignment I

10  began in 2015. The METRO unit is a well-trained team that are assigned fugitive

11  apprehensions, usually violent offenders or people involved in violent crimes. I

12  have been involved in hundreds of custodial arrests.

13      2.    On January 19, 2021, at approximately 8:14 a.m., I was contacted by

14  RPD Officer Moses Prado ("Officer Prado") who told me that he was involved in

15  a vehicle pursuit involving Xavier Lopez ("Plaintiff"). Officer Prado was able to

16  identify the driver and learned there was an outstanding parolee-at-large (PAL)

17  warrant to apprehend him. Officer Prado requested that the METRO unit assign

18  resources to find and apprehend Plaintiff. I was assigned the lead in the

19  investigation. I briefed the METRO unit on the assignment and prepared an

20  operational plan.

21      3.    I obtained basic information from Officer Prado including a summary

22  of the pursuit details and Plaintiff's identifying information so I could conduct my

23  own investigation into Plaintiff's status for purposes of completing the

24  assignment. Officer Prado indicated that it was a short pursuit because it had to

25  be terminated when Plaintiff entered the 91 freeway from the wrong direction.

26  Officer Prado cancelled the pursuit because it was too dangerous to follow

27  Plaintiff in oncoming highway traffic. In my experience, this type of action by

28  Plaintiff indicated that he was willing to put his life (and the lives of others) at

DECLARATION OF EVAN D. WRIGHT IN
                                                 SUPPORT OF RULE 56 MSJ

1    great risk to avoid being apprehended by the police.  In other words, Plaintiff was

2    willing to die or kill other people to avoid being arrested.

3        4.    I reviewed Officer Prado's report concerning his pursuit of Plaintiff

4    on January 19, 2021 as well as the COBAN video from Officer Prado patrol car.

5    A true and correct copy of the report I reviewed prior to the January 26, 2021

6    incident, RPD Report # 21 0000 1775 is attached as **"Exhibit 1."**

7        5.    I conducted a records check on Plaintiff, including his criminal history

8    that included the following convictions, and the related incarcerations, paroles, and

9    warrants that issued:

10

| Date | Conviction/Plea | Penal /Vehicle Code |
|------|-----------------|----------------------|
| 2/22/14 | Vehicle Theft | PC 666.5(a) |
| 7/14/14 | Recklessly Evading Arrest | VC 2800.2 |
| 2/26/15 | Receiving Stolen Vehicle | PC 496d(a) |
|  |  | PC 666.5(a) |
| 2/23/18 | Receiving Stolen Property | PC 666.5(a) |
| 9/19/19 | Assault with a Firearm | PC 245(a)(2)(01) |

18       6.    I obtained a photograph of Plaintiff and confirmed that he had an

19    outstanding PAL warrant for approximately one month.

20       7.    I contacted his parole officer, William Iriart, to obtain additional

21    information on Plaintiff, but he had limited information and had not spoken to

22    Plaintiff since December 29, 2020.  He was able to provide the name and telephone

23    number of Plaintiff's prior girlfriend, Carina Avila ("Avila"), who is also the

24    mother of his child.

25       8.    Not long after obtaining this information, I further updated the

26    METRO unit and provided them photographs of Plaintiff and Avila, Plaintiff's

27    vehicle information, Plaintiff's criminal history, and information concerning the

28    recent interactions between Plaintiff and Avila where Plaintiff came to Avila's

DECLARATION OF EVAN D. WRIGHT IN
SUPPORT OF RULE 56 MSJ

1    residence armed with a gun. The METRO unit then conducted surveillance at

2    several apartments and homes in Moreno Valley where Plaintiff was thought to

3    have resided. None of these initial surveillance efforts were able to locate Plaintiff.

4        9.    After the initial surveillance effort failed, I contacted Avila to obtain

5    additional information to locate Plaintiff. Avila was very cooperative and provided

6    additional addresses, information on family relatives, Plaintiff's cell phone

7    number, and information concerning recent contact she had with Plaintiff

8    concerning their daughter. Avila reported that Plaintiff had recently been to her

9    home, armed with a gun and "tweaked out." She asked Plaintiff to leave. I have

10   considerable experience in dealing with people who are under the influence of

11   narcotics. While everyone responds differently, their behavior is erratic, they do

12   not listen to commands, and they do not have the mental and logical process

13   fluidity of people who are not under the influence of narcotics. Generally, people

14   under the influence of narcotics do not act like people who are not under the

15   influence of narcotics. Therefore, they cannot be counted on to react rationally or

16   predictably to circumstances.

17       10.   I asked Avila to inform me if Plaintiff contacts her again with a

18   reliable location where we could apprehend him. Avila and I stayed in contact

19   between January 22-26 concerning contact she was having with Plaintiff. Avila

20   told me that Plaintiff would be coming to her home, located at 4610 Tomlinson

21   Avenue, Riverside, California 92503 ("4610 Tomlinson") on Tuesday, January 26,

22   2021 at 4:00 p.m. As the lead officer, I updated the operational plan and gave out

23   tactical assignments.

24       11.   The METRO team arrived at or around 4610 Tomlinson in mostly

25   unmarked vehicles. Officers Henry Park ("Officer Park") and Kyle Wilder

26   ("Officer Wilder") were with me in a van, and we were tasked to complete the

27   arrest. I was dressed in a black raid vest with patches that identified me as

28   "Police."

-4-

DECLARATION OF EVAN D. WRIGHT IN
SUPPORT OF RULE 56 MSJ

12.    Officer Robert Monreal ("Officer Monreal") was in a black Toyota Camry and was assigned point surveillance near the front of the house where he provided updates, including notification to the METRO unit of when Plaintiff arrived.

13.    I called for helicopter back up in the event Plaintiff attempted to run. The plan was to pull up to the house, wait for Plaintiff to exit the car, make contact with him on foot, and facilitate an arrest prior to him entering the residence or returning to his vehicle. It was important to the operational plan that Plaintiff not enter the residence and attempt to grab his daughter. There was a contingency plan if the daughter walked out of the residence prior to us making contact with Plaintiff. In addition, it was important that Plaintiff be outside of his vehicle to avoid him being able to use his vehicle as a weapon against the officers or to engage in a dangerous pursuit. This was particularly important given the previous dangerous pursuit Plaintiff prompted days earlier.

14.    After approximately twenty (20) minutes of surveillance, the Chrysler Sebring that was the subject of Officer Prado's pursuit arrived at 4610 Tomlinson by turning eastbound on Cook Avenue and then on to Tomlinson where it parked in the dirt lot across from the residence. Officer Monreal notified all of us in the METRO unit that the car was approaching, and it appeared that Plaintiff was driving. Officer Monreal further notified the METRO unit that the driver's door was opening, and a male was exiting the driver's seat wearing a trench coat with hands in his pockets. He was wearing a COVID mask and walking toward the residence.

15.    I immediately drove the van to make contact with Plaintiff before he got to the door of the house. I drove the van by crossing Cook Avenue and stopped just short of Plaintiff. I parked and exited the van with my duty firearm drawn, and called Plaintiff by his name stating **"Hey, Xavier, it's the cops, take your hands out of your pockets, bro, hands up, hands up, don't move, don't**

DECLARATION OF EVAN D. WRIGHT IN
SUPPORT OF RULE 56 MSJ

1    **move."** After getting out of the vehicle, I continued to approach Plaintiff. My

2    objective was to get close and grab him to facilitate the arrest without incident.

3    However, Plaintiff did not comply with my commands and did not appear to be

4    willing to cooperate at that time. Instead of complying, Plaintiff reached across his

5    chest with his right hand, put it in his trench coat left breast pocket. I stopped my

6    forward approach when I saw the butt of a firearm in his hand as he began to

7    remove his partially concealed hand from his trench coat. I retreated and

8    immediately decided to fire my weapon to protect myself, my fellow officers, and

9    any potential civilians that would have been in harm's way on the public street. I

10   fired two shots in immediate succession while notifying everyone that Plaintiff had

11   a gun. I believed at the time I decided to fire my weapon at Plaintiff that Plaintiff

12   was going to kill me, or one of my partners.

13      16.    When I saw Plaintiff fall to the ground and that his hands were empty,

14   I stopped firing my duty firearm even though Plaintiff still had physical access to

15   his gun. I felt the risk was minimized as Officers Park, Monreal, and Wilder were

16   now within reach and could help me secure Plaintiff, his gun, and provide Plaintiff

17   with immediate first aid attention. I never fired on Plaintiff when he was on the

18   ground where I could see his hands, even though I knew he still had an accessible

19   gun within hand reach. Instead, I held lethal cover over Plaintiff while other peace

20   officers put handcuffs on him, removed the gun, and administered emergency

21   medical aid.

22      17.    I was wearing my body worn camera at the time of the incident. I

23   reviewed the camera footage, and it accurately represents a depiction of the events

24   that I observed in real time during my January 26, 2021 encounter with Plaintiff.

25   A true and correct copy of my body worn camera footage is attached as **Exhibit**

26   **"4."**

27

28

DECLARATION OF EVAN D. WRIGHT IN
SUPPORT OF RULE 56 MSJ

1    I declare the foregoing to be true and correct under penalty of perjury
2    pursuant to the laws of the United States. Executed this 2nd day of May 2022, in
3    the City of Riverside, California.

4

5                                    By: /s/ Evan Wright
6                                        EVAN WRIGHT,
                                         Declarant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          DECLARATION OF EVAN D. WRIGHT IN
                                          SUPPORT OF RULE 56 MSJ