# "EXHIBIT E"

PHAEDRA A. NORTON, CITY ATTORNEY, SBN 200271
REBECCA MCKEE-REIMBOLD, ASSISTANT CITY ATTORNEY, SBN 279485
DEBRA K. COOK, DEPUTY CITY ATTORNEY, SBN 250114
JUDITH N. GALLARDO, DEPUTY CITY ATTORNEY, SBN 297688
CECILIA ROJAS, DEPUTY CITY ATTORNEY, SBN 340468
**OFFICE OF THE CITY ATTORNEY – CITY OF RIVERSIDE**
3750 University Avenue, Suite 250
Riverside, California 92501
Telephone (951) 826-5567
gforce@riversideca.gov

Attorneys for Defendants,
CITY OF RIVERSIDE, a California charter city
and municipal corporation and EVAN WRIGHT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1 through 10, inclusive<br><br>    Defendants. | CASE NO.: 5:21-cv-02140-PSG (JEM)<br><br>*[Assigned to Hon. Philip S. Gutierrez, Courtroom: 6A]*<br><br>**DEFENDANT EVAN WRIGHT'S RESPONSE TO PLAINTIFF XAVIER LOPEZ'S INTERROGATORIES, SET ONE**<br><br>Date Action Filed:  12/28/21<br>Trial Date:         02/01/24 |

**PROPOUNDING PARTY:**   Plaintiff XAVIER LOPEZ

**RESPONDING PARTY:**    Defendant EVAN WRIGHT

**SET NUMBER:**          ONE

Defendant Evan Wright ("Responding Party"), by and through the undersigned counsel, responds to the First Set of Interrogatories propounded by Plaintiff Xavier Lopez ("Propounding Party") as follows:

**INTERROGATORY NO. 1:**

Identify all the information YOU personally had prior to YOUR use of deadly force that YOU considered in making YOUR decision to use deadly force during the INCIDENT.

**RESPONSE TO INTERROGATORY NO. 1:**

**OBJECTION**. Responding Party incorporates by reference the Preliminary Statement as though fully set forth here.

Without waiving objections, Responding Party answers as follows:

On January 17, 2021, Officer Ransom DeCastro was involved in a 911 Dispatch concerning Plaintiff. Responding Party had knowledge of all information contained in Officer DeCastro's report. In addition, Carina Avila ("Avila") spoke with Officer DeCastro concerning Plaintiff's intrusion into her home and her demands that Plaintiff leave. Officers DeCastro and Espinosa responded to the 911 call by Avila. Officer Wright learned that Plaintiff refused to leave Avila's residence and threatened her with a gun. Plaintiff left after Avila dialed 911.

On January 19, 2021, Plaintiff was the subject of a vehicle pursuit by a Riverside police officer, Officer Moses Prado (Hereafter "Prado"). Responding Party had knowledge of all information contained in Prado's encounter with Plaintiff. Prado was driving northbound on Adams Street when he saw a Hispanic male adult, later identified as Plaintiff, leaning into the passenger side of a Nissan Sentra that was occupied by two unknown occupants parked at a gas station. Prado drove into the gas station, causing Plaintiff to stand up from the Nissan and enter into his vehicle, a silver Chrysler Sebring ("Subject Vehicle"). The Subject Vehicle had a dark film on the front side of the windows, in violation of VEHICLE CODE section 26708.

Prado positioned his vehicle behind Plaintiff's vehicle to initiate a traffic enforcement stop. Prado activated his lights and sirens which were checked prior to his shift and were in working order. Plaintiff failed to yield and continued driving southbound on Adams Street at the speed limit. As Plaintiff approached Briarwood

CITY ATTORNEY'S OFFICE
3750 UNIVERSITY AVE., STE 250
RIVERSIDE, CA 92501

Drive, he accelerated to about 60 miles per hour, a violation of VEHICLE CODE section 22350, and transversed to the wrong side of the roadway on Adams Street, in violation of California VEHICLE CODE section 21651(b). Prado continued in the southbound lanes of traffic.

Plaintiff entered the westbound 91 freeway off-ramp and continued against traffic on the wrong side of the road, in violation of VEHICLE CODE section 21651(b) with total disregard for public safety, in violation of VEHICLE CODE section 2800.2. Prado did not continue the vehicle pursuit but maintained a visual of Plaintiff. Plaintiff continued onto the 91 freeway in the westbound lanes and ultimately made an illegal u-turn between Adams Street and Madison Street in violation of VEHICLE CODE section 21801. Due to the heavy traffic on the freeway, Prado lost visual of Plaintiff and the pursuit was terminated.

Responding Party had knowledge of all information contained in Prado's follow-up investigation. Prado performed a records check on the vehicle and found the registered owner to be "Xavier Lopez". Using law enforcement databases, Prado identified the subject that he saw entering the Subject Vehicle as Xavier Lopez, date of birth June 30, 1991. Prado also discovered Plaintiff was also arrested in the same Subject Vehicle on September 21, 2020, by Riverside Police Officer Solano. The records check further revealed that Plaintiff had an active felony warrant for his arrest for a parole violation as it relates to Case Number BPR2001853. Plaintiff was not located or arrested at Plaintiff's known addresses in Riverside and Moreno Valley.

Prado contacted the Multi-Enforcement Tactical Response Operations (METRO) team, and in particular, Responding Party, for assistance in locating Plaintiff for violating VEHICLE CODE section 2800.2 and Penal Code Section 3056. Responding Party learned that Plaintiff had a criminal history, which included arrests for 11377(a) H&S, 148PC, 459 PC, 496 PC, 10851 CVC, 2800.2 CVC, 3455 PC, and 245(a)(2) PC. The METRO team was responsible for locating and apprehending wanted fugitives and parolees at large.

Responding Party was assigned to the METRO team at the time Prado reported the vehicle pursuit involving Plaintiff. Responding Party learned of this incident from Prado and discovered a criminal past for Plaintiff which included narcotics violations and an assault with a deadly weapon. Responding Party spoke to Plaintiff's parole officer, William Iriart, who provided Plaintiff's last known address, potential persons who would have Plaintiff's contact information, and Plaintiff's relationship with Avila. Plaintiff's parole officer relayed he had not spoken with Plaintiff since December 2020.

Responding Party had knowledge of all activities conducted by the METRO team to locate and apprehend Plaintiff. On January 21, 2021, METRO officers conducted a surveillance operation in Moreno Valley in an attempt to locate and arrest Plaintiff. During the operation Responding Party had communications with Avila, mother of Plaintiff's daughter, where he learned that Plaintiff and Avila were no longer in a dating relationship and had a child together. Avila reported she last saw Plaintiff on or around January 17 at her residence where Plaintiff showed up to see his daughter and was upset with Avila. Avila described Plaintiff as acting incoherent and was waving his gun. Avila reported to Responding Party that Plaintiff has been using methamphetamine and feared for her daughter safety during visitation. Avila confirmed that Plaintiff was still driving the subject vehicle and provided Plaintiff's phone number to Responding Party. In the days prior to the incident Avila communicates with Responding Party to coordinate a time when Plaintiff would be at her residence at 4610 Tomlinson Ave, ("Subject Location").

On January 26, 2021 at about 1500 hours, METRO Officers set up a remote takedown operation at the Subject Location. The METRO team consisted of Sergeant Ortiz, Officer Macias, Officer Park, Officer Lopez, Officer Wilder, Officer Monreal, and Responding Party. The operation plan consisted of three surveillance vehicles and one marked METRO unit that were set up around the subject location. Responding Party, Officer Park, and Officer Wilder were assigned to the grey Dodge Van as the take down team responsible for detaining Plaintiff.

The grey Dodge Van was parked down the street on Tomlinson Ave, approximately 400 yards away from the subject location. Sergeant Ortiz and Officer Lopez were assigned to the marked unit that was parked in a nearby neighborhood approximately 0.4 miles away from the subject location in the event an enforcement stop is needed. Officer Monreal was assigned as point and parked his vehicle on the west curb facing south near the front of 4618 Tomlinson.

The plan was to apprehend and detain Plaintiff after he exited his vehicle but before he entered Avila's home. Responding Party wanted to avoid a potential vehicle pursuit as well as to protect Avila, their daughter, and the general public. Responding Party briefed the METRO team of the operations plan and advised the team that Plaintiff was possibly armed and under the influence of a controlled substance.

Responding Party was dressed in green BDU's, a black sweatshirt, and his tactical vest with the letters POLICE across the front and back that clearly identified him as a police officer.

Officer Monreal observed a subject vehicle matching Plaintiff's vehicle. The vehicle was traveling north on Tomlinson Ave through the intersection of Cook and Tolinson. Officer Monreal broadcasted pertinent information to his METRO team partners via the police radio. Officer Monreal reported the subject vehicle had parked across the street from 4610 Tomlinson and opened the door. Officer Monreal observed Plaintiff exit subject vehicle toward the subject location wearing a mask and a large black trench coat. Plaintiff was observed as having both hands in his pockets as he exited the subject vehicle and walked toward the subject location.

Officer Monreal exited his vehicle and drew his department issued handgun and ran towards Plaintiff who was located in the driveway of the subject location. The grey Dodge Van drove up to the subject location and parked just short of the subject location driveway. Plaintiff was on the west side of the street, on the driver's side of the Arrest Team's vehicle, facing Responding Party. Responding

Party exited the vehicle from the driver's seat and called Plaintiff by name and identified himself as the police. Responding Party gave verbal commands to Plaintiff to remove his hands from his pockets. Officer Monreal gave verbal commands to Plaintiff to put his hands up and not move.

Responding Party witnessed Plaintiff reach at chest level into his left breast pocket of his jacket with his right hand revealing the butt of a handgun. Plaintiff did not comply with the verbal commands of the METRO team.

Officer Monreal witnessed Plaintiff reach into his pocket and announced, "You're going to get shot." Plaintiff continued to disregard all verbal commands issued by the METRO team while backing away from the officers.

Prior to using deadly force on Plaintiff, Officer Wright identified himself as "Police" and approached Plaintiff with his weapon drawn commanding Plaintiff to show his hands. When Plaintiff responded to Officer Wright's command by reaching for and drawing a firearm, Officer Wright shot twice in a swift consecutive manner, at Plaintiff and injured him. At the time Officer Wright made the decision to shoot, Plaintiff had his hands on a firearm. Between the time Officer Wright decided to fire his duty weapon and the first shot striking Plaintiff, Plaintiff continued to reach for his weapon during the encounter. In the encounter, Plaintiff's hands were in various positions, including holding a weapon, reaching for a weapon, and momentarily, without a weapon in his hands.

**INTERROGATORY NO. 2:**

Describe all communications between YOU and any other PERSON relating or whether YOUR use of force during the INCIDENT was within policy.

**RESPONSE TO INTERROGATORY NO. 2:**

**OBJECTION**. Responding Party incorporates by reference the Preliminary Statement as though fully set forth here.

Without waiving objections, Responding Party answers as follows:

On January 17, 2021, Officer Ransom DeCastro was involved in a 911 Dispatch concerning Plaintiff. Responding Party had knowledge of all information

statutorily prescribed procedures. Pen. Code, § 832.7; Evid. Code, §§ 1043, 1046. The appropriate procedure for obtaining information in the protected peace officer personnel files is to file a *Pitchess* motion, which by statute entails a two-part process involving first a determination by the court regarding good cause and materiality of the information sought and a subsequent confidential review by the court of the files, where warranted. See, e.g., *People v. Mooc* (2001) 26 Cal.4th 1216; *People v. Thompson* (2006) 141 Cal.App.4th 1312; *City of San Jose v. Superior Court* (1998) 67 Cal.App.4*th* 1135. The appropriate procedure for obtaining information in the protected peace officer personnel files is to file a *Pitchess* motion, which by statute entails a two-part process involving first a determination by the court regarding good cause and materiality of the information sought and a subsequent confidential review by the court of the files, where warranted. See, e.g., *People v. Mooc* (2001) 26 Cal.4th 1216; *People v. Thompson* (2006) 141 Cal.App.4th 1312; *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135.

*Without waiving objections*, upon receipt of a protective order, Responding Party will comply with this interrogatory.

DATED: September 7, 2023                OFFICE OF THE CITY ATTORNEY

By: */s/ Debra S. Cook*_____
    DEBRA K. COOK
    Attorneys for Defendants,
    CITY OF RIVERSIDE and
    EVAN WRIGHT