# Exhibit "A"

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   XAVIER LOPEZ,                      )
                                        )
 5            Plaintiff,                )
                                        )
 6            vs.                       ) Case No.
                                        ) 5:21-CV-02140-PSGJEMx
 7   CITY OF RIVERSIDE; EVAN WRIGHT; and)
     DOES 1-10, inclusive,              )
 8                                      )
              Defendants.               )
 9   _____)

10

11

12

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                      EVAN WRIGHT

16               FRIDAY, OCTOBER 20, 2023

17

18

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  23119
```

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4   XAVIER LOPEZ,                    )
                                      )
 5                  Plaintiff,        )
                                      )
 6            vs.                     ) Case No.
                                      ) 5:21-CV-02140-PSGJEMx
 7   CITY OF RIVERSIDE; EVAN WRIGHT; and )
     DOES 1-10, inclusive,            )
 8                                    )
                    Defendants.       )
 9   _____)
10
11
12
13
14        The remote videoconference deposition of EVAN
15   WRIGHT, taken on behalf of the Plaintiff, beginning at 2:22
16   p.m., and ending at 3:51 p.m., on Friday, October 20, 2023,
17   before Jinna Grace Kim, Certified Stenographic Shorthand
18   Reporter No. 14151.
19
20
21
22
23
24
25
```

```
 1   APPEARANCES OF COUNSEL:

 2
     For the Plaintiffs:
 3
                LAW OFFICES OF DALE K. GALIPO
 4              BY:  DALE K. GALIPO, ESQ.
                BY:  MARCEL F. SINCICH, ESQ.
 5              21800 Burbank Boulevard, Suite 310
                Woodland Hills, California 91367
 6              Tel:  818-347-3333
                Fax:  818-347-4118
 7              E-mail:  dalekgalipo@yahoo.com
                E-mail:  msincich@galipolaw.com
 8

 9              LAW OFFICES OF GRECH & PACKER
                BY:  TRENTON C. PACKER, ESQ.
10              7095 Indiana Avenue, Suite 200
                Riverside, California 92506
11              Tel:  951-682-9311
                E-mail:  tpacker@grechpackerlaw.com
12

13   For the Defendants:

14              OFFICE OF THE CITY ATTORNEY
                CITY OF RIVERSIDE
15              BY:  DEBRA K. COOK, ESQ.
                3750 University Avenue, Suite 250
16              Riverside, California 92501
                Tel:  951-826-5567
17              E-mail:  dcook@riversideca.gov

18

19

20

21

22

23

24

25
```

```
 1    and she's my co-counsel.  That's all we've got.
 2            MR. GALIPO:  That's fine.  Did you want to spell the
 3    one name for the court reporter?
 4            MS. COOK:  Sure.  D-i-b-e-r-n-d-i-n-a-r-d-o.
 5            Yeah, Gianna with two N's.  And then Cecilia Rojas
 6    is in the caption.
 7            MR. GALIPO:  Okay.  Thank you.
 8            MS. COOK:  I got it wrong.  I'm sorry.
 9            She just told me D-i-b-e-r-n-a-r-d-o.
10            That's the correct spelling.  Thank you.
11            MR. GALIPO:  Thank you.
12    BY MR. GALIPO:
13       Q.   Can you hear me okay so far?
14       A.   I am, sir.
15       Q.   If you have any trouble hearing me at any time, will
16    you please let me know?
17       A.   I sure will.
18       Q.   How long have you been a law enforcement officer?
19       A.   December, it'll be 17 years.
20       Q.   Have you testified in court before?
21       A.   Yes, I have.
22       Q.   And do you have an estimate as to how many times
23    you've done that?
24       A.   If I had to make an estimate, maybe 50.
25       Q.   Do you recall the date of the officer-involved
```

```
 1   that makes sense.
 2           I can't answer that single fact question.
 3           I can't.
 4      Q.   Well, were you trained that deadly force is the
 5   highest level of force an officer can use?
 6      A.   Yes.
 7      Q.   Were you trained that deadly force should only be
 8   used if there is an immediate or imminent threat of death or
 9   serious bodily injury?
10      A.   Yes.
11      Q.   And were you trained that deadly force should only
12   be used when no other reasonable options are available?
13      A.   Yes.
14      Q.   And were you trained to give a verbal warning when
15   feasible prior to using deadly force?
16      A.   Yes, I was.
17      Q.   Was it your understanding that shooting someone
18   center mass was likely to cause serious injury or death to
19   that person?
20      A.   It would cause -- yes, uh-huh.
21      Q.   Had you been involved in officer-involved shootings
22   before your shooting of Mr. Lopez?
23      A.   Yes, I have.
24      Q.   How many prior officer-involved shootings have you
25   been involved in?
```

```
 1    A.   Three priors.  So four total.
 2    Q.   When was the first one?  Do you know what year?
 3    A.   Yes.
 4    Q.   What year?
 5    A.   2008.
 6    Q.   And do you recall how many shots you fired in that
 7  incident?
 8    A.   I don't recall.
 9    Q.   Was it multiple shots?
10    A.   Yes.
11    Q.   Were you shooting at a person as opposed to an
12  animal?
13    A.   A person, yes.
14    Q.   Do you know if you struck the person?
15    A.   Yes.
16    Q.   Do you know if the person died?
17    A.   Yes.
18    Q.   Do you remember the name of the person?
19    A.   Yes, I do.
20    Q.   And what was the name?
21    A.   Fernando Sanchez.
22    Q.   Was there any litigation related to that shooting?
23    A.   No.
24    Q.   Did that person have a weapon in their hand when you
25  shot them?
```

```
 1    A.   That was in 2008, sir.  That was, you know, 15 years
 2  ago, and Mr. Fernando Sanchez threatened my life, and I used
 3  lethal force to stop the threat.
 4    Q.   I'm just wondering whether he had a weapon in his
 5  hand when you fired.
 6    A.   He had one on him.  He had a firearm on him.
 7    Q.   But not in his hand?
 8    A.   No.
 9    Q.   And when was your next officer-involved shooting?
10    A.   I believe it was around 2014 or around that time.
11    Q.   Do you recall how many shots you fired in that
12  incident?
13    A.   I don't recall.
14    Q.   Was it also multiple shots?
15    A.   As far as I can remember, yes.
16    Q.   Was it at a person?
17    A.   Yes.
18    Q.   Do you know if you struck the person?
19    A.   There was -- there were two shooters in that, and I
20  can't recall if my rounds struck him or not.  I don't know.
21    Q.   Did the person die?
22    A.   No.
23    Q.   Was there any litigation related to that incident?
24    A.   No.
25    Q.   Do you remember the name of that person?
```

```
 1    A.   Yes.
 2    Q.   What was the name?
 3    A.   Joseph Mango.
 4    Q.   And did that person have a weapon in their hand?
 5    A.   The vehicle was a weapon in that -- in that
 6   incident.
 7    Q.   They were driving a vehicle in your direction?
 8    A.   Yes.
 9    Q.   When was your next shooting?
10    A.   2018.
11    Q.   Do you recall the name of the person you shot in
12   that incident?
13    A.   Yes.
14    Q.   And what is the name?
15    A.   Ernie Saldovar.
16    Q.   Multiple shots again?
17    A.   Yes.
18    Q.   Do you know if you struck him?
19    A.   There were two shooters in that as well, and I
20   couldn't tell you if I -- if I struck him or not.
21    Q.   But he was struck by at least one of -- some of the
22   shots?
23    A.   Yes.
24    Q.   Did he survive?
25    A.   No.
```

1   Q.   Was there any litigation related to that incident?
2   A.   Yeah.  That one is ongoing.
3   Q.   That's still going?
4   A.   Still going.
5   Q.   And did you work for the same police department
6   during all of the shootings?
7   A.   Yes.
8   Q.   Have you had your deposition taken in that other
9   case?
10  A.   No.
11  Q.   Is this the first deposition you have taken in an
12  officer-involved shooting case that you have been involved
13  in?
14  A.   Yes.
15  Q.   And so the shooting with Mr. Lopez would be the
16  fourth shooting?
17  A.   Correct.
18  Q.   Prior to you firing your first shot, were you trying
19  your best to look at Mr. Lopez's hands?
20  A.   So that was a -- like I said before, a fast, fast
21  moving situation, a lot of moving parts.
22       At that point I -- there was an imminent danger to
23  my life as well as officers' lives and whoever was inside the
24  house.  A lot going on.  So his hands were in a lot of
25  different places.  So that's my answer.

```
 1      A.   May of this year, May, 2023.
 2      Q.   So would it be correct that all four of your
 3   shootings to your knowledge were found to be within policy?
 4      A.   Yes.
 5      Q.   Okay.  I think that's all the questions I have.
 6           MR. GALIPO:  Debra, do you have any questions of the
 7   sergeant today?
 8           MS. COOK:  No, sir.  I'll pass.
 9           MR. GALIPO:  Okay.  Sounds good.
10           Let's go off the record.
11           (Deposition proceeding concluded at 3:51 p.m.)
12                         *  *  *
```

CERTIFICATE

OF

CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

I, JINNA GRACE KIM, CSR No. 14151, a Certified Stenographic Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth;

That any witnesses in the foregoing proceedings, prior to testifying, were placed under oath;

That a verbatim record of the proceedings was made by me, using machine shorthand, which was thereafter transcribed under my direction;

Further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action, nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have subscribed my name, this date: October 20, 2023.

_____
Jinna Grace Kim, CSR No. 14151