# Exhibit "A"

1 | **LAW OFFICES OF DALE K. GALIPO**
2 | Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
3 | Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
4 | 21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
5 | Phone: (818) 347-3333 | Fax: (818) 347-4118

6 | **LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
7 | tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
8 | Riverside, CA 92506
Phone: (951) 682-9311

9 | *Attorneys for Plaintiff* XAVIER LOPEZ

10

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14

15 | XAVIER LOPEZ,

16 |                         Plaintiff,

17 |        vs.

18 | CITY OF RIVERSIDE; EVAN
WRIGHT; and DOES 1-10, inclusive,

19 |                         Defendants.

20

CASE No.: 5:21-cv-02140-PSG (JEMx)

[*Honorable Philip S. Gutierrez*]
Magistrate Judge John E. McDermott

**PLAINTIFF'S RULE 26 INITIAL
EXPERT DISCLOSURES**

21

22

23 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

24 |    Plaintiff Xavier Lopez hereby designates the following retained and non-

25 | retained expert witnesses who may be called upon to give expert testimony pursuant

26 | to Rule 26(a)(2)(A) of the Federal Rule of Civil Procedure.  Plaintiff reserves the

27 | right to supplement and/or amend this disclosure.

28

**I.      RETAINED EXPERTS:**

      A.      Roger A. Clark (Police Practices/Use of Force)

           Police Procedures Consultant, Inc.

           10207 Molino Road

           Santee, CA 92071

           (208) 351-2458

Mr. Clark's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit A.

      B.      Scott Holdaway (Videographer, Editor, and Forensic Video Analyst)

           CVisualEvidence, LLC.

           2441 W 205th Street, Suite C102

           Torrance, CA 90501

           (310) 831-8900

           Mr. Holdaway's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit B.

      C.      Amy Magnusson, M.D., (Medical Expert)

           Physical Medicine and Rehabilitation

           2999 Health Center Drive

           San Diego, CA 92123

           (858) 939-4496

Dr. Magnusson's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit C.

///

## II.     NON-RETAINED EXPERTS:

| 1. | Ahmad L Alazzeh, | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000.  Dr. Alazzeh is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's respiratory ventilation, and endotracheal airway. Plaintiff reserves the right to call a representative on Dr. Alazzeh's behalf if unable to appear or testify at trial. |
|----|----|----|
| 2. | Ahmed Mahmoud, MD | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000.  Dr. Mahmoud is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds, major small and large bowel procedures. Plaintiff reserves the right to call a representative on Dr. Mahmoud's behalf if unable to appear or testify at trial. |
| 3. | Ashley Kennedy, PT | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. PT Kennedy is a Physical Therapist for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on PT Kennedy's behalf if unable to appear or testify at trial. |
| 4. | Bhanu Shiv, MD | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Shiv is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment, computerized tomography, trauma, and injuries. Plaintiff reserves the right to call a representative on Dr. Shiv's behalf if unable to appear or testify at trial. |

| 5. | Chelsea Cosand, MD | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000. Dr. Cosand is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Cosand's behalf if unable to appear or testify at trial. |
|---|---|---|
| 6. | Daniel Il-Sun Kim, MD | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. Dr. Edwards is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Edwards's behalf if unable to appear or testify at trial. |
| 7. | David Plurad, MD | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000. Dr. Plurad is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds, entry, internal injuries. Plaintiff reserves the right to call a representative on Dr. Plurad's behalf if unable to appear or testify at trial. |
| 8. | Eric Liao, MD | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000. Dr. Liao is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Liao's behalf if unable to appear or testify at trial. |
| 9. | Erin Katz, MD | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000. Dr. Katz is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's dilation of ureter and urethra. Plaintiff reserves the right to call a representative on Dr. Katz's behalf if unable to appear or testify at trial. |

| 10. | Hans Keenan Boggs, MD | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Boggs is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and injuries. Plaintiff reserves the right to call a representative on Dr. Boggs's behalf if unable to appear or testify at trial. |
|---|---|---|
| 11. | Hector Daniel Ludl, MD | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Ludl is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and injuries. Plaintiff reserves the right to call a representative on Dr. Ludl's behalf if unable to appear or testify at trial. |
| 12. | Jillian Gerbracht, PT, DPT | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. PT Gerbracht is a treating therapist for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and injuries and physical therapy. Plaintiff reserves the right to call a representative on PT Gerbracht's behalf if unable to appear or testify at trial. |
| 13. | Kari Cadger, OT | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. OT Cadger is an Occupational Therapist for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on OT Cadger's behalf if unable to appear or testify at trial. |
| 14. | Kurt Barger, DO | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Barger is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and injuries. Plaintiff reserves the right to call a representative on Dr. Barger's behalf if unable to appear or testify at trial. |

| 15. | Lori Ramirez-Butler MS, CCC-SLP | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Butler is a treating therapist for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and therapy. Plaintiff reserves the right to call a representative on Dr. Butler's behalf if unable to appear or testify at trial. |
|---|---|---|
| 16. | Manika Paul, MD | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Paul is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment, injuries, and neurosurgery. Plaintiff reserves the right to call a representative on Dr. Paul's behalf if unable to appear or testify at trial. |
| 17. | Marissa Guerrero M.S., CCC-SLP | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Guerrero is a treating therapist for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and therapy. Plaintiff reserves the right to call a representative on Dr. Guerrero's behalf if unable to appear or testify at trial. |
| 18. | Michael Kenneth Mesisca, DO | 4445 Magnolia Avenue, Riverside, California 92501 (951)788-3000.  Dr. Mesisca is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, treatment plan, risks and benefits, and cost of care for Plaintiff regarding Plaintiff's treatment plan. Plaintiff reserves the right to call a representative on Dr. Mesisca's behalf if unable to appear or testify at trial. |
| 19. | Monika Kief-Garcia, MD | 11234 Anderson Street, Loma Linda, CA 92354.  Dr. Kief-Garcia is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's ankles, c-spine, t-spine, l-spine, chest. Plaintiff reserves the right to call a representative on Dr. Garcia's behalf if unable to appear or testify at trial. |

PLAINTIFF'S RULE 26 INITIAL EXPERT DISCLOSURES

| 20. | Paul Albini, MD | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. Dr. Albini is a treating physician, Trauma, Surgical Critical Care, and Emergency General Surgery, for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Albini's behalf if unable to appear or testify at trial. |
|-----|-----------------|-----|
| 21. | Roy Caputo, MD | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Caputo is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment and injuries. Plaintiff reserves the right to call a representative on Dr. Caputo's behalf if unable to appear or testify at trial. |
| 22. | Sandar Kyi, MD | 2813 S Main St., Corona, California 92882 (951) 272-5445.  Dr. Kyi is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's recommendations, care plan, therapeutic plan, and injuries. Plaintiff reserves the right to call a representative on Dr. Kyi's behalf if unable to appear or testify at trial. |
| 23. | Sara B Edwards, MD | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. Dr. Edwards is a treating physician, Surgery Attending, for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Edwards's behalf if unable to appear or testify at trial. |
| 24. | Steven M Sorenson, MD | 11234 Anderson Street, Loma Linda, CA 92354.  Dr. Sorenson is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's wrists. Plaintiff reserves the right to call a representative on Dr. Sorenson's behalf if unable to appear or testify at trial. |

| 25. | Vinay Yagnik, M.D. | 26600 Cactus Ave, Moreno valley, CA 92555, (951) 988-9500. Dr. Yagnik is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's plan of treatment, colon, kidney, and injuries. Plaintiff reserves the right to call a representative on Dr. Yagnik's behalf if unable to appear or testify at trial. |
|-----|-------|-------|
| 26. | Wade Faerber, DO | 26520 Cactus Ave, Moreno valley, CA 92555, (951) 486-5350. Dr. Faerber is a treating physician for Plaintiff and will testify as to the evaluation, signs and symptoms, treatment, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's injuries. Plaintiff reserves the right to call a representative on Dr. Faerber's behalf if unable to appear or testify at trial. |

DATED: November 16, 2023

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF GRECH & PACKER

By: _____
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*

PROOF OF SERVICE

STATE OF CALIFORNIA, CITY OF LOS ANGELES

I, Karen Slyapich, am employed in the CITY of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action. My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

On November 16, 2023, I served the foregoing document described as:

**PLAINTIFF'S RULE 26 INITIAL EXPERT DISCLOSURES**

on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

METHOD OF SERVICE

☒ (BY MAIL)  I enclosed the documents in a sealed envelope or package and addressed to the parties at the addresses as indicated on the attached service list.

☐ I deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid thereon.

☐ I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of this office for the collection, processing and mailing of documents. On the same day that documents are placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ (BY ELECTRONIC SERVICE)  I caused the foregoing document(s) to be sent via electronic transmittal to the notification addresses listed below as registered with this court's case management/electronic court filing system.

☐ (BY FEDERAL EXPRESS)  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses as indicated on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 16, 2023, at Woodland Hills, California.

_____
Karen Slyapich

1

## SERVICE LIST

2

3   PHAEDRA A. NORTON, City Attorney SBN 200271
     REBECCA L. MCKEE, Assistant City Attorney, SBN 279485
     DEBRA K. COOK, Deputy City Attorney, SBN 250114
4   OFFICE OF THE CITY ATTORNEY – City of Riverside
     3750 University Avenue, Suite 250
5   Riverside, CA 92501
     Telephone (951) 826-5567
6   Facsimile (951) 826-5540

7   Attorneys for Defendants CITY OF RIVERSIDE and EVAN WRIGHT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# "EXHIBIT A"

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

November 16, 2023

Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:   *Xavier Lopez v. City of Riverside and Sergeant Evan Wright*, USCD Case
No. 5:21-cv-02140-PSG (JEMx).**

Dear Counsel:

Thank you for retaining me to analyze and render opinions regarding the January 26,
2021, officer involved shooting of Mr. Xavier Lopez (Mr. Lopez) by Riverside Police
Department (RPD) Sergeant Evan Wright (Sgt. Wright).  Pursuant to the requirements of
Rule 26, I have studied the reports, video recordings, RPD policies and procedures,
California POST training documents, photographs, and other materials (as listed below)
provided to me thus far regarding this case.  I am informed that several depositions of
officers and witnesses have recently been recently taken therefore those transcripts are not
yet available.  Please be advised that if any additional data (including the deposition
transcripts) is provided for my review, a supplemental report may be necessary.

It is necessary to state at the beginning of this report that I do not make credibility
determinations in expressing my opinions.  That is, where there are differences in the
events proffered by Sgt. Wright, or any other person present on scene versus those
proffered by other witnesses or apparent from the video evidence, I do not opine for the
trier of fact regarding who are the more believable witnesses.  I consider that the
resolution of any such conflicts is the purview of a jury to decide.  Taking any differences
(such as they are) into account, my preliminary opinions thus far are expressed below.

Additionally, it is necessary to state that I am not a lawyer nor a public official who hears
and decides cases brought in court.  My opinions rest on the training given to every POST
certified California Law Enforcement Officer and the reasonable professional standard of

Page 1 of  33

care as expressed and required pursuant to the training provided to every California certified Law Enforcement Officer, including Sgt. Wright by POST.


**Materials Reviewed Thus Far:**

1.   Stipulated Protective Order.

2.   Plaintiff's Complaint for Damages.

3.   Materials from Defendants' Motion for Summary Judgment:
    a.   Sgt. Wright Declaration in support of Summary Judgment.
    b.   Xavier Lopez Declaration in Opposition to Summary Judgment.
    c.   Plaintiff's Opposition to Summary Judgment.
    d.   Separate Statement of Material Facts regarding Summary Judgment.
    e.   Court Order Denying Summary Judgement.
    f.   Court Order Certifying Appeal as Frivolous.

4.   Video Recordings:
    a.   Sgt. Wright BWC Video.
    b.   Sgt. Wright Stabilized and Cropped Video.
    c.   Sgt. Wright Stabilized and Cropped Slow Motion Video.
    d.   Officer Park BWC Video.
    e.   Officer Park Stabilized and Cropped Video.
    f.   Officer Park Stabilized and Cropped Slow Motion Video.
    g.   Officer Monreal BWC Video.
    h.   Synchronized BWC Videos.
    i.   Officer Wilder BWC Video.
    j.   Officer Video after shooting (CITY 4169).

5.   Audio Recordings:
    a.   Interviews of Marisol Garcia.
    b.   Interviews of Monica Gonzalez.
    c.   Interviews of Xavier Lopez.
    d.   Interviews of Sgt. Evan Wright.

    a. CITY 116-171 - Interview with Marisol Garcia.
    b. CITY 172-190 - Interview with Monica Gonzalez.
    c. CITY 191-217 - Interview with Off. Evan Wright.
    d. CITY 218-278 - Interview with Xavier Lopez.
    e. October 20, 2023, Deposition of Evan Wright and Exhibits.

7. Investigative Records:
    a. CITY 26-29 - RPD Report Sgt. Simmons.
    b. CITY 41-47 - RPD Report Metro Officer Macias.
    c. CITY 54-60 - RPD Report Metro Officer Park.
    d. CITY 73-78 - RPD Report Metro Officer Monreal.
    e. CITY 79-82 - RPD Report Sgt. Lomeli.
    f. CITY 83-87 - RPD Report Det. Stinnett.
    g. CITY 88-93 - RPD Report Det. Mercadefe.
    h. CITY 94-100 - RPD Report Officer Mercado.
    i. CITY 101-105 - RPD Report Officer Espinosa.
    j. CITY 106-109 - RPD Report Officer Vasquez.
    k. CITY 110-115 - RPD Report Officer Montero.
    l. CITY 386-397 - Supervising DA Invest. Reid Report.
    m. CITY 398-401 - Sup. Foren. Spec. McKay-Davis Report.
    n. CITY 402-405 - Sr. DA Invest. Moreno Report.
    o. CITY 406-409 - Sr. Forensic Specialist Velin Report.
    p. CITY 410-412 - Sr. Forensic Specialist Sanchez Report.
    q. CITY 438-442 - DA Invest. Riley Report.
    r. CITY 443-476, 491-512, 515-523, 528-530, 535-537, 563-567, 570-572, 575-580, 591-593, 620-626, 633 - RPD Reports.
    s. CITY 635-637 - RPD Major Incident Log.
    t. CITY 638-643 - Evidence Log.
    u. CITY 664-665 - Operations Plan.
    v. CITY 666-707 - Incident Detailed Report.
    w. CITY 3206-4152 – Defendants' Document Production.

8. Photographs:
    a. CITY 1546-1967 - Incident Photos.

      b.    Officer Monreal Video Screenshots.
      c.    Officer Park Video Screenshots.
      d.    Officer Park Stabilized and Cropped Video Screenshots.
      e.    Sgt. Wright Video Screenshots.
      f.    Sgt. Wright Stabilized and Cropped Video Screenshots.
      g.    Photos of Mr. Lopez, P0001-0005.

9.     Defendants' Discovery Responses:
      a.    City of Riverside Responses to Plaintiff's Requests for Admission.
      b.    City of Riverside Responses to Plaintiff's Interrogatories.
      c.    Sgt. Wright Responses to Plaintiff's Requests for Admission.
      d.    Sgt. Wright Responses to Plaintiff's Interrogatories.

10.     Policies and Training:
      a.    CITY 775-1545 - RPD Policy Manual.
      b.    CITY 2082-3175 - Use of Force Training.

11.     POST Basic Learning Domains:
      a.    #1. "Leadership, Professionalism and Ethics." Version 5.6.
      b.    #2: "Criminal Justice System." Version 6.4.
      c.    #3: "Principled Policing in the Community." Version 5.1.
      d.    #5: "Introduction to Criminal Law." Version 5.6.
      e.    #15: "Laws of Arrest." Version 4.12.
      f.    #16: "Search and Seizure." Version 4.8.
      g.    #20: "Use of Force/Deescalation." Version 5.3.
      h.    #21: "Patrol Techniques." Version 5.0.
      I.    #23: "Crimes in Progress." Version 4.1.
      j.    #33: "Arrest Methods/Defensive Tactics." Version 5.0.
      k.    #34: "First Aid, CPR and AED." Version 6.1.
      l.    #35: "Firearms/Chemical Agents." Version 2.5.
      m.    #36: "Information Systems." Version 3.6.

12.     Overview of the incident scene via the internet.

**Brief Overview of Events and Commentary:**

On January 26, 2021, Mr. Lopez, a male Hispanic, age 29, was going to his daughter's house at or near 14610 Tomlinson Ave., Riverside, California.  Mr. Lopez was reported to be a parolee-at-large.  Officers with the Riverside Police Department METRO unit devised a plan to apprehend Mr. Lopez at this location and time.  The RPD Officers, including Sgt. Wright, surveilled the incident location waiting for Mr. Lopez to arrive.  Approximately 20 minutes later, Mr. Lopez arrived, parked his vehicle and began walking to his daughter's house.  Immediately, the RPD Officers in unmarked vehicles approached Mr. Lopez on the street. The Officers exited their vehicles and moved towards Mr. Lopez.  Initially, Mr. Lopez appeared to be reaching towards his left-breast pocket.  Then, as the RPD Officers approached and gave Mr. Lopez commands, Mr. Lopez appeared in the video to immediately surrender and comply with Officer commands by putting his empty hands up in the air.  With Mr. Lopez's empty hands in the air, Sgt. Wright shot Mr. Lopez. Then, as Mr. Lopez was falling to the ground, Sgt. Wright shot Mr. Lopez a second time.  In this set of facts (including as confirmed by video evidence) Mr. Lopez (as recorded) never verbally threatened any Officer and at the time of the shots, was not an immediate threat of death or serious bodily injury to any Officer or person.  The following is a brief overview of the incident, commentary, and opinions regarding Sgt. Wright's use of deadly force on Mr. Lopez.

**Incident:**

On January 26, 2011, at approximately 4:00 p.m., Mr. Xavier Lopez was walking near the sidewalk of 14610 Tomlinson Ave., Riverside, California.  There were seven Riverside Police Department ("RPD") officers involved in the incident: Sgt. Evan Wright, and Officers Macias, Ortiz, Park, Lopez, Wilder, and Monreal.  Initially, all Mr. Lopez saw was a large man running towards Lopez with a gun pointed at Lopez's chest.  Mr. Lopez was not able to initially identify Sgt. Wright as a police officer considering the RPD vehicles were unmarked civilian-looking vehicles, and the officers were not in typical, easily identifiable, RPD clothing.  After the large man, Sgt. Wright, closed the distance, Mr. Lopez realized the man charging him was a police officer.

Once Mr. Lopez realized Sgt. Wright was a police officer and heard another assumed officer command, "Hands up," Mr. Lopez immediately put his empty hands in the air around shoulder height, with his fingers spread wide and pointed to the sky in a clear indication of compliance and submission, and to communicate he was not a threat to the

officers or anyone else.  After Mr. Lopez first recognized the police presence and heard
the command to put his hands up, Mr. Lopez was shot by Sgt. Wright.  At the time, and
prior to Sgt. Wright first shooting Mr. Lopez, Mr. Lopez's hands were visibly empty, and
raised up in compliance and submission.  From Sgt. Wright's perspective, ten to fifteen
seconds passed from the time he exited his vehicle to the time he discharged his firearm.
Mr. Lopez did not attempt to evade arrest, did not run or flee, and was not resistive – he
complied.

Mr. Lopez never removed a gun from his coat.  Mr. Lopez never made any fast or furtive
movement that would indicate an intention to use a weapon against anyone, and instead
intentionally took his hands out of his pockets and raised his visibly empty hands in the
air in compliance.  In no way did Mr. Lopez ever grab the grip of the gun in a manner that
would suggest that he was about to use it.  Mr. Lopez never pointed a gun at any person
and never put his finger anywhere near the trigger of the gun.  The gun that was found in
Mr. Lopez's coat pocket was always pointed at the ground prior to Sgt. Wright using
deadly force against Mr. Lopez.  Sgt. Wright did not give a warning that deadly force was
going to be used and did not attempt to employ less-lethal alternatives to the use of deadly
force despite both being safe and reasonably available.

Key known facts for consideration of Sgt. Wright's use of deadly force includes:

- Mr. Lopez was alone in the street/sidewalk area.
- Mr. Lopez never verbally threatened to harm any officer.
- Mr. Lopez did not physically harm anyone.
- Mr. Lopez had a firearm within his left-breast coat pocket.
- As Sgt. Wright first pulled his vehicle up and as Sgt. Wright first
  exited his vehicle, Mr. Lopez removed his hands from his outside
  lower coat pockets and moved his left hand to grab the lapel of his
  coat and right hand toward the inside of the coat.
- Mr. Lopez did not grab or touch the gun in a threatening manner.
- Mr. Lopez did not have a "pistol grip" on the firearm.
- Mr. Lopez never removed the firearm from the coat pocket.
- Mr. Lopez did not point a gun at any officer.
- Mr. Lopez's hands were visibly empty at the time of the deadly
  force.
- Mr. Lopez's hands were up in the air in compliance at the time of the
  deadly force.
- Mr. Lopez did not attempt to resist arrest but surrendered.
- Mr. Lopez did not attempt to evade arrest by flight.

Page 6 of  33

- There were three (3) RPD Officers on scene with superior training and skill.
- The Officers approached Mr. Lopez in unmarked vehicles.
- Sgt. Wright announced, "Hey Xavier, it's the cops," while he was exiting the vehicle.
- Mr. Lopez did not hear Sgt. Wright's announcement.
- Mr. Lopez was not apprehended for a serious or violent crime.
- Sgt. Wright chose the apprehension location and time.
- Sgt. Wright closed the distance on Mr. Lopez.
- Sgt. Wright had time to analyze and use the appropriate force option.
- Sgt. Wright had the option to use cover, but chose not to utilize cover.
- Sgt. Wright had the ability to maneuver.
- Sgt. Wright had several less-lethal and less-intrusive alternatives to the use of deadly force available to him.
- Sgt. Wright did not give a verbal warning prior to the use of deadly force.

**From Sgt. Wright's Interview:**

Interview on January 28, 2021, by District Attorney Investigator and Detective. Incident occurred on Tuesday, January 26, 2021. Then Officer Wright had worked for Riverside Police for fourteen years. Knew Mr. Lopez was going to the house to pick up his daughter. Mr. Lopez was considered a parolee at large, which typically means he tested dirty or did not check in. There was a helicopter overhead in case Mr. Lopez fled. He intent was to contact Mr. Lopez on foot before he got to the house and away from the car. The officers were sitting on surveillance for 20 minutes then Mr. Lopez arrived by vehicle and parked.

Mr. Lopez exited the car driver's door wearing a trench coat with his hands in his pockets. Sgt. Wright drove the van to Mr. Lopez, parked and exited. Sgt. Wright stated, "Xavier it's the cops," and "Show me your hands." Sgt. Wright stated that Mr. Lopez pulled out a gun and Sgt. Wright used deadly force.

Sgt. Wright was dressed in a black raid vest, green BTUs, and a black sweatshirt. When Sgt. Wright exited the van he was approximately 10 to 15 feet from Mr. Lopez. Mr. Lopez reached into his coat with his right hand near his chest and Sgt. Wright saw the butt of a gun. Sgt. Wright closed the distance in order to grab Mr. Lopez.

Sgt. Wright was approximately 5 to 10 feet from Mr. Lopez when he used deadly force. Sgt. Wright estimated that it was approximately 10 to 15 seconds from him exiting his vehicle to using deadly force. Sgt. Wright stopped firing because he could see Mr. Lopez's empty hands.


**From Sgt. Wright's Deposition:**

- Two shots fired from his semiautomatic Springfield 1911, 45 caliber weapon. (Wright Deposition 7:9-14)
- Aimed center mass. (Wright Deposition 7:20-21)
- No warning was given. (Wright Deposition 8:11-14)
- Was in an unmarked van with two other officers. (Wright Deposition 8:15:20)
- Intent was to make contact with Mr. Lopez before he got in the house and before he got back in his car. (Wright Deposition 10:10-15)
- Sgt. Wright knew that Mr. Lopez was going to be picking up his daughter. 10:25-11:2)
- There were less-lethal alternatives available. (Wright Deposition 11:3-9)
- The windows were up in the van. (Wright Deposition 15:12-13)
- The average person looking at the van would not be able to tell it is law enforcement. (Wright Deposition 15:14-21)
- Sgt. Wright never dealt with Mr. Lopez in the past. (Wright Deposition 16:18-20)
- Sgt. Wright knew Mr. Lopez may be carrying a firearm. (Wright Deposition 16:21-23)
- Sgt. Wright was 15 to 20 feet away from Mr. Lopez when he stopped the van. (Wright Deposition 18:25-19:4)
- The goal was to safely take Mr. Lopez into custody using minimal amount of force. (Wright Deposition 21:12-20)
- Sgt. Wright stated to Mr. Lopez, "Xavier, it's the cops, take your hands out of your pockets, bro." (Wright Deposition 21:22-24)
- Sgt. Wright knew his uniform was different that a patrol officer's uniform. (Wright Deposition 22:14-17)
- Sgt. Wright was looking at Mr. Lopez's hands immediately before he used deadly force. (Wright Deposition 27:22-24)
- Sgt. Wright could see Mr. Lopez's hands when he was using deadly force. (Wright Deposition 29:9-11)

- Mr. Lopez never pointed a gun at Sgt. Wright. (Wright Deposition 29:18-23)
- Sgt. Wright was trained that deadly force is the highest level of force an officer can use. (Wright Deposition 33:4-6)
- Sgt. Wright was trained that deadly force should only be used if there is an immediate threat of death or serious bodily injury. (Wright Deposition 33:7-10)
- Sgt. Wright was trained that deadly force should only be used when no other reasonable options are available. (Wright Deposition 33:11-13)
- Sgt. Wright was trained to give a verbal warning when feasible prior to using deadly force. (Wright Deposition 33:14-20)
- Sgt. Wright has been involved in four total officer-involved shootings since 2008, resulting in the death of two of the individuals. (Wright Deposition 33:21-37:17)
- Sgt. Wright saw Mr. Lopez's hands in his outside coat pockets. (Wright Deposition 40:16-19)
- Sgt. Wright saw Mr. Lopez take his hands out of his outside coat pockets. (Wright Deposition 40:20-22)
- Sgt. Wright stated that he saw the butt of a gun. (Wright Deposition 40:23-44:7)
- The gun was still in Mr. Lopez's pocket after the shooting. (Wright Deposition 42:3-4)
- Sgt. Wright made the decision to use deadly force when he saw the butt of a gun. (Wright Deposition 42:10-11)
- Sgt. Wright said, "it's the cops," because he wanted to make sure Mr. Lopez knew he was law enforcement as opposed to someone else and reach for a gun. (Wright Deposition 47:15-21)
- No other officer fired. (Wright Deposition 59:2-4)
- Mr. Lopez did not have anything in his hands when he went to the ground. (Wright Deposition 59:20-25)
- It would not be appropriate to use deadly force when Mr. Lopez was on the ground even though he still had a gun in his pocket. (Wright Deposition 60:6-11)
- There was a helicopter overhead. (Wright Deposition 60:12-14)
- Sgt. Wright was promoted after the incident. (Wright Deposition 60:21-24)
- The incident was found to be within policy. (Wright Deposition 61:2-4)

**Mr. Lopez's Interview Narrative:**

Mr. Lopez was interviewed in the hospital on February 2, 2021, by a District
Attorney Investigator.  Mr. Lopez was not initially read his Miranda rights despite
being in custody.  Mr. Lopez had his eyes shut and stated that he was in pain.  Mr.
Lopez asked, "How did I get shot?" and stated, "I'm not sure what happened."
Mr. Lopez then asked, "How am I getting assault for a-a gun?"  Mr. Lopez did not
know what day it was and believed he had been in that room for almost two weeks.
Mr. Lopez asked, "Can I have a lawyer?" then he was read his Miranda rights.
During the interview, Mr. Lopez stated again that he was hurting and stated, "I
can't answer the questions, please stop."

During the incident, Mr. Lopez thought he was going to see his daughter.  Mr.
Lopez had a gun in his coat chest pocket.  Mr. Lopez stated that he was trying to
take the gun out to put it down on the ground because he did not want to get shot.
But the gun wouldn't come out of the pocket.  Mr. Lopez carried the gun because
he thought somebody was trying to kill him.  Mr. Lopez never shot a gun in his life
but believed his life was in danger.  Mr. Lopez was expecting gangsters to come at
him.  Then several people approached him, and he did not know they were police.
Once they got closer, Mr. Lopez was able to see that the vest said police.  Mr.
Lopez stated, "I wasn't tryin to hurt, I wasn't tryin to hurt nobody."  Mr. Lopez
figured if he was going to get attacked by some people, if he showed them the gun
then they would back off.

The gun was never taken out of his pocket completely because it got stuck.  Mr.
Lopez did not say anything to the police.  Mr. Lopez stated, "I definitely don't
wanna shoot nobody."  Mr. Lopez believed that Sgt. Wright panicked.

Mr. Lopez acknowledged that he should not have had a gun on him.

**Force Options (POST):**

Law enforcement officers are trained by POST that a subject's resistance/actions
to an arrest will determine the type of force used by peace officers.  The following
illustrates how a subject's resistance/actions can correlate to the force applied by
an officer:

*Compliant* - Subject offers no resistance:
- Mere professional appearance;
- Nonverbal actions;
- Verbal requests and commands;
- Handcuffing and control holds.

*Passive non-compliant* - Does not respond to verbal commands but also offers no physical form of resistance:
- Officer's strength to take physical control, including lifting/carrying;
- Pain compliance control holds, takedowns and techniques to direct movement or immobilize a subject.

*Actively resist* - Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally or physically signaling an intention to avoid or prevent being taken into or retained in custody:
- Control holds and techniques to control the subject and situation;
- Use of personal body weapons to gain advantage over the subject.

*Assaultive* - Aggressive or combative; attempting to assault the officer or another person, verbally or physically displays an intention to assault the officer or another person:
- Use of devices and/or techniques to secure compliance and ultimately gain control of the situation;
- Use of personal body weapons in self-defense and to gain advantage over the subject.

*Life-threatening* - Any action likely to result in serious bodily injury or death of the officer or others:
- Utilizing firearms or any other available weapon or action in defense of self and others to stop the threat.

*Constant reevaluation:*  Peace officers must continually reevaluate the subject's action and must be prepared to transition as needed to the appropriate force options.

Under the facts cited above, Mr. Lopez never harmed any person, and Mr. Lopez's conduct was not life-threatening.  Accordingly, methods to deal with Mr. Lopez, given

the totality of the circumstances of this incident (a single, non-life threatening, non-fleeing man) include verbal de-escalation (as trained) and control holds.  Sgt. Wright overreacted in the use of deadly force in violation of basic officer training and department policy.


**Professional Standards and Considerations Regarding the Use of Deadly Force:**

Law enforcement officers in California are trained that:

- The use of deadly force is the most serious decision a peace officer may ever have to make. Such a decision should be guided by the reverence for all human life (including the officer's life and others that may be in imminent danger) and, used only when other means of control are unreasonable or have been exhausted. (POST Learning Domain #20: "Use of Force.")
- Deadly force applied by a peace officer is force that creates a substantial risk of causing death or serious bodily injury. (POST Learning Domain #20: "Use of Force.")
- Reverence for all life is the foundation on which the use of deadly force rests. The authority to use deadly force is an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law enforcement/community partnership, peace officers are expected to be self-disciplined, accountable, and in turn, the community is expected to support its peace officers. (POST Learning Domain #20: "Use of Force.")
- An officer may use deadly force to protect oneself or others when the officer has the objective and reasonable belief that his/her life, or the life of another, is in imminent danger of death or serious physical injury based upon the totality of the facts known to the officer at the time. (POST Learning Domain #20: "Use of Force.")

The decision of whether or not to use deadly force may be influenced by the officer's:

- training and experience;
- judgment;
- mental alertness;

- emotional maturity;
- existing facts and circumstances;
- understanding of the law as it relates to agency policies concerning the use and amount of force that is objectively reasonable to achieve the law enforcement mission. (POST Learning Domain # 20: "Use of Force.")

**POST Re-evaluation of Force Requirement:**

"Peace officers must use the force option(s) appropriate for the situation as conditions may change rapidly.  Officers must continually reevaluate the subject's actions and the practical considerations involved in the situation and must be prepared to transition as needed to the appropriate force options (de-escalate or escalate), so as to always remain within the bounds of conduct which is objectively reasonable under the circumstances." (POST Learning Domain 20, page 3-7.)

**Professional Standards Regarding the Use of Deadly Force in this Incident:**

Peace officers are trained that the use of deadly force constitutes a lawful and justifiable act of self-defense when the officer using deadly force actually and reasonably believes one or more of the following facts exist:

- That there is an imminent danger that the person against whom the deadly force is used will either kill or cause great bodily injury to another person.
- That it is necessary under the circumstances to use deadly force to prevent that person from killing or causing great bodily injury to the officer confronting the suspect.
- That it is necessary under the circumstances to prevent the escape of a suspect who presents a clear danger to the community as evidenced by the nature of the crime, or other obvious factors. In such cases deadly force is not allowed to prevent the escape of misdemeanor and most felony suspects.

In my opinion, under the set of facts demonstrated here, and especially when considering the video evidence that is documented related to the shooting, Sgt. Wright could not have

Page 13 of  33

reasonably believed that any of the above circumstances existed at the time he used
deadly force on Mr. Lopez.


**The Required (and Trained) Tactical Response to this Incident:**

A seminal aspect of this incident was the gross departure from required tactics, which
resulted in the unjustified use of deadly force against Mr. Lopez.  These tactics are so
fundamental that absent highly unusual and rare instances, failures to adhere to them are
not excused or forgiven.  In this regard, it is helpful to compare what occurred during this
incident in view of the basic tactical steps expected from trained law enforcement
officers.  However, trained and expressed, the basic tactical steps understood and required
are briefly stated as follows:

*Containment:*

This phase includes getting the subject (Mr. Lopez) under control by
restricting any opportunity to flee or change position so that a safe
apprehension can occur.  Initially, this can be a difficult problem if the
subject is in flight.  The professional wisdom (as taught by POST) is to
create a containment zone, remain at a safe distance to relieve the emotional
pressure on the target, and await sufficient assisting units and coordinate
them into a team effort.

Important to this incident is that Mr. Lopez did not attempt to flee from the
officers.  The training is that once the subject is located and/or contained,
the objective is to keep the subject contained - preferably within an isolated
area away from the public (or to evacuate bystanders from the containment
area) - while they are dealt with by law enforcement officers who remain in
positions of safety.  POST training in this regard is extensive and precise.
Further, during containment, law enforcement officers are taught that
leaving the safety of cover and exposing themselves is a forbidden tactic.
Sgt. Wright's conduct was counter to training and the tactical plan of action.

In this incident, there were seven officers on scene.  All that was necessary
at this point in the incident was to re-enforce the containment of Mr. Lopez
and position officers at strategic locations behind cover to maintain the

containment and implement the remaining proper tactical steps (as outlined
below).  This did not occur in this case.  Instead, Sgt. Wright took it upon
himself to override the tactical plan and handle the situation by himself, and
ultimately used deadly force against Mr. Lopez.

A primary purpose of establishing a containment includes providing the
apprehending law enforcement officers with a safe and realistic assessment
of the credible risks to be tactically resolved.  Sound tactics accommodate
the opportunity for such a safe assessment.  In this case, Sgt. Wright
squandered the tactical advantage by reacting too quickly and not giving
sufficient time for Mr. Lopez to understand the circumstances and comply
with instructions and for the less-lethal force to take effect.  It cannot be
overstated that according to the POST standards (and training and policies),
the law enforcement officers involved in this incident were required to take
a position of safety - "cover" - and take sufficient time as events unfolded
for the next expected step in the process - "decompression."

*Decompression:*

All living creatures, including human beings, have instinctive protective
reflexes that will take control of the body during extreme stress, especially
without any training to overcome or override these reflexes.  If exposed to
extreme stress without any training in how to handle such stress, people
may invariably flee or, when there is no other option, they will fight to
either ward off danger or to create an avenue of escape.  Trained and
experienced law enforcement officers have both seen and experienced this
human response.  It is a basic fact of life in the business of law enforcement
work, and something every experienced law enforcement officer is trained
to cope with.

Law enforcement officers are trained that there is always a point during any
sudden demand upon a subject when it becomes counterproductive and can
only be expected to drive the subject into a state of incoherent dread and
terror rather than compliance.  As stress and/or anxiety increase, the ability

for the contained subject to comply decreases.  Thus, a decompression
pause is necessary, at which time, a rational activity (such as meaningful
communication), can take place.  This did not occur in this case.  Sgt.
Wright did not follow the basic tactical training and did not attempt to
decompress/de-escalate the situation.  In my opinion, Mr. Lopez was not
given ample opportunity to understand and comply and for the less-lethal
force to be utilized.  Thus, the actions of Sgt. Wright were logically
unnecessarily escalated and exacerbated the situation.

*Communication:*

In this phase, a law enforcement officer establishes contact with the subject
(in this case Mr. Lopez) from a position of advantage/safety.  During this
time, unknown issues such as language problems, impairments caused by
intoxication, mental illness, emotional anxieties, and other issues that may
interfere with safe apprehension become known and are dealt with.  Sgt.
Wright and the other involved officers failed to maintain a position of safety
nevertheless had the time to give instructions to Mr. Lopez to take him into
custody.

Ignoring this key phase of contact often leads to a situation that deteriorates
into confusion, and in which law enforcement officers take their own
independent actions (as occurred in this incident), rather than working
together in a coordinated plan.  The necessity for a calm and skilled law
enforcement officer-subject communication cannot be overstated.  When
this does not occur, law enforcement officers and civilians alike can be
needlessly and avoidably injured or killed.

*Instruction:*

Once the communication link has been established, a clear set of
instructions, which contains enough detail to avoid surprises and assures
understanding, is conveyed to the subject.  In this incident, a contact officer

on scene would have explained to Mr. Lopez how to assume a position that
would have facilitated a safe apprehension, and what he was not to do.

*Compliance:*

In this phase, the subject (in this case Mr. Lopez) states/expresses his
understanding of the instructions that were given to him by the
communicating officer/negotiator.  Mr. Lopez would have had an
opportunity to ask questions for clarification and would have demonstrated
his understanding of the instructions to the arrest team.

*Surrender:*

This phase requires the subject (in this case Mr. Lopez) to physically
perform the acts that were communicated to him by the communicating
officer.  Mr. Lopez would have been instructed, and then taken the steps to
move into a place and position for officers to approach and take him into
custody without the use of any force.  This would have included Mr. Lopez
voluntarily placing himself in an apprehension position with his hands
empty and at his back for handcuffing.

*Detention/ Apprehension:*

This final phase includes the actual proper reasonable physical restraint of
the subject (if necessary), a search for any weapons, and his safe transport
to a facility for booking.


**Additional Opinions Thus Far:**

1.      Officers are trained that they are responsible for their tactics when
        they use lethal force.  Sgt. Wright's actions here demonstrate
        inappropriate tactics that appear to be directly connected to his
        unreasonable and unnecessary infliction of lethal force on Mr.
        Lopez.  The video evidence in this regard reflects an unacceptable
        disregard for Mr. Lopez's life and safety.  The video evidence clearly

shows that Mr. Lopez's hands were visibly empty and raised in the air in compliance with officer commands.  There is no objective basis to believe that anything Mr. Lopez was doing justified deadly force.

"The criminal justice system gives law enforcement two extraordinary powers:
- •       The power of arrest and
- •       The power to use deadly force."

"The authority to do so does not come from the rule of an authoritarian dictator.  Rather it comes from the will and consent of the people who put their trust in law enforcement to use that power with the utmost of care and restraint.  This is why it is important to emphasize that peace officers do with the utmost of care and restraint, not confer "police powers" on themselves.  These powers come to the criminal justice system from the people they serve."  (Learning Domain #2: "Criminal Justice System," Page 1-4. (Emphasis added.).

Additionally, an entire chapter in POST Learning Domain #20 is devoted to the consequences of unreasonable force:"

""An officer will be found to have used unreasonable force when the type, degree, or duration of the force which was used is found to have been greater than that which was objectively reasonable under the totality of the circumstances confronting the officer at the time that the force was used."

"An officer who uses more force than is objectively reasonable faces the possibility of criminal prosecution, civil liability, and/or agency administrative sanctions." (POST LD #20, page 7-5.)

2.       Officers are trained that they are responsible for their tactical decisions that result in a use of lethal force.  As it appears from the video evidence, Sgt. Wright did not follow the tactical guidelines required of every Basic POST certified law enforcement officer in this incident.  Each officer had obvious reasonable alternatives that

Page 18 of  33

included (but are not limited to) not approaching Mr. Lopez on foot and in the open (absent cover), use of verbal commands and warning. Their collective failures to follow the "high-risk" felony tactical method to extract persons was a gross departure from the required tactics which led to the shooting and for which they cannot be reasonably excused or forgiven. In my professional training and experience – having personally supervised and accomplished more than 1,500 high-risk apprehensions of extremely dangerous and often armed felony suspects without firing a shot; it is my opinion that Mr. Lopez would not have been shot to death in this incident had Sgt. Wright followed the obvious and required tactics.

In my opinion, there were fundamental tactical errors in this incident. In my experience, a significant number of civilian deaths involving police result from a series of cascading departures from expected and required tactics and deliberate departures from training. This appears as a key factor in the downward spiral of events resulting in the shooting of Mr. Lopez.

Sgt. Wright failed to establish an incident specific tactical plan and failed to follow the trained default tactical plan for containing and communicating with a subject. Sgt. Wright failed to de-escalate the situation, and instead inappropriately escalated the situation leading to his use of inappropriate and unnecessary force as defined by POST. Pursuant to RPD training, tactical de-escalation involves the use of techniques to reduce the intensity of an encounter with a subject and enable an officer to have additional options to gain voluntary compliance or mitigate the need to use a higher level of force while maintaining control of the situation. Sgt. Wright failed to de-escalate and failed to attempt to de-escalate the situation. De-escalation techniques require planning, assessment, time, containment, use of resources, and communication.

Officers should coordinate their approach to a subject – this did not occur here. Officers should use (as trained) the equation *Distance + Cover = Time*, and time = options - which allows officers to communicate with the subject, refine tactical plans, and call for additional resources – this did not occur here. Officers should make an effort to contain the subject to create more time and opportunity to de-escalate the situation – this did not occur here.

Officers should call for and utilize additional resources with
specialized expertise and tools to assist in control and containment of
the situation – this did not occur here.  Officers should maintain
communication between officers and communicate effectively with
the subject (critically important as trained) including giving verbal
warnings, use of persuasion, defusing, empathy, redirecting, and
building a rapport – this did not occur here.

3.     The tactical decisions made by Sgt. Wright demonstrate unnecessary
recklessness that led to the shooting.  As stated above, there were
obvious reasonable alternatives to the use of lethal force.  There was
also ample room to tactically move about, maintain cover, and give
commands and warnings, rather than shoot Mr. Lopez.  Rather, Sgt.
Wright rushed in the open towards Mr. Lopez and made no effort
toward tactical repositioning or de-escalation.  Accordingly, Sgt.
Wright's deliberate departure from the tactical guidelines and
standard are per se unnecessarily reckless and dangerous and directly
connected to the shooting that occurred.  The tactics are specifically
identified by POST include.

**Inappropriate attitude**
•      Careless or complacent.
•      Too aggressive.

**Poor or no planning**
•      Rushing into the situation without any plan of action.
•      Failure to establish a plan of action prior to engaging
       the suspect.
•      Not considering alternative actions.

**Inadequate communication**
•      Not establishing roles (cover, contact, etc.).
•      Failure to work with other officers as a team.

4.     A warning that deadly force will be used must be given when
feasible.  Sgt. Wright failed to give a warning that deadly force was
going to be used.  In fact, Sgt. Wright drew his weapon and fired
within seconds.

5.      As stated above, Sgt. Wright's actions are indicative of a failure to follow training and procedures taught by POST.  As a result of failing to follow POST training and procedures , Sgt. Wright is directly connected to the preventable, unnecessary, and excessive shooting that occurred.  His actions fall below the established professional standards, and they can only be viewed as reckless and dangerous.  As such, his actions constituted unreasonable and excessive force.

6.      Officers are trained that their use of force must always be based upon objectively reasonable (and true) facts.  They are trained that "subjective fear" never justifies the use of force -- especially in circumstances where lethal force is used.  The statements of Sgt. Wright support the claim that he acted on an irrational and unjustified subjective fear that existed in his own mind and was not supported by objective facts when he shot Mr. Lopez.

7.      In my opinion, Sgt. Wright exhibited a gross departure from nationally accepted, required tactics to minimize the use of lethal force during a high-risk operation as outlined above.  Trained and experienced officers know that failure to follow them violates professional standards, policy and training.  This flawed form of the tactic causes unnecessary injuries and death.

Here, in my opinion, the sudden shooting at Mr. Lopez, after Mr. Lopez placed his visibly empty hands in the air in compliance with commands and in a universal act of surrender, was reckless and out of policy.  In this regard, it is helpful to compare what occurred during this incident in view of the basic tactical steps expected. However trained and expressed, the basic tactical steps understood and required during deployment of high-risk apprehension of suspects are briefly stated above.

8.      Sgt. Wright's use of deadly force was inappropriate and unnecessary under the totality of the circumstances, was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training.

Officers in California (including Sgt. Wright) and throughout the nation are trained that the right to life is a constitutional right. Accordingly, Officers are to use lethal force always with a reverence

for life and only in the direst of circumstances and only absent an
obvious reasonable alternative.  In the case of deadly force, an
officer may not use deadly force if there is not an imminent threat of
great bodily harm or death against him or someone else.

Here, Mr. Lopez was not an immediate threat of death or serious
bodily injury to Sgt. Wright, or any other officer or person at the time
of the use of deadly force.  The video recordings are the best
physical and objective evidence in this case.  Physical/objective
evidence takes no side, does not lose its memory, and documents the
true facts.  Based on my review of the materials, no reasonable
officer would have perceived Mr. Lopez was an immediate risk of
death or serious bodily injury.  No gun was in Mr. Lopez's hands at
the time of the use of deadly force.  Further, Mr. Lopez did not
attempt to point a firearm at any officer or person at the time.

Even if Mr. Lopez had a gun in his hand at the time of the shots,
which he did not, officers, including Sgt. Wright, are trained and
know that they cannot shoot a person merely for having a gun in
their hand.  To do so would constitute inappropriate, unnecessary,
and unjustifiable force, which is what we have here.  Considering the
absence of concrete evidence to validate Sgt. Wright's assertion that
he fired at Mr. Lopez due to a credible threat to himself or others by
Mr. Lopez, it is more likely that this incident is a result of Sgt.
Wright overreacting and using unnecessary force than reacting to an
actual perceived threat.

Deadly force is only authorized if the subject's conduct is life-
threatening resistance.  Important to my review is that Mr. Lopez
was not being aggressive or combative with any person at the time
of the use of deadly force, Mr. Lopez did not verbally threaten to harm
any person, and Mr. Lopez did not verbally or physically display and
intention to assault any officer or person.  Sgt. Wright did not issue a
verbal deadly force warning prior to his use of deadly force.  Further,
based on my review of the video evidence, it was feasible for Sgt.
Wright to issue a verbal deadly force warning prior to his use of
deadly force.  An officer's (here Sgt. Wright) failure to take the time
available to him and uses deadly force instead of issuing a warning
does not mean that the officer did not have time.  It is my opinion

that Sgt. Wright had time (it was feasible) to give a warning and intentionally chose not to.

Sgt. Wright had reasonable, less-intrusive, alternatives to the use of deadly force.  Reasonable alternatives to the use of deadly force, including as described above, that were available to Sgt. Wright include but are not limited to achieving cover, communicating and planning with other officers, coordinating resources such as a helicopter, K9, or other support, communicating with the subject (here Mr. Lopez), attempting to apprehend on foot, attempting to contain, tactical repositioning, and less-lethal force options if necessary.  Further, based on my review of the video evidence it was feasible for Sgt. Wright to utilize any one or combination of the reasonable available less-intrusive alternatives to the use of deadly force.

An officer's (here Sgt. Wright) failure to take the time available to him and instead used deadly force instead of attempting reasonable alternatives does not mean that the officer did not have time, or it was not feasible.  It is my opinion that Sgt. Wright had time (it was feasible) to use less-intrusive means and intentionally chose not to. Sgt. Wright was not responding to a serious or violent crime at the initiation of his contact with Mr. Lopez.

This was not a situation that constituted requiring split-second judgments by Sgt. Wright.  My review of the objective facts of this case (as shown in the video evidence) are that Sgt. Wright had time and opportunity to utilize cover but failed to do so, had time and opportunity to utilize space and distance to create even more time but failed to do so, had time and opportunity to communicate with Mr. Lopez to de-escalate the situation but failed to do so, and had time and opportunity to communicate with Sgt. Wright and other officers to create a safe apprehension and containment plan for Mr. Lopez but failed to do so.  For a reasonable officer to be in a situation to make a split-second judgment (as it relates to the use of deadly force) there must be a triggering event that is reasonably perceived by the officer which the officer is reacting to and reasonably believes requires an immediate response.  One of the reasons that Sgt. Wright's use of deadly force was inappropriate is because it was an

overreaction to the situation, and he fired too quickly, without a proper assessment of the need to do so.

Sgt. Wright appears to have deliberately ignored POST training, standards and tactics, leading to the unnecessary shooting of Mr. Lopez.  As such, Sgt. Wright's decisions and actions fell below the expected and required professional standard of care and reflected deliberate indifference (as trained) to the life and safety of Mr. Lopez.

9.   Based on my review of the record, Sgt. Wright violated POST standards and tactics which reflects his lack of adequate training, and a direct reflection of RPD's inadequate supervision, and training.  I also noted that RPD officials, ignoring the objective evidence as I have described above, ratified, and approved Sgt. Wright's use of inappropriate and unnecessary deadly force.

Sgt. Wright's use of deadly force against Mr. Lopez when Mr. Lopez did not point a gun at any person, was not moving towards any person, but had his empty hands up in the air, demonstrates his complete lack of situational awareness, lack of control over his emotions and fears, and his completely inadequate training and understanding of basic use of force principles.

The RPD, through its chain of command, appears to have endorsed the dangerous tactics that are connected to this incident.  As such, their collective approval of these tactics puts the communities they serve at unnecessary future risk of death and/or injury from the officers involved in this case.  Further it places the community at risk of serious injury/death by other officers in the department, who have been or are now, similarly trained and/or supervised.

Based on my review of this matter, Sgt. Wright's failures in this matter are not from a lack of opportunity to train, but more so a lack of following the training provided.  This indicates to me, and would indicate to a reasonable law enforcement officer, that the RPD's custom and practice is to fail to enforce their training and policies by ratifying inappropriate force.

**My Qualifications To Review This Case:**

My opinions are based in part on my training, professional experience and education.  I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD).  I was hired on December 1, 1965, and I retired from active service on March 31, 1993.  My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant.  I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5, 1988).  The POST Command College was a Masters level two-year course of study requiring a thesis, in Police Administration, with the diploma awarded by the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties.  Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail).  I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units.  I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers.  Those cases included possible complaints relating to both misdemeanor and felony crimes.  They frequently required follow up investigations and interviews before the exact nature of the case could be determined.  As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's
Central Jail (MCJ) for a period of 18 months as a line officer.  Upon my subsequent
promotion to Lieutenant, I returned to the same facility approximately 10 years later.
During that time, I was assigned as a Jail Watch Commander, and as the Facility Training
and Logistics Administrator.  At the time of my assignment, the MCJ held a daily
population in excess of 7,000 inmates, including a hospital, which was serviced by a staff
of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve
Forces Bureau, I worked closely with the State of California Peace Officer Standards and
Training in revamping our Reserve Academy to bring it into state compliance.  This
process gave me an expertise in the POST Basic curriculum.  I also supervised the
training of cadets at our Reserve Training Academy.  They were taught proper
investigation, interview, and apprehension procedures.  Among other topics, I lectured the
Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and
Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the
Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations
Center.

During the last five and one half years of my career, I commanded a specialized unit
known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.),
which was created to investigate, locate, observe and arrest major (career) criminals.  I
held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with
homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police
corruption.  The majority of our cases were homicide cases, including the murder of
police officers.  Arrests frequently occurred in dynamic circumstances including crimes in
progress.

My unit also conducted major narcotics investigations including undercover narcotics
buys, buy busts, and reverse stings.  We frequently deployed at the request of
investigative units, such as Narcotics, which provided the initial investigative leads for
our operations.  These narcotics cases usually involved multiple kilogram quantities of
drugs and amounts of money ranging from one hundred thousand to more than one
million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide
investigations.  In that regard, the unit processed, under my command and supervision,
various aspects (depending on the complexity of the cases involved) of approximately
1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 2,400 cases for which I have been retained as a
consultant (since 1993) have involved injuries or deaths connected with some aspect of
force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three
justifiable shooting incidents.  From that time, and over the next five years of my
command, N.O.R.S.A.T. established a remarkable record of more than two thousand
arrests of career criminals without a single shot fired – either by my officers or by the
suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous.  Some were
apprehended during the course of their crimes and were very prone to use firearms to
escape apprehension.  This record of excellence was accomplished through the use of
proper tactics, management and supervision of personnel, training in correct apprehension
methods, and adherence to the moral and ethical standards endorsed by California POST
and my Department.  These methods and principles are also embraced by every state
training commission of which I am aware, as well as the national standards established by
the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was
assigned to author Field Operations Directive 89-3, "Tactical Operations Involving
Detective Personnel."  This order remained in force 20 years (until September 30, 2009),
and included the basic standards and considerations with which investigative officers
must comply in the event of a tactical deployment such as the dynamic entry into a
building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail
administration, investigations, police procedures, police tactics, investigative procedures,
shooting scene reconstruction, and police administration in Arizona State Courts,
California State Courts, Washington State Courts and Federal Courts in Arizona,
California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio,
Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and
Wisconsin.  I have testified before the Los Angeles Police Department Board of Rights
and the Los Angeles County Civil Service Commission.  I have testified before the Harris
County (Texas) Grand Jury and the Cleveland Grand Jury.  I have also submitted written

opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts.  I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California.  I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana.  I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons."  On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert."  On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons.  I was selected (January 24, 2020) to present on the topic of: "Use of force litigation under California's negligence standard and the impact of AB 392" at the National Police Accountability Project held at Loyola Law, Los Angeles, California.  On February 18, 2020, and on March 10, 2021, and on October 27, 2023.  I lectured (at request) at the University of California - Irvine, School of Law, Civil Rights Litigation Clinic.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas).  As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden.  The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp.2d.1047.  I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007).  The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008).  The *Torres* case was appealed to the U.S. Supreme Court and returned for trial.  I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.*  (E.D. Wis Case No. 13-cv-0920), regarding field strip

and cavity searches, hiring, training, discipline and supervision, and which resulted in
significant policy changes within the MPD.  My opinions supported argument in the
Ninth Circuit case: *A. D., a Minor; J. E., a Minor; Sue Casey, Plaintiffs-Appellees, v.
State of California Highway Patrol, Defendant, and Stephen Markgraf*., No. 09-16460,
D.C. No. 3:07-cv-05483-SI (9th Circuit, Published Opinion).  My opinions supported
argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096,
1102 (9th Cir. 2014).  The Ninth Circuit also drew from my expert reports regarding
credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867
(9th Cir. 2011), and *(Baton use) Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir.
2011).  The Ninth Circuit also drew from my expert reports regarding Jail Administration
and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).  The
Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th
Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated
to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d
446 (9th Cir. 2013).  The Fifth Circuit drew from my expert report regarding search and
seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674
F.3d 456 (5th Cir. 2012).  The Ninth Circuit also drew from my expert report regarding
the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d
867 (9th Cir. 2012).  I was the expert in the Ninth Circuit opinion regarding the
allegations proffered by police officers and their use/display of firearms against civilians
in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014).  Most
recently, I was the expert in an important Ninth Circuit opinion regarding the allegations
proffered by police officers and their use of lethal force against unarmed persons in
*Jennifer Cruz, et al., v. City of Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014).  I was the
expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in
*Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644.  My opinion is quoted in
the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City
of Tustin, et al.*, No. 14-55184.  My opinions supported argument in the Ninth Circuit
case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for
publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement
by the District Court.  My opinions supported argument in the Ninth Circuit case: *Estate of
Shakina Ortega, et al., v. City of San Diego, et al.*  No. 14-56824 (not for publication)
wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District
Court.  My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et
al., v. City of Fortuna, et al.*  No. 14-15098 (for publication).  My opinions supported
argument in the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding
use of lethal force and "suicide by cop,"  No. 15-55029 (not for publication).  My
opinions supported argument in the Ninth Circuit Case *Angel Mendez; Jennifer Lynn
Garcia, v County of Los Angeles, et al.,* Nos. 13-56686, and 13-57072 (for publication)
and which was settled before the Supreme Court, No. 16-369, regarding the use of lethal

force and searches.  My opinions supported argument in the Ninth Circuit case: *Chien Van Bui, et al, v City and County of San Francisco, et al*, No. 14-16585 (not for publication), regarding the use of lethal force.  My opinions supported argument in the Sixth Circuit opinion, Case No. 16-5322*, Carey Woodcock v. City of Bowling Green, et al,* Originating Case No. 1:13-cv-00124 regarding the use of lethal force.  My opinions supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for publication), *Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al,* Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser weapons.  My opinions supported argument in the Ninth Circuit opinion, Case No. 16-15606 (for publication), *Christian Longoria, et al v. Pinal County, et al,* Originating Case No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit.  My opinions supported argument in the Ninth Circuit case: *S. B. v. County of San Diego,* 864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity.  My opinions supported argument in the Tenth Circuit case: *Russell Tenorio v. Brian Pitzer,* Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of qualified immunity and use of deadly force.  I participated as a retained expert in the USDC Fifth District case, *Stephen McCollum et al., v. Texas Department of Criminal Justice, et al.,* Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths.  My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified Immunity.  My opinions supported argument in the Ninth Circuit Case *Richard Vos; Jenelle Bernacchi, v City of Newport Beach, et al.,* Nos. 16-56791 (for publication) and which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force and mental illness.  My opinions (and quoted by name) supported argument in the Ninth Circuit Case *S.R. Nehad, et al. v. Browder, et al.*, No. 18-55035 (for publication) regarding the use of lethal force and custom and practice.  My opinions supported argument in the Ninth Circuit opinion, Case No. 17-55930 (not for publication), *Estate of Kevin Brown, et al. v. Michael Lambert, et al.*, D.C. No. 3:15-cv-01583-DMS-WVG, regarding Detective Investigations and Qualified Immunity.  My opinions supported argument in the Ninth Circuit opinion, Case No. 15-56339 (for publication), *Shane Horton, by his Guardian Ad, Litem Yvonne Horton, v. City of Santa Maria; Santa Maria Police Department; Andrew Brice*, D.C. Case No. 2:14-cv-06135- SJO-PJW, and *Jonathan Michael Castro v. County of Los Angeles, et al,* D.C. Case No. CV 10-5425 DSF (JEMx), 833 F.3d 1060 (9th Cir. 2016) (en banc), regarding jail standards, in-custody suicidal prisoners and qualified immunity.  My opinions supported argument in the Ninth Circuit opinion, Case No. 17-56270 (not for publication), *James Soler v. County of San Diego, et al.,* D.C. No. 3:14-cv-02470-MMA-RBB, regarding required verification of persons taken into custody pursuant to a warrant of arrest.  My opinions supported argument in the Ninth Circuit opinion, Case No. 18-17404 (for publication)

*Tan Lam, v. City of Los Banos, et al.* D.C. No. 2:15-cv-00531-MCE-KJN, regarding the
use of lethal force. My opinions supported argument (and I was cited by name) in the
Ninth Circuit opinion, Case No. 19-56035 (for publication), *Tiffany Tabares, et al v. City
of Huntington Beach, et al*, D.C. Case No. 8:18-cv-00821, JLS-JDE, regarding use of
force and subjects suffering mental illness. I was retained as consultant regarding the
October 15, 2019 Law Enforcement Activity Related Death (including positional
asphyxia) of Mr. Angel Zapata-Hernandez by San Diego Metropolitan Transit System
(MTS) Code Compliance Officers. My consultations included recommendations and
resulted in significant changes in policy and training by the MTS. I was a retained expert
in the Temporary Restraining Order restricting the use of kinetic weapons during
demonstrations issued April 19, 2021 in *Black Lives Matter v. City of Los Angeles, et al*,
Case No.: CV 20-5027 CBM (Asx).. My opinions supported argument in the Ninth
Circuit opinion, Case No. 20-16351 (not for publication), *Terrance Amons, et al., v.
Dillon Tindall et al.* D.C. No. 4:19-cv-00301 KAW regarding use of lethal force. My
opinions supported argument in the Ninth Circuit opinion, Case No. 20-56254, D.C.
No.2:19-cv-05370-CAS-JC (for publication), *Paulette Smith, individually and as
Successor in Interest to Albert Dorsey, deceased, v. Edward Agdeppa, and City of Los
Angeles, et al.*, regarding the use of lethal force. My opinions supported argument in the
Ninth Circuit opinion, Case No. 21-16709 (for publication), *Jose Murguia for himself and
for the Estates of Mason and Maddox Murguia, v. Heather Langdon, et al.* D.C. No.
4:19-cv-00942 DAD-RAM regarding "State-created danger." My opinions supported
argument in the Ninth Circuit opinion, Case No. 20-15651, D.C. No.2: 17-cv-02776 -
JCM-NJK (for publication), *Rudy Rivera, v. Corrections Corporation of America*,
regarding false imprisonment and callous disregard. My opinions supported argument in
the Ninth Circuit opinion, Case No. 19-56462, D.C. No.5: 18-cv-00762 - DMG-SP (for
publication - Declined Review by the Supreme Court), *Estate of Clemente Najera
Aguirre; J.S.;Y.S., v. County of Riverside; Dan Ponder* regarding the inflection of lethal
force.

The California Court of Appeal (Second Appellate District) drew in part from my expert
report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal.
App.4th 313, 50 Cal. Rptr.3d 364 (2006). The California Supreme Court drew in part
from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al.
v. County of San Diego et al.*, 57 Cal.4th 622 (2013). I was quoted by the California
Appellate Court (Second Appellate District, Division Three) and the California Supreme
Court in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946
Super. Ct. Nos. TC027341, TC027438, BC505918* regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of
Administration by United States Attorney General, the Honorable Edwin Meese III, for

my work to establish California Penal Code Section 311.11 (forbidding the Possession of
Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese
presented a second personal commendation for the success of this critical five-year effort
to bring this law into effect.  California Penal Code Section 311.11 is required training for
all Law Enforcement Officers in California and taught extensively in the POST Basic
Learning Domain #9: "Crimes Against Children,"pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my
opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of
Tamir Rice by City of Cleveland police officers.  In March, 2016 I was requested by the
Delaware Attorney General to review and provide my opinions regarding the shooting
death of Jeremy McDole.  The AG report was published May 12, 2016.  I provided a
written Opinion for New Mexico AG regarding the shooting Death of Teresa Anaya that
included requested training opinions.  I have also consulted with, and provided written
opinions at the request of the U.S. Attorney (New York), the Santa Clara County District
Attorney, and the San Francisco District Attorney.  On June 16, 2021, I was selected by
the Los Angeles County District Attorney as a member of FACCT - an independent team
assigned to re-examine fatal use of force incidents by law enforcement officers and
recommend further action when appropriate.  On November 7, 2021, I was an Honoree of
the 2021 National Lawyers Guild of Los Angeles at their annual Awards Gala as a
recognized defender of Constitutional Rights.  I was the retained Use of Force consultant
regarding the May 28, 2010 homicide of Mr. Anastacio Rojas (USDC Case No. 11-CV-
0522-L NLS) and which was taken under formal consideration by the Inter-American
Commission on Human Rights (an international human rights tribunal) on November
2022.

My most recent trial testimony regarding the Americans With Disabilities (ADA) rights
and requirements (as trained by POST) was *Marina Borawick, v. City of  Los Angeles, et
al.  Case No. 2:17-cv-02036 BRO-JC*, on March 30, 2023.

I have been found competent by both Federal and State Courts to render opinions as to
responsibilities as occurred in this case.  Additionally, a number of my cases have
involved law enforcement officers as civil plaintiffs and as criminal defendants.

A number of my cases have involved law enforcement officers as civil plaintiffs and as
criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER
International's products, including the Model M26, Model X26 and Model X2 ECDs.  I
own each, along with the download software.  I have reviewed all the TASER training

Page 32 of  33

materials and am familiar with the risks and tactics associated with these potentially lethal devices.  I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage.  Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007).   My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in *Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.*  There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert; Exhibit D is a series of four (4) BWC screen shots with times noted.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct.  Executed November 16, 2023 at Santee, CA.


_____
Roger A. Clark

Clark Report

"EXHIBIT A"

**ROGER A. CLARK**

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present................................................................. **29 years**

I have been certified by Federal and State courts as expert in jail and police
procedures in Federal and State Courts.  I select my cases carefully and have
consulted in approximately 2400 cases thus far since my retirement from the
Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003......................................................................... **9 years**

I substitute teach at all levels in the school district (elementary to high school).
As a volunteer, I wrote and managed a $85,000.00 federal grant for our
Central High School.  This grant is in its sixth year and has generated
$510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties
in the Seventh Judicial District.  As such, I worked closely with Probation
Officers, County Commissioners, Judges, other state agencies, private care
providers, etc. in the implementation of the new Idaho Juvenile Corrections
Act of 1995.  I wrote or participated in the writing of several federal grants for
the District.  I conducted training - both formal and informal - and developed a
series of new therapy programs for juveniles with private care providers.  I
also served as the Director of the Detention Center and the State Placement
Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993................................**27 years 4 months**

**Note:**  In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn
and 3,000 civilian personnel and a daily County Jail inmate population of
23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

**1.  Field Operations Region I
    NORSAT**                    11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and
arrest major (career) criminal offenders.  This unit was designed as a
multijurisdictional effort for the cities in the northern region of Los Angeles
County.  The command consisted of four (4) Sergeants, seventeen (17)
Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3)
civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate
averaged 500 career criminal arrests per year with a 97% conviction rate and
no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

**2.    Executive Offices
    Reserve Forces Bureau**      05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for
coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

-2-

volunteers, and 450 law enforcement explorer scouts. The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

• Total restructure of the Academy training process for reserve Deputies.
• Implementation of upgrade programs to move lower level reserves to level I status.
• Departmental Reserve Certification procedures.
• Annual leadership seminar.
• The Reserve News, a nationally recognized police magazine.
• Computerization of the Bureau.

**3. Field Operations Region I**
**Crescenta Valley Station** 04/01/80 to 05/01/84 **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

• **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
• **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
• **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
• **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

• Negotiation of an enhanced city contract (at a savings to the City).
• Formation of a volunteer community support group.
• Development and implementation of an integrated community emergency response plan.
• High School undercover narcotics operation.
• Restructure of the Station Detective Bureau.
• The annual station picnic, which was effective in boosting station morale.

**4.      Custody Division**
       **Central Jail**           04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

- Training and Logistics Lieutenant (04/01/79 to 04/01/8).
- Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

- "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
- The "Defend in Place" fire safety operational plan for jail facilities.
- New fire safety specifications for jail bedding and mattresses.
- The development of fire safe jail mattress material.
- The development of a facility emergency response plan.
- The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
- "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


**5.      Administrative Division**
       **Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau).  The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year.  I am very proud of this contribution to the Department.

During this time I remained staff (Personnel Sergeant) of the Emergency Operations Bureau.  This was simply a technical (paper) transfer.


**6.      Patrol Division**
       **Emergency Operations**   02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the

activities of the Department's planning   unit with emergency operations
planning and preparation.  I was assigned as the Personnel and Logistics
Sergeant.

Significant contributions while assigned at this command are:

• Formation of a new County Emergency Operations Center.
• Participation in the 1974 Federal earthquake studies of Los Angeles
  County.
• Development of the Department's specialized Field Command Post
  equipment.
• Development of the Department's Field Booking Team.
• Collateral assignment to the Patrol School

**7.      Patrol Division
          Civil Defense Bureau**        12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new
Emergency Operations Bureau.

**8.      Patrol Division
          San Dimas Station**         12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently
served as the Watch Commander.

**9.      Technical Serviced Division
          Communications Bureau**     12/01/71 to 12/12/72  **12 months**

I served as the Watch Commander in The Sheriff's Department's old radio room
located at the Hall of Justice, and assisted in the transition to the existing
communications facility.

**Service as a Deputy (6 Years, 0 Months):**

**10.     Patrol Division
          San Dimas Station
          Detective Bureau**          01/01/70 to 12/01/71  **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first
response to all crimes requiring investigations.  I processed all evening juvenile
matters, prepared criminal complaints and juvenile petitions.

11.   **Patrol Division**
      **San Dimas Station Patrol**   01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy,
Patrol, and Traffic.

12.   **Technical Services Division**
      **Transportation Bureau**      11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my
assignment to a Patrol Station.

13.   **Custody Division**
      **Central Jail**               05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the
Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer,
Prowler, Control Booth, High Power, etc.

14.   **Administrative Division**
      **Academy**                    01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15.   **Custody Division**
      **Central Jail**               12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the
street" Deputy Sheriff.

**DEGREES AND CERTIFICATION**

-6-

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

Clark Report

"EXHIBIT B"

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

November 16, 2023

Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:**   *Xavier Lopez v. City of Riverside and Sergeant Evan Wright, USCD Case No. 5:21-cv-02140-PSG (JEMx).*

Dear Counsel:

My Fee Schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $4,000.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

I do not expect my billing to exceed the $4,000.00 retainer fee.  There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

Roger A. Clark

Clark Report

"EXHIBIT C"

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

**UPDATED LIST OF SWORN TESTIMONY FOR RULE 26**

**Novemver 14, 2019 to November 15, 2023**
(Revised November 15, 2023)

**Deposition:**  November 14, 2019.  Ann Janette Cortez vs. City of Los Angeles, et al., Case No.: 2:18-cv-03248-CAS-JPR.

**Deposition:**  November 18, 2019.  Alexander Herd, et al. v. County of San Bernardino, et al. USDC Case No.: 5:18-cv-01244-AB-SP.

**Deposition:**  November 19, 2019.  Christopher D. Hall, Administratrix of the Estate of William Allen Young, vs. Russell Braun, et al.  Case No.: 3:17-CV-00481-DJH-RSE.

**Deposition:**  November 25, 2019.  Adrian Miranda, vs. City of Casa Grande, et al., Case No. S1100CV201801191.

**Deposition:**  November 26, 2019.  Matthew Kass v. Alameda, et al.; Case No.: 3:18-cv-01302-CRB.

**Deposition:**  December 6, 2019.  Jennifer Landeros, Individually and as Successor in Interest to Daniel Landeros, et al., v. City of Elk Grove, et al. Case No.: 2:17-cv-02598-KJM-CKD.

**Deposition:**  December 11, 2019.  Richard William Kollin v. City of Tehachapi, et al.  Case No, l:18-cv-00617-LJO-JLT.

**Deposition:**  December 13, 2019.  Richard Donastorg, vs. City of Ontario, et al.  Case No.: 5:18-cv-00992-JGB-SP.

**Deposition:**  January 6, 2020. James M. Lacy, et al. v. County of San Diego, et al.  Superior Court (San Diego County), Case No. 37-2018-00017428, CU-PO-CTL

**Deposition:**  January 13, 2020.  J.M. et al., vs. County of Stanislaus, et al., Case No.: 1:18-cv-01034-LJO-SAB.

**Deposition:**  Marco Contreras v. City of Compton, et al.  Case No.  2:17-cv-08834 FFM.

**Trial:**  January 15, 2020.  Joseph Lee Green, et al, v. City of Stockton, et al.  Superior Court, San

Joaquin County, Case No. 39-2011-00271041 CU-PO-STK

**Deposition:**  January 16, 2020.  Puente, an Arizona Nonprofit Corporation, et al, v. City of Phoenix, et al., Case No. 2:18-cv-02778-JJT.

**Deposition:**  January 22, 2020.  Robert Strong v. City of Vallejo, Jarrett Tonn, Andrew Bidou, et al., Case No.: 2:18-CV-01246-WBS-AC.

**Trial**: January 24, 2020 and January 28, 2020.  L.D. (DeLeon), et al. v. City of Los Angeles, et al. USDC Case No.: 2-16-cv-04626 PSG.

**Trial:**  February 4, 2020 & February 5, 2020.  Rebecca Brown, et al v. City of San Diego, et al. Case No. 15-CV-1583-DMS-WVG

**Deposition:**  February 14, 2020.  Zared Rodriguez Suarez, v. City of Salinas, et al., Case No.: 3:18-cv-056515-VC.

**Trial:**  February 20, 2020.  James M. Lacy, et al. v. County of San Diego, et al.  Superior Court, San Diego County, Case No. 37-2018-00017428 CU-PO-CTL

**Trial:**  December 26, 2019 & February 25, 2020.  1972.  People v. Rafael Garcia and Raquel Garcia,.  Superior Court (Riverside County) Case No. RIF 1702728.

**Trial:**  February 26, 2020.  Phillip Murry v. North Las Vegas Police Department, et al. Case No.: 2:17-cv-00157-APG-CWH.

**Trial:**  February 11, 2020, February 12, 2020, February 21, 2020 and February 28, 2020.  Yolanda Banks-Reed, et al, v. Bay Area Rapid Transit, et al., Case No.: 4:18-cv-05755-YGR.

**Deposition:**  March 2, 2020:  Monique Morgan v. City of Los Angeles and Leovardo Guillen USDC Case No.: 2:17-cv-06693.

**Deposition**.  March 26, 2020.  Gilberto Fajardo, v, City of San Bernardino, et al.  Case No. 1:16-at-00364.

**Deposition:**  March 31, 2020.  Shane Horton, by his guardian ad litem, Yvonne Horton, v. City of Santa Maria, et al.  Case No. 2:14-cv-06135 SJO-PJW.

**Deposition:**  April 9, 2020,  Bob Anderson, Administrator of the Estate of Charles Christopher McClure, et al., vs. City of Fulton, Kentucky, et al., Case No.: 5:18-cv-00032-TBR.

**Deposition:**  April 16, 2020.  Mora et. al. v. City Of Garden Grove et al. Case No: 8:19-cv-00418-JLS-JDE.

**Deposition:**  April 20, 2020.  Travis Mihalovic, v. City of Turlock, et al.  Case No. 1:17-cv-01742 LJO-SAB.

**Deposition:**  April 22, 2020.  Charmane Henderson, individually and as successor-in-interest to Decedent Deautry Charles Ross, vs. City of Torrance, a municipal corporation, et al., Case No.: 2:18-cv-03918-MWF-E.

**Deposition:**  April 28, 2020.  Estate of Clifford Tucker, by Donald Scott Tucker, Personal Representative, vs. Marquette County, Keith Romback And Mark Ulvila, Case No. 2:19-cv-00078.

**Deposition:**  May 4, 2020.  Adorthus Cherry v. Modesto Police Sgt. James "Derrick" Tyler and Lt. Terry Seese, No. 1:18-cv-01268-LJO-EPG (EDCA).

**Deposition:**  May 5, 2020.  Charmane Henderson, individually and as successor-in-interest to Decedent Deautry Charles Ross, vs. City of Torrance, a municipal corporation, et al., Case No.: 2:18-cv-03918-MWF-E.

**Deposition:**  May 12, 2020.  Quanice Hayes, vs. City of Portland, and Officer Andrew Hearst, Case No. Case No. 3;18-cv-00988-AC.

**Deposition:**  May 14, 2020.  Jason B. Perkins, Plaintiff, v. City of Modesto, et al., Case No.: 1:19-cv-00126-LJO-EPG.

**Deposition:**  June 2, 2020.  Antony Jackson, et al.  v. City of Los Angeles, et al.  Case No. 2:19-CV-02254-GW-RAO.

**Deposition:**  June 4, 2020.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936.

**Deposition:**  June 9, 2020.  AGG a minor, et al. v. City of Hayward, et al.  Case No.: 4:19-cv-00697 DMR.

**Deposition:**  June 12, 2020.  Remi Hamilton, et al. v. City of Covina, et al.  Case No.: 2:18-CV-09822 JAK (MAAK).

**Deposition:**  June 15, 2020.  Wilbert Winchester, v. Oakland Housing Authority, et al. Case No. 3:19-cv-02653-JCS.

**Deposition:**  June 24, 2020:  Samuel Kolb, et al, v. Placer. County, et al.  Case No. 2:19-cv-00079 DB.

**Deposition:**  June 30, 2020.  Thomas Irwin plaintiff, v. Officer J. Santiago, in his individual capacity, Officer R. Roberts, in his individual capacity, Officer B. J. Ivy, in his individual capacity, and City of Garland, Case No.: 3:19-cv-2926-B.

**Deposition:**  July 6, 2020.  Michael Scott Taylor, et al., v. Calaveras County, et al.  Case No. 1:18-at-00403,  BAM.

**Deposition:**  July 9, 2020.  Anyka Harris, et al. v. City of Tulare, et al.  Case No.  1:18-cv-01135, LJO-SKO .

**Deposition:**  July 13, 2020.  Tammy Shidler and Gary Shidler v. County of San Bernardino USDC Case No. 5:19-cv-00503-CAS-SHKx.

**Deposition:**  July 17, 2020.  The Estate of VU ANH NGO, et al. v. County of Riverside, et al. Superior Court Case, RIC 1902381.

**Deposition:**  July 20, 2020.  Sheldon Lockett et al. v. County of Los Angeles, et al.  Case No. 2:18-cv-05838 PJW.

**Trial:**  August 12, 2020.  James Adams, v. State of California, et al.  Case No. 3:16-cv-02161 W-NLS.

**Deposition:**  August 18, 2020.  Carlos M. Gomez, Sr. vs. City of Vacaville, a public entity, Vacaville Police Officer, William Boehm, et al., Case No.: 2:18-cv-02968.

**Deposition:**  September 24, 2020.  Black & Brown Liberation, et al (ACLU of Indiana), v.  City of Fort Wayne, et al.  Case No. 1:20-cv-00240 (Indiana) DRL-SLC

**Trial:**  October 7 & 8, 2020;  1318.  Christian Longoria, et al., v. Pinal County (Arizona), et al. Case No. 2:15 CV 00043 PHX SRB

**Deposition:**  October 24, 2020.  Susan Peck (Paul Mono deceased), et al. v. County of Orange, et al., Case No. 2:19-cv-04654.

**Deposition:**  October 27, 2020. Jennifer Buenrostro-Briano, et al v. Farmersville Police Department, et al.  Case No. 1:19-cv-01382 LJO-SAB.

**Trial:**  October 30, 2020.  Leslie A. Merritt, Jr. vs. State of Arizona, et al.,  United States District Court, District of Arizona, Case No.: CV17-4540-PHX-DGC.

**Deposition:**  November 9, 2020.  Florentina Pelayo, (Petrica Muntean), v. City of Anaheim, et al. Case No.:8:19-cv-02318, DOC (ADSx).

**Deposition:**  December 4, 2020.  Melanie Dunne, et al, v. City of Las Cruces (New Mexico), et al. Case No. D-307-CV-2018-02315.

**Deposition:**  December 14, 2020.  Cristobal Solano; M.H., et al. v. County of Orange, et al.; USCD Case No. 8:19-cv-00549-JVS-ADS.

**Deposition:**  December 22, 2020.  John F. Dunham v. County of Monterey, et al.  Case No.: 3:18-cv-04467-EDL.

**Deposition:**  December 28, 2020.  Cameron Vincent, v. City and County of San Francisco, et al. Case No: 19-cv-0329..

**Deposition:**  January 6, 2021.  Rashid Adan vs. City of San Diego and Officer Jason Langley, Case No.: 3:19-cv-1523-LAB-AHG.

**Deposition:**  January 11, 2021.  Sabrina Paloni, et al. v.City of Albuquerque, et al.  Judicial District Case No. D-202-CV-201800015.

**Deposition:**  January 14, 2021.  William Bernal, and Celia Bernal, Plaintiffs, vs. Sacramento County Sheriff Department, et al., Case No.: 2:19-cv-00482-MCE-AC.

**Deposition:**  January 22, 2021.  Tracy Jenkins, as Personal Representative of the Estate of Theoddeus R. Gray, et. al. v Tom Price, Jessie Smith, James Ziemiecki, Trevor Head, Travis Kaufman and City of St. Clair Shores, Michigan (19-cv-10383)

**Deposition:**  January 27, 2021.  Jose Magana, (Omar Magana), v. City of Los Angeles, et al. Case No. 2:19-cv-03631 CAS-AGR.

**Deposition:** February 1, 2021.   Estate of Logan Johnsrud, et al. v. Deputy Nathan Dean and Wood County, Wisconsin., Case No. 20-CV-108.

**Deposition:**  February 3, 2021.  Harry Donald Lemly, Jr., v. California Department of Parks and Recreation, et al.  Case No. 8:19-CV-01603 DOC DFM.

**Deposition:**  February 9, 2021.  Christopher Ramos. v. County of Alameda et al.  Case No. 4:19-cv-05715 DMR

**Deposition:**  February 10, 2021.  Casmir Anumudu vs. David Salvador, Andrew Essig, et al., Case No.: 2:19-cv-04045-ODW.

**Deposition:**  February 18, 2021.  Abraam Sweiha. v. Alameda County, et al; Case No.: 3:19-cv-03098-LB.

**Deposition:** February 19, 2021.  Albert Anthony Arteaga, v. City of Oakley, et al..  Case No. 3:19-cv-05725

**Deposition.** February 22, 2021.  Jeannie Atienza, v Andrew Hall Case No.: 3:19-cv-03440.

**Preliminary Hearing**.  February 23, 2021 and February 24, 2021.  People v. Terrance Stangle Case No 20013301.

**Deposition:** February 26, 2021.  D.T., a minor by and through his guardian Tanika Tyler  vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Deposition:** March 3, 2021  James Stewart, et al. v. County of Yuba, et al., Case No.: 2:19-cv-01744-TLN-DB.

**Deposition:** March 4, 2021.  Judy O'Neil, v. City and County of San Francesco, et al.; Case No.: 3:17-cv-07190-JCS.

**Deposition:** March 11, 2021.  Vincent Henderson vs. Harris County Sheriff's Department, Rick Hickman, Michael Richard, Dan Richards, A/K/A Dan Richardson, and Deputy Brisco, Case No.: 4:18-CV-413

**Deposition:** March 18, 2021 Cynthia Ames, individually and as a successor in interest of Henry Simmons, deceased, v. County of San Bernardino, et al., Case No.: 5:18-cv-01362-SJO-FFM.

**Deposition:** March 19, 2021  Zakhary Gabriel Mallett, v. County of Los Angeles, et al  Case No.: 2:19-cv-8506.

**Deposition:** March 24, 2021.  Lourdes Toman, et al. v. City of Fullerton, et al  Case No.: 8:20-cv-00046 DOC-KES.

**Deposition:** April 1, 2021.  Matthew Burghardt, as guardian of Matthew B. Burghardt, and Christian Beard v. Officer Ezekiel Ryan, and Officer Kristopher London.  Consolidated Case Nos.:5:18CV00325, and 5:18CV02788.

**Deposition:** April 9, 2021 (continued from December 4, 2020)  Melanie Dunne, et al, v. City of Las Cruces (New Mexico), et al. Case No. D-307-CV-2018-02315.

**Deposition:** April 13, 2021.  Villegas v. City of Los Angeles – C.D. Cal. Case No. 20-cv-07469-SB-JC.

**Deposition:** April 14, 2021.  Songhai Smith, v. City and County of Los Angeles, et al. Case No. 2:20-cv-03118-RGK.

**Deposition:**  April 15, 2021.  James B. Shelton v. John Brandon et. al.,  Case No. 4:19-cv-00023 (Tennessee).

**Deposition:**  April 23, 2021.  M.A., et al. v. County of San Bernardino, et al.  Case No. 8:20-cv-00567-and Z.M.A. v. County of San Bernardino, et al. Case No. 5:20-cv-00589-JFW-SHK

**Deposition:**  May 3, 2021.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition:**  May 10, 2021.  David Andrews, Plaintiff, vs. County of Orange; Robert Seamans; Stephen Harder, et al., Case No.: 8:20-cv-00925-JLS-ADS.

**Trial:**  May 12, 2021.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936 .

**Deposition:**  May 18, 2021.  Sophia Larios, v. City of Long Beach, et al.  Case No.: 2:18‑cv‑10486 PSG (PJWx)

**Deposition:**  May 19, 2021.  Shellie Cooke, v. City ot Los Angeles, et al.  Case No. 18STCV00882.

**Deposition:**  May 21, 2021.  Bellagio Brown, Vs. City of Ontario; Gabriel Gutierrez, et al., Case No.: 5:20-cv-00476-DMG-SHK.

**Deposition:**  May 24, 2021.  Kenneth Chamberlain, Jr. v. City of White Plains (New York), et al. Case No. 12-CV-5142 (CS).

**Deposition:**  June 2, 2021.  J.A.J., et al., vs. Efrain Jimenez, et al., Case No.: 1:18-cv-01138 DAD-SKO.

**Trial:**  June 11, 2021.   Richard Donastorg, vs. City of Ontario, et al.  Case No.: 5:18-cv-00992-JGB-SP.

**Trial:**  June 11, 2021.  Harry Donald Lemly, Jr., v. California Department of Parks and Recreation, et al.  Case No. 8:19-CV-01603 DOC DFM.

**Deposition:**  June 14, 2021.  Paul R. Conforti, and Humana Caresource, vs. City of Franklin, Officer Christopher Rydelski, Officer Gary Wallace, et al., Case No.: 2020CV000758.

**Deposition:**  June 15, 2021, Rosa "Patti" Andrade, et al., vs. City of Tucson, et al.  Case No. C20194291.

**Deposition:**  June 16, 2021.  Barry John Montgomery, Jr. v. County of Los Angeles, et al.  Case No. BC692204.

**Trial:**  June 23, 2021.  People v. Richard Lechuga, Superior Court(San Diego County), Case No. CE395395, DA No. NIBT461.

**Trial:**  July 6 & 7, 2021.  Jose Gomez, v. City of Houston, et al.  Case No. 18-cv-1224.

**Deposition:**  July 13, 2021.  Nicholas Robinson v. City of San Jose, et al.  Case No.: 5:19-CV-06768NC.

**Deposition:**  July 15, 2021.  Michael Moore vs. City of Los Angeles, et al.  Case No.: -cv-03053-AB-AGR..

**Trial:**  July 19, 2021 and July 20, 2021.  Villegas v. City of Los Angeles – C.D. Cal. Case No. 20-cv-07469-SB-JC.

**Trial:**  July 22, 2021.  The Estate of Vu Anh Ngo, et al. v. County of Riverside, et al.  Superior Court Case, RIC 1902381.

**Deposition:**  July 30, 2021.  Donnie Woodral v. County of Stanislaus, et al.  Case No.: 1:20-cv-00372

**Deposition:**  August 2, 2021.  Darryl Speer v. County of San Bernardino USDC Case No. 5:20-cv-00044-JGB-SPx.

**Deposition:**  August 5, 2021.  Juan Jose Bermudez, v.  County of San Bernardino, et al.  Case No. 5:20-CV-438 JGB (SHKx).

**Depostion:**  August 9, 2021.  Marco Ortiz, v. San Joaquin County, et al.  Case No.. 2:20-cv-00217-JAM-CKD.

**Trial:**  August 12, 2021  Darryl Speer v. County of San Bernardino USDC Case No. 5:20-cv-00044-JGB-SPx.

**Deposition:**  August 16, 2021.  Cynthia Heffner Roberts, et al v. Manuel Cruz, Individually.  Case No. 3:19-CV-186 RGJ-RSE (Kentucky).

**Deposition:**  August 17, 2021.  Gerardo Wence, v. Rayann Cruz.  Contra Costa County Superior Court  Case No.: CIVMSC18-02060.

**Deposition:**  August 20, 2021.  B.P., et al. v. County of San Bernardino, et al.  Case No.: 5:19-cv-01243.  JGB-SP.

**Deposition:** August 24, 2021.  Rosa Ester Brizuela, et al,  v. City of Sparks; et al.  Case No.3:19-CV-00692-MMD-WGC.

**Deposition:** August 25, 2021.  Robin Leeann Moore-Brown, et al, v. ·City of North Las Vegas, et al.  Case No. 2:20-CV-01649-GMN-DJA.

**Trial:** August 26, 2021.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition:** September 8, 2021.  Lisa Novak and Patrick Novak, et al, v. City of Madera, et al.. Case No.: 1:20-cv-00301-DAD-SKO.

**Deposition:** September 10, 2021 & October 19, 2021.  Joseph Lopeteguy, v. Kern High School District, et al.  Superior Court Case No. BCV-17-100576, and Gilbert Valdez, Jr., and Jarald Wyatt v. Kern High School District, et al.  Superior Curt Case No. BCV-17-102617.

**Deposition:** September 13, 2021.  Delon Thurston, vs. City of Vallejo, et al. , Case No.: 2:19-cv-01902-KJM-CK.

**Deposition**: September 16, 2021.  Estate of Angela M. Zuniga et al, v. San Bernardino County, et al.  Superior Court Case No CIVDS1620852

**Deposition:** September 20, 2021.  Xavier Hermosillo, an individual; Olga Hermosillo, an individual and as successor in interest for Decedent, Luis Hermosillo, vs. County of Orange, et al.  Case No. 8:20-cv-01387-JVS-(ADSx).

**Deposition:** September 24, 2021.  Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court (Shasta County) Case No.  193947.

**Deposition:** October 8, 2021.  Patrick Pursley, v. City of Rockford, Illinois, et al. Case No. 3:18-cv-50040.

**Deposition:** October 18, 2021.  Estate of Toby Diller, et al. v. City of San Diego, et al.  Case No.: 20CV1003

**Deposition:** October 21, 2021.   Cherish Thomas, v. City of Rio Vista, et al.  Case No.: 2:20-cv-00899 KJM-DB.
Client Attorney:

**Deposition:** November 3, 2021.  Brejanea Burley, et al., v. County of Los Angeles, et al., State of California Superior Court (Los Angeles County),  Case No. TC027341.,

**Deposition:** November 17, 2021.  Elijah McKnight vs. Sheriff Tyler Brown, et al.  Case No.: 1:20-cv-03678-PAB-SKC.

**Deposition:**  November 18, 2021.  People v. Douglas Alan Bohren, Superior Court, San Diego County (California), Case No.: CT No. M264544.

**Deposition:**  November 19, 2021.  Dione Mendoza, et al. v. County of San Bernardino, et al. Case No. 5:19-cv-01056 JGB-SHK.

**Deposition:**  November 22, 2021.  R.H., A minor (Eric Jay Hames Deceased), v. City of Redding, et al., Case No.: 2:20-cv-01435-WBS-DMC.

**Deposition:**  November 29, 2021.  R.A., and M.A., (Randolph Aguirre Deceased), et al. v. City of La Habra, et al. Case No. 8:20-cv-01829 CJC (ADSx)

**Deposition:**  November 30, 2021.  Brent Gustine, v. County of San Diego, et al., Case No.: 3:19-cv-00903-LAB-NLS.

**Deposition:**  December 2, 2021.  Adeline Lorraine Herrera, et al, v. City of Montebello, et al. Case No.: 2:20-cv-00590-MWF-SK

**Deposition:**  December 8, 2021.  Jorge Enrique Serrano Robles Senior, and Yuridia Dolores Miranda, et al. vs. County of Los Angeles, et al, Case No.: 2:20-CV-6648-ODW-PLA.

**Deposition.**  December 9, 2021.  Jeffrey Drevdahl v. City of Fairfield, et al. Case No.: 2:20-cv-00859-WBS-DB.

**Deposition:**  December 13, 2021.  Darla Drinan, vs. United States of America, Joshua Bisch, Douglas Christner, et al., Case No.: CV 20-1634-GW-SHKx

**Deposition:**  December 14, 2021.  Alexandrew Orellana v. County of Riverside, et al.  USCD Case No. 5:19-CV-01263-JGB-SHK

**Deposition:**  December 14, 2021.  Luke Carlson, et al v. City of Redondo Beach, et al.  Case No. 2:20-cv-00259-ODW (AFMx).

**Deposition:** December 29, 2021.  Kevin Howard v. City of West Covina, Officer Matthew Munoz, Officer Joshua Brenes, Officer Doug Weischedel and Officer C. Gonzalez, Case No.: 2:19-cv-08281-CMB-MRW.

**Deposition**:  January 6, 2022.  Donelle Wear (Blanchard), v.United States of America , et al. Case No.: 8:20-cv-02438-JVS-DFM, consolidated with Case No.: 8:20-cv-00459-JVS-DFM.

**Deposition:**  January 17, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of Huntington Beach, et al.  Orange County Superior Court Case No. 30-2020-01137606 CU-CR-CJC

**Deposition:**  January 21, 2022.  CJ Montano vs. City of Los Angeles Chief Michael Moore, et al., Case No.: 2:20-cv-07241.

**Deposition:**  January 28, 2022.  Kelly Lynch vs. City of Los Angeles, Sergeant Lankford, Officer Wall, Officer Brandt, et al., Case No.: 2:20-cv-07931.

**Trial:**  February 15, 2022Susan Huntzinger, et al, v, Toby Coyle, et al.USDC (Kentucky) Case No. 5:17-cv-00184 KKC

**Trial:**  February 17, 2022.  People v. Terrance Stangle, Superior Court (San Francisco County), Case No 20013301, IIB #A 2019.10.07, ISD #2019-0045.

**Trial:**  February 22, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of Huntington Beach, et al.  Superior Court (Orange County) Case No. Case No. 30-2020-01137606, CU-CR-CJC.

**Deposition:**  February 25, 2022.  Tracy Garrett, v. Lieutenant Eric Nipper, et al.  USDC (Kentucky) Case No:  5:20-CV-64 KKC-MAS.

**Trial:**  March 1, 2022.  Lydia Vasquez-Brenes and Ricardo Brenes, v Las Vegas Metropolitan Police Department.  USDC Case No.: 2:12cv1635-JCM-VCF.

**Deposition:**  March 15, 2022.  Brian Joshua Cook, vs. County of Los Angeles, et al., Case No.: 2:19-cv-02417-JVS-KS:

**Deposition:**  March 16, 2022.  Elena Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:**  March 21, 2022.  Lisa Marie Close vs. City of Vacaville and Stuart K. Tan, Case No.: 2:17-cv-01313-WBS-DB.

**Trial:**  March 30, 2022.  Curtis Jacob Davis, v. Wakulla County, et al.  Superior Court  (Wakulla County, Florida) Case N. 15-ca-FLA BAR NO.: 0739685.

**Deposition:** April 4, 2022.  Rosalinda Ibarra v. Lee, et al.; (Oklahoma) Case No. 20-cv-00598-TCK-SH

**Deposition:**  April 4, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316

**Trial:**  April 6, 2022.  Rosa "Patti" Andrade, et al., vs. City of Tucson, et al.  Case No. C20194291.

**Deposition:**  April 7, 2022  Jeanne Llera (Gomez), et al. v. Las Vegas Metropolitan Police Department, et al. Nevada Case No. 2:20-cv-01589 RFB-BNW.

**Deposition**:  April 8, 2022  V.V., et al.  v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:**  April 11, 2022.  Edgar Sanchez vs. City of San Jose, Christopher Weber, Melissa Villasenor, et al., Case No.: 20-CV-05919-JD.-cv-10758

**Deposition:**  April 11, 2022.  Clark, et. al. v. City of Sacramento, et al.  Case No: 2:19-cv-00171-JAM (JDP).

**Deposition:**  April 12, 2022.  Annie Lee Oliver, Jeremy Wright, and Jeremy Wright as Personal Representative of the Estate of Michael Benford v. Pemiscot County; Tommy Greenwell, Individually and in His Official Capacity; et al. Case No. 19-CV-00137 (SNLJ).

**Deposition:**  April 13, 2022.  March 1, 2022.  Lourdes Vaughan (Richard Posadas Deceased) et al.  v. City of Arvin, et al.  Case No.: 1:20-CV-00473-NONE-JLT

**Trial:**  April 15, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316.

**Deposition:**  April 19, 2022.  Estate of Eric Esteban Briceno, Deceased, et al, v. County of Los Angeles, et al. Case No.: 2:21-cv-01388-SB-E

**Deposition:**  April 20, 2022.  Breya A Barello, vs. County of Los Angeles, Alex Saldana, Edward Gonsalves, et al., Case No.: 2:21-cv-01909-FMO-AGR.

**Deposition:**  April 22, 2022.  Nathan Schneider v. County of Sacramento, et al.  Case No.: 2:20-cv-00383 TLN-EFB.

**Deposition:**  April 28, 2022.  2318.  Anthony Echevarria, v. City of Santa Monica, et al.  Case No.: 2:21-CV-05603 SVW-AGR.

**Deposition:**  April 29, 2022.  Jose Luis Rodriguez, Jr. v. City of Salinas, Et Al. (Kile, Pritt, Neff).  Case #: Monterey County Superior Court 20CV001293.

**Deposition:**  May 2, 2022. Deandre Bolden, v. Contra Costa County, et al.  Case No.: 3:20-CV-04254 SK.

**Deposition:**  May 9, 2022.  William Wynne, Administrator of the Estate of Andrew Lenetis, vs. Town of East Hartford, Officer Kevin Beeman, and Officer Kwanza Clayton, Case No.: 3:20-cv-

01834.

**Deposition:**  May 17, 2022.  Cindy Wagner vs. Shasta County, Shasta County Sheriff's Department, et al., Case No.: 2:20-CV-000403-JAM-DMC.

**Deposition:**  May 24, 2022  Maria Elena Vazquez, et al. v. City of San Jose, et al.  Case No.: 5:19-cv-08441-EJD.

**Trial:**  May 25, 2022.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936.

**Trial:**  June 1 & 2, 2022.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Deposition:**  June 3, 2022.  Rosalina Calonge vs. City of San Jose, a Municipal Public Entity; Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition:**  June 9, 2022.  R.E., et al.  v. State of California, et al.; Case No. 2:21-cv-06072-SB-KS.

**Deposition:**  June 14, 2022.  Charles Hayes v. Las Vegas Metropolitan Police Department, Case No.:. 2:20-cv-02048-KJD-BNW.

**Trial:**  June 16 &17, 2022.  Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:**  June 20, 2022.  Greg Banks, and Alexis Avalos, vs. Michael Mortimer; Ryan White; City of Antioch; Dawnmarie Delucchi, et al, Case No.: 4:18-cv-07931-HSG.

**Trial:** July 14, 2022. V.V., et al. v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:** July 19, 2022: Israel Hernandez and Jully Romero, vs. City of Los Angeles, OfficerJames Welch, Detective Jose Chavez, el al., Case No.: 2:19-cv-00441.

**Trial:** July 28, & 29, 2022: Jennifer Landeros, Individually and as Successor in Interest to Daniel Landeros, et al., v. City of Elk Grove, et al. Case No.: 2:17-cv-02598-KJM-CKD.

**Trial:** August 4, 2022. State of Texas v. Russell Butler, Burnet County, (Texas) District Court Case No.: DA-19-0029

**Deposition:** August 8, 2022. Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK.

**Deposition:** August 17, 2022. John Hermann v. County of San Bernardino, et al. Case No.:
5:20-cv-01682-JAK-SP.

**Deposition:** August 18, 2022. I.C.E. Agent Demetrik Herd, v. County of San Bernardino, et al.
Case No. 5:20-CV-02335-JWH-KKX.

**Deposition:** August 19, 2022. Deposition #2335. Benjamin Montemayor, v. City of Los Angeles,
et al. Case No.: 2:21-cv-03124 CBM (ASx) (Related to Case No. 2:20-cv-05027-CBM (Asx).

**Deposition:** August 22, 2022. Cole Wilkins v. Wesley VanDiver and Joseph Morrison.; Case
No. 8:20-cv-02417-JSL (DFMx)

**Deposition:** August 23, 2022. Mario Carrasco, v. Glendora Police Department, et al. Case No.:
2:21-cv-05965-MWF-AS.

**Deposition:** August 25, 2022. Vega-Colon v. City of Wethersfield, et al. Case No: 3:21-cv-
00175 (KAD).

**Disciplinary** Hearing: September 7, 2022.  Hillsborough County (Florida) Sheriff's Department
v. Deputy Kirby Lavallee Case No.: 1208-036

**Deposition:** September 15, 2022. Kinberly Perez, et al. v. County of Sacramento, et al. Case No.:
2:21-cv-00356-TLN-JDP

**Deposition:** September 20, 2022. S.C.D.P.,(Brian Statler, Jr. Deceased), et all. v. City of
Inglewood, et al. Case No.: 2:19-cv-10712-DMG-MRW.

**Deposition:** September 21, 2022. Vangv. City of Sacramento, et al.;Case
No.:2:19-cv-00374-JAM-JDP

**Deposition:** September 22, 2022. Kelly Lorenz and Alykhan Popat v. Superior Court of San
Bernardino, et al. Case No. 5:22-cv-00143-PA-JPR

**Deposition**: September 23, 2022. Gary Salzman, et al., vs. County of Los Angeles, et al., Case
No.: 21-CV-4604-PA-SK.

**Trial:** October 12, 2022. Kimberly Marroquin, vs. Unidentified LAPD Officer (Dimaggio Rico);
Captain Richard Paul Stabile; City of Los Angeles, et al., Case No.: 2:21-cv-07607-RGK-JEM.

**Trial:** October 14, 2022, and October 19, 2022. Vangv. City of Sacramento, et al.;Case
No.:2:19-cv-00374-JAM-JDP

**Trial:** October 18, 2022. Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court (Shasta County) Case No. 193947.

**Deposition:** October 20, 2022. Michael George Tater and Kyla Skye Staniskis (Shannon Michelle Tater deceased), v. City of Huntington Beach, et al. , et al. Case No.: 8:20-cv-01772 Case No. 8:20-cv-01772-MEMF-JDEx.

**Deposition:** October 26, 2022. Cyrus Greene, vs. Bay Area Rapid Transit, a Municipal Corporation; P. Chehal (#684), Individually; T. Matthews (#716) Individually, et al., Case No.: 4:21-cv-00113-DMR.

**Deposition:** October 28, 2022. Nicholas Ramirez, v. City of San Jose, et al., Case No.:5:21-CV-08127-VKD

**Deposition:**  November 3, 2022.  Akaysia Pearson, et al. v. Otto Aragon, et al., Case No. 3:20-05726-CRB

**Deposition:** November 9, 2022. John Bien, Vs. City of Fresno, Brad Oliver, et al., Case No.:1:20-CV-01159-AWI-BAM.

**Deposition:**  November 11, 2022.  Hector Hernandez, et al. v. City of Fullerton, et al. Case No.: 8:20-cv-01747-CJC-JDE

**Trial:** November30, 2022 and December 1, 2022.  People v. Ricky Butler, 2022.  San Bernardino County (California) Superior Court DA Case No. 2017-00-0042929.

**Deposition:**  December 19, 2022.  Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:**  December 22, 2022.  Joseph L. Garces vs. City of Santa Paula, a municipal entity, Officer Chris Rivera; Case No.: 2:21-cv-06730.

**Deposition:**  December 23, 2022.  City of Santa Ana, et al. v. Orange County Association for Mental Health DBA Mental Health Association of Orange County, et al., Case No. 30-2020-01124174-CU-MC-CJC.

**Deposition:**  December 28, 2022.  Scottlynn Moorman, (Minor), v. City of San Bernardino, et al. Case No. CIVDS1818724

**Deposition:**  December 30, 2022.  Bryanna Berry v City of San Jose Officer Lindsay Parodi (4426), CASE NO.: 5:21-cv-8436

**Deposition:** January 4, 2023.  Cecilia Vargas, et al. v. County of San Bernardino, et al. Case No.: 5:20-cv-02646-JGB-KK.

**Deposition:** January 10, 2023. Estate of Oral W. Nunis, et al v. City of Chula Vista, et al. Case No.: 3:21-cv-01627-AJB-DEB

**Deposition:** January 12, 2023.  Estate of Nicholas Burgos, et al. v. County of Los Angels, et al. Case No. : 2:21-cv-05566.

**Deposition:** January 19, 2023.  Myles Ramsey, v. City of Santa Ana, Peter Beaumarchais, Jeremy Reguerin, Ronald Sandoval, Christopher; Shynn, and Peter Thai.  Case N.: 8:21-cv-00825-JLS-KES.

**Deposition:** January 20, 2023.  Abbie Gray, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC6869939

**Deposition:** February 1 2023.  Ayana Maroney, vs. County of Riverside, Deputy Mark Rodriguez, Deputy David Ruiz; et al., Case No: 5:21-cv-00497-JGB (SPx).

**Deposition:** February 6, 2023.  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203

**Deposition:** February 9, 2023,  David Cordero, v. City and County of San Francisco, et al.  Case No.: 3;19-cv-01834.

**Deposition:** February 13, 2023.  Ignacio Escalante, v. County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No.: 19STCV29783.

**Deposition**: February 15, 2023.  Edwin Williams, v. County of San Bernardino, et al.  Superior Court (San Bernardino County), Case No. CIVDS1600447

**Deposition:** February 16, 2023.  Julie Fernandez, v. City of Los Angeles; et al., Case No.: 2:20-cv-07306.

**Deposition:** February 17, 2023.  David Baxter, v. City of Hemet, et al..  Case No.: 5:21-cv-01331-JWH(SPx)

**Deposition:** February 22, 2023.  Kyle Peterson v. County of Los Angeles, et al.  Case no: 2:21-cv-05510-JAK-ADS.

**Deposition:** February 23, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition:** February 24, 2023.  Maria Teresa Gonzalez, (Eloy Maris Gonzalez Jr., Deceased) v.

County of Stanislaus, et al.     Case No: 1:21-cv-01091 DAD-HBK

**Deposition:**  March 9, 2023.  Eric Reason, et al v. Sergeant Virgal Thomas, and City of Richmond, et al.  Case No.: 2:20-cv-1900 WBS-JDP

**Deposition:**  March 14, 2023.  Charles Hayes v. Kern County et al.  Case No.: 1:19-cv-01722 BAK

**Trial:**  March 22, 2023 and March 23, 2023,  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203.

**Trial:**  March 30, 2023.  Marina Borawick, v. City of  Los Angeles, et al.  Case No. 2:17-cv-02036 BRO-JC

**Trial:**  April 19, 2023.  D.T., a Minor by and Through His Guardian Tanika Tyler  vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Trial:**  April 21, 2023 & April 24, 2023.  The Estate of Clemente Najera-Aguirre, et al, vs. County of Riverside, et al.  Case No.: 5:18-cv-00762-DMG-SP.

**Trial**:  April 24, 2023.  Christian Pineda, vs. City of Los Angeles; Chief Michel Moore; Colton Haney, and Stephen McClean, Case No.: 2:21-cv-06470-CBM-ASx.

**Deposition:**  May 3, 2023.  The Estate of Jose Alfredo Castro Gutierrez, et al.  v. The City of San Diego, et al.  Case No:. 21-cv-01292  H-BGS

**Deposition:**  May 9, 2023.  Jeremy James Cotten, et al, v. City of Los Angeles et al. Superior Court Case No.: Case No.: 19STCV40052

**Deposition:**  May 11, 2023.  Nicole Hook, and Jonson Tyler Hook, v. City of Redding, et al. Case No.: 2:20-cv-02365- MCE-DMC.

**Deposition:**  May 15, 2023: Gabrielle Bynum, v. Cit of Los Angeles, et al., Case No.: 2:21-cv-4453 JPR

**Trial:**  May 16, 2023 Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:**  May 17, 2023 Ashley Blackmon, v. City of Beverly Hills, et al.  Case No.: 2:21-CV-08381

**Deposition:**  June 8, 2023, Audery G., et al, v. City of Lafayette, et al.  Case No.:  3:21-cv-03545 WHO.

**Deposition:**  June 8, 2023 Jolie Savage v. City of Whittier, et al.  USDC CASE NO. CV21-08067 VAP (PD).

**Deposition:**  June 9, 2023.  Alma L. Figueroa De Magdaleno, et al., vs. County of Riverside, et al., Case No.: 5:21-cv-02027-JGB-SHK

**Deposition:**  June 14, 2023.  Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:**  June 19, 2023.  2464.  Ernest Simon, Jr., an Individual,v. City of Los Angeles, et al.Case No.: 2:22-cv-01775 SSS-GJS.

**Trial:**  June 22, 2023.  A.G.1., a Minor (Raymond, Gonzalez) et al. v. City of Fresno, et al.  Case No. 1:16-CV-01914 JO-SAB

**Deposition:**  June 26, 2023.  Matthew Wilson and L.M., individually and as a successor-interest to Decedent, Joshua Barnes, by and through her Guardian ad Litem Tilde Barnes vs. California Highway Patrol Officers Kevin Domby; Sean Deise and Jose Ortega, et al., Case No.: 21-CV-03824-M.C.

**Deposition:**  June 27, 2023.  Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:**  June 30, 2023.  Robert W. Hirsh v. California Commerce Club, Inc., et al. U.S.D.C. Case No. 2:22-cv-05701-MCS-AS.

**Deposition:**  July 6, 2023.  Calvin Rush Annd Jayme Rush, v. City of Fairfield, Officers Zachary Sandoval and Dustin Joseph.  Case No.: 2:20-CV-01966-WBS-KJN.

**Deposition:**  July 11, 2023.  Bashar Zeidan vs. City of Richmond; Case No. 3:21-cv-04010-TLT.

**Deposition:**  July 17, 2023.  Tracy Pachote, et al., vs. County of Contra Costa, et al. 3:21-cv-04097-SK.

**Deposition:**  July 19, 2023.  Gloria Black-Meadows, (Lashanda Anderson Deceased) et al, vs. Deptford Township, et al.  Case No.: 1:20-cv-06951.

**Deposition:**  July 21, 2023.  Angelina Atabekova-Michaelidis and Vardoui Michaelidou; (Melkon Michaelidis deceased), vs. City of Los Angeles, et al.  Case No.: 2:22-cv-05620  - MCS-MAAx.

**Deposition:**  July 22, 2023.  Pamela Reny Monk, v.  Matthew Diller, Amal Pal,·Brad Gorby, Shawn Murphy,·Matthew Mcnulty, Los Angeles·Police Department, et al.  Case No. BC660220

**Deposition:**  July 26, 2023.  Jeanette Ayala-Rios, vs. California Highway Patrol, Officers Jordan W. Richardson, Michael W. Richardson, Ubaldo Ferreira, Matthew Barawed, Brent R. Logar, et al., Case No.: 4:22-cv-02550HSG.

**Deposition:**  July 27, 2023.  Maria Elena Garcia, et al. vs. City of Farmersville, et al. Case No. 1:21-cv-00482-JLT-EPG

**Deposition:**  August 1, 2023.  Mary Ellen Lennox, (Jordan Zenka, deceases(, v. City of Sacramento, et al,  Case No.: 2:21-CV-02075-TLN-KJN

**Trial:**  August 3 & 4, 2023.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Trial:**  August 9 & 10, 2023.  Desabian Wilson, Edwin (Edwin Williams deceased). v. San Bernardino County, et al.  Superior Court Case No.: CIVDS1600447.

**Deposition:**  August 14, 2023.  Foucha Coner, v. City of Sacramento, et al.  Superior Court Case No.: 34-2020-00285118

**Deposition:**  August 18, 2023.  Braydon Lee Esqueda, vs. County of San Bernardino; Wynn Srisutasanavong and Cory Vigil, et al., Case No.: 5:20-cv-01743-MWF-SHK

**Deposition:**  August 22, 2023.  Deovante L. Guy, by and through the Guardian Ad Litem for Deovante L. Guy, Quintasia Walker vs. Matthew Lorenzen; Annie Brady, et al., Case No.

**Deposition:**  August 25, 2023.  Nathan Rocky Glover, v. City of Los Angeles, et al.  Case No.: CV21-09915 FWS (ASx).

**Deposition:**  August 29, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: -20STCV34657.

**Trial:**  August 30, 2023.  Winston Durrell Settrini, v. City of San Diego, et al.  Case No.: 20-cv-02273 CAB-BGS.

**Deposition:**  September 11, 2023.  Richard Payne, Janchai Payne, K.P. a minor, v, City of Los Angeles, et al.  Case No.: 2:17-cv-09044 (Ksx)

**Deposition:**  September 12, 2023.  Ellen Williams, also known as Ellen Girma, an individual, v. City of Pleasanton, et al.  Case No.: 3:20-cv-08720 WHO

**Deposition:** September 13, 2023.  Art Hernandez, Alfred Gonzalez, Benjamin Zaredini, David Casas, Louis Granados, Mario Contreras, Oscar Escobedo, Ariela Lemus, et al. v. County of Loa Angeles, Los Angeles County Sheriff's Department (LASD), et al. Case No.: 19STCV33158.

**Deposition:** September 18, 2023.  Emily Garcia and C.G. et al. vs. City of Tustin, Estella Silva, et al., Case No.: 8:22-cv-00131.

**Trial:** September 19, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: -20STCV34657.

**Deposition:** October 2, 2023.  Estate of David Angel Villalobos Valdovinos,  by its successor in interest Eve Samantha Arriaga, et al., vs. Ryan Gonsalves, the United States of America, et al., Case No.: 22-cv-0315-L-AHG.

**Deposition:** October 5, 2023.  Arnold Day, v. Kenneth Boudreau, William Foley, Jude Evans, Michael Kill, Dan Mcweeny, James Brennan, Anthony Watson, Marty Radtke, City of Chicago, and Unidentified Employees of the City of Chicago . Case No.: 19-cv-07286.

**Deposition:** October 11, 2023.  Matthew D. Rifat, and Tracy M. Rifat, v. Dave Jones; David Steele; et al.  Case No.: 21-CV-1667-L-KSC.

**Deposition**: October 18, 2023.  Brenda Allen vs. State of California, Department of Corrections and Rehabilitation, Corrections Officer O. Barraza, Corrections Officer V. Veloz, Corrections Officer M. Roque, Sergeant Amaya, et al., Case No.: 5:22-CV-01288-RGK-PLA.

**Trial:** October 20, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition**: October 23, 2023.  Deshawn M. Wright, v. City of San Bernardino, et al  Case No.: 5:22-cv-001327-GW-(JCx).

**Trial:** October 27, 2023.  John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Trial:** November 1, 2023.  Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** November 3, 2023.  Jose Gutierrez, v. County of Los Angeles, et al.  Case No.: 2:21-cv-08223 FMO-PLKA

**Trial:** November 6, 2023.  Francisco Rodriguez, v. Los Angeles Dodgers, et al.  Superior Court, (Los Angeles County) BC714498

**Deposition:**  November 7, 2023.  Jimmy Southern, (Jeremy Southern deceased), v. City of Sacramento, et al.  Case No.: 2:20-CV-01765 - MCE-AC

**Deposition:**  November 14, 2023.  Blanca & Brian Mendoza v. City of Hanford, et al.  Case No.: 1:21-cv-00721 JLT-BAM

**Deposition:**  November 15, 2023.  Ricardo Martinez, v. County of Orange, et al.  Superior Court Case No.: 30-2021-01208196 CU-NP- NJC.

# Clark Report

# "EXHIBIT D"

TIME TO FIRST SHOT

-0.400

TIME TO FIRST SHOT
- 1.068

