# Exhibit "B"

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* XAVIER LOPEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER LOPEZ,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITY OF RIVERSIDE; EVAN WRIGHT; and DOES 1-10, inclusive,<br><br>          Defendants. | CASE No.: 5:21-cv-02140-PSG (JEMx)<br><br>[*Honorable Philip S. Gutierrez*]<br>Magistrate Judge John E. McDermott<br><br>**PLAINTIFF'S AMENDED RULE 26 INITIAL EXPERT DISCLOSURES** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Xavier Lopez hereby designates the following retained and non-retained expert witnesses who may be called upon to give expert testimony pursuant to Rule 26(a)(2)(A) of the Federal Rule of Civil Procedure. Plaintiff reserves the right to supplement and/or amend this disclosure.

I. **RETAINED EXPERTS:**

    A.    Roger A. Clark (Police Practices/Use of Force)

           Police Procedures Consultant, Inc.

           10207 Molino Road

           Santee, CA 92071

           (208) 351-2458

Mr. Clark's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit A.

    B.    Scott Holdaway (Videographer, Editor, and Forensic Video Analyst)

           CVisualEvidence, LLC.

           2441 W 205th Street, Suite C102

           Torrance, CA 90501

           (310) 831-8900

Mr. Holdaway's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit B.

    C.    Amy Magnusson, M.D., (Medical Expert)

           Physical Medicine and Rehabilitation

           2999 Health Center Drive

           San Diego, CA 92123

           (858) 939-4496

Dr. Magnusson's Rule 26 Report, C.V., fee schedule, and list of prior sworn testimony are collectively attached hereto as Exhibit C.

///

II.    **NON-RETAINED EXPERTS:**

1.    Oluwatosin Fawibe, MD and as assistant to Ahmed Mahmoud, MD 4445 Magnolia Avenue, Riverside, California 92501, Mission Surgical Clinic; (888) 754-0626, (951) 384-7422, (951) 788-3000.

The subject matter in which Dr. Fawibe will testify includes his knowledge of and interaction with Plaintiff as his attending physician and surgeon and as assistant to Dr. Mahmoud from 1/26/21 to 2/8/21 at Riverside Community Hospital, including but not limited to the evaluation, signs and symptoms, treatment and procedures including why such were performed, diagnosis, prognosis including future restrictions and pain and suffering, treatment plan including future care needs including pain and suffering, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds.

A summary of Dr. Fawibe's facts and opinions to which Dr. Fawibe is expected to testify include but are not limited to:

As surgeon for Plaintiff on 1/26/2021 with procedures performed including (i) exploratory laparotomy, (ii) mobilization of splenic flexure, (iii) left colectomy with colon left in discontinuity, and (iv) temporary abdominal closure with ABThera wound VAC; estimated blood loss of 150 mL; general anesthesia was used; interoperative findings include distal transverse colon perforation, large left retroperitoneal zone 2 hematoma, which was nonexpanding, nonpulsatile, and no evidence of solid organ injury; no complications; specimens from partial colectomy; indications include: a 29-year-old gentleman, who presented as a trauma code after a gunshot wound x2. He was noted to have a gunshot injury to the left anterior abdominal wall with possible exit wound to the left flank. He also had an another injury to the right shoulder. Given the mechanism of action and the fact the patient was transiently hypotensive but responded to fluid, decision was made to proceed to operating room emergently for exploratory laparotomy to rule out intraabdominal injury; technique includes: patient was brought directly to the operating room,

placed on the operating table in the supine position. After insertion of Foley catheter, two large bore IVs; the patient's abdomen, chest were prepped and draped in the usual sterile fashion. Time-out was conducted. A midline incision was made from the xiphoid region down to the infraumbilical area. The incision was carried down through the subcutaneous tissue until the fascia was encountered and divided until the peritoneal cavity was encountered. There was some fresh blood that was noted upon entry to the peritoneal cavity. The abdominal quadrants were subsequently packed with lap pads in order to control any active bleeding that might be going on. At this time, the left upper quadrant was examined, examined the spleen to rule out any splenic injuries. None were noted. The right upper quadrant was examined as well, evaluating for any hepatic injury. There appeared to be no liver injury at this time. The lap pads were then removed one at a time starting from the right upper quadrant to the pelvis. Then, the left upper quadrant. No injuries noted and no bleeding noted on the right side on the pelvic regions. However, on the left side of the abdomen, there appeared to be a large retroperitoneal hematoma on the left side. At this time, it was obvious the hematoma was around the left kidney. It was nonexpanding and was nonpulsatile. Pressure packs were placed at this time. Also, at the distal transverse colon a perforation was noted. The perforation was about 3 to 4 cm. This was temporarily controlled and then the small bowel was run from the ligament of Treitz to the ileocecal valve appeared to be intact. No injuries. The colon was also run. Other than the previously stated distal transverse colon perforation, no obvious injury. No bleeding noted. Also, no zone 1 or zone 2 hematoma noted. The iliac vessels appeared to be intact. At this time, the decision was made to mobilize the splenic flexure in order to properly resect on the perforated colon, so splenic flexure mobilization was performed dividing the lateral attachments of the colon. After obtaining circumferential control of the transverse colon around the perforation site, a GIA stapler was used to divide the colon and Ligature device was used to divide the mesentery to about 6 cm of portion of the

distal transverse colon/left colon was divided and this was left in discontinuity. Again, the lesser sac was evaluated by dividing the gastro-omentum of the gastrocolic ligament. No obvious injuries to the pancreas. No injury to the stomach or the posterior wall of the stomach noted. At this time, the left retroperitoneal zone 2 hematoma was re-evaluated. It appeared to be to be stable in size, again, it was not expanding. No pulsatile bleeding. Decision was made at this time to not to explore as exploration would likely lead to the need for nephrectomy. At this time, we will proceed to CT scan after the case, to better evaluate the injury and if there is any active extravasation, we will likely consult IR to embolize the region. We elected to proceed conservatively knowing quite well that the patient might eventually need a nephrectomy at a later time. The NG tube was verified. The abdomen was covered with ABThera wound VAC and appropriate dressing placed. The patient will remain intubated, who currently will be transferred to CAT scan right now to complete his scans. The patient remained stable at this time, not requiring any pressors and received about 2 2-unit PRBC.

As surgeon for Plaintiff on 1/27/2021 with preoperative diagnosis of open abdomen, recent exploratory laparotomy with distal transverse colectomy with bowel left in discontinuity; postoperative diagnosis of open abdomen, recent exploratory laparotomy with distal transverse colectomy with bowel left in discontinuity; procedures performed include (i) abdominal re-exploration, (ii) mobilization of the splenic flexure, (iii) colocolic anastomosis, and (iv) abdominal closure; general anesthesia; findings include left zone 2 retroperitoneal hematoma was again visualized and was noted to be nonpulsatile, nonexpanding, and seem to be stable; no complications, EBL of 50 mL; no specimen removed; drains of 1 JP drain that was placed at the end of the case; technique includes: the patient was brought to the operating room directly from the ICU, placed in the supine position on the operating table. General anesthesia was induced. The ABThera wound VAC was removed. The patient's abdomen was prepped and draped in the usual sterile

1 fashion. The intra-abdominal portion of the ABThera VAC was then removed at this
2 time. A time-out was conducted. We proceeded to irrigate the peritoneal cavity. The
3 left side of the abdomen was re-explored. The zone 2 retroperitoneal hematoma on
4 the left was again visualized and was found to be nonpulsatile and nonexpanding,
5 seemed to be stable from the initial operation a couple of days ago. Decision was
6 made to continue with a conservative management of this kidney injury. The 2 ends
7 of the bowels that were resected were visualized. Apparently, this was found to be
8 the distal portion of the transverse colon. The proximal end of the colon was freed of
9 omentum and the splenic fracture to be mobilized by dividing the lateral
10 attachments. The mobilization was started and the initial portion was completed at
11 this time in order to allow for a tension-free anastomosis. After the mobilization, the
12 2 ends of the bowel came together with no tension and that appeared normal, pink,
13 well vascularized. At this time, we performed our anastomosis. The bowels were
14 aligned side-to-side in the antimesenteric fashion. We created an antimesenteric
15 enterotomy. A linear staple of GIA 75 was then used to create the anastomosis. The
16 lumen of the bowel was inspected for hemostasis. The enterotomy was then closed
17 in 2 layers with an inner running absorbable suture and then outer silk Lembert
18 sutures. Again, the anastomosis came together without tension. The abdomen was
19 then copiously irrigated. The modified protocol was performed at this time. The
20 fascia of the midline incision was closed with #1 double looped PDS one from the
21 superior end of the incision and another from the inferior end in a running fashion.
22 The skin was closed with skin stapler. Evarrest was left in the left upper quadrant
23 and a JP drain was also inserted and placed in the left side of the abdomen, just on
24 top of the hematoma. After closure of the incision, dressings were placed. The
25 patient tolerated the procedure and was transferred to ICU in stable condition.
26      Gross description post surgeries includes: the specimen is identified as left
27 partial colon; received in 10% formalin is a 5.5 cm segment of colon; both resection
28 margins are closed with multiple staples; located 2.5 cm from one resection margin

is a 1 cm area of transmural perforation; the edges of the perforation are hyperemic; opening the segment of colon reveals that it contains a small amount of particulate fecal material; second area of transmural perforation is also identified that measures 0.9 cm, which is associated with hemorrhage; the open circumference of the segment measures 6 cm; three cassettes; clinical history of gunshot wound; microscopic and diagnosis includes left colon resection, foci of transmural perforation with hemorrhage, consistent with penetrating trauma.

Dr. Fawibe's review and analysis of radiological reports including:

1/26/21 CT to chest with IV contrast, trauma; indication of 29-year-old with chest and abdominal pain following trauma; finding include lungs – dense subpleural consolidation at the posterior aspect of the right upper lobe with coursing bronchograms; chest wall – metallic bullet measuring approx. 1.7 cm noted within the soft tissues just posterior to the medial aspect of the left scapular body; soft tissue emphysema of the right paraspinal musculature at the base of the neck; bones – comminuted fracture involving the spinous process of the T1 vertebral body, mild multilevel degenerative endplate spurring of the thoracic spine; kidneys and ureters – large heterogeneous hematoma involving the left renal interpole and lower pole with subcapsular and extracapsular components, extension of hemorrhagic material within the anterior and posterior perirenal and pararenal spaces, hemorrhagic material extends to the renal hilum; bowel – enteric tube terminate within the gastric body, post surgical changes of partial colectomy; distal segment of the transverse colon is surgically absent; abdominal wall – wound vacuum present, soft tissue wound related to the bullet entrance and exit along the left flank and left lower anterior abdomen.

1/30/21 with worsening renal function, comparison CT of abdomen and pelvis with out contrast; findings in kidneys and bladder; impression of heterogeneous left kidney, redemonstration of left large parenchymal and perinephric hematoma involving the interpole and lower pole of the left kidney.

2/3/21 with history of trauma and gunshot wound, finding in kidneys and bladder, impressions of organs including urinoma and hematoma; CT of abdomen and pelvis with contrast; history of acute onset abdominal and pelvic pain; procedures including CT images; findings include lung bases – small bilateral pleural effusions and bibasilar atelectasis, soft tissues – small fat-containing inguinal hernias, small fat-containing umbilical hernia; peritoneum anterior to the left kidney hematoma; keep lacerations to kidneys; gastrointestinal – stranding and thickening adjacent to the transverse colon with hyperdense fluid adjacent.

Orders made by Dr. Mahmoud and other physicians under his charge from 1/26/21 to 2/8/21 including 2/4/21 ordering doctor for Plaintiff's treatment, pre-operation evaluation and analysis, cystoscopy and left urethral stent placement surgery, post anesthesia evaluation and analysis; 2/5/21 ordering doctor for Plaintiff's treatment; 2/6/21 ordering doctor for Plaintiff's treatment; and 2/7/21 ordering doctor for Plaintiff's treatment.

2.   Erin Katz, MD

4445 Magnolia Avenue, Riverside, California 92501, (951) 683-6370, (951) 493-6937, (951) 788-3000.

The subject matter in which Dr. Katz will testify includes his knowledge of and interaction with Plaintiff as his treating physician and surgeon at Riverside Community Hospital, including but not limited to the evaluation, signs and symptoms, treatment and procedures including why such were performed, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds.

A summary of Dr. Katz's facts and opinions to which Dr. Katz is expected to testify include but are not limited to:

Urology consultation regarding gunshot wound to left kidney. Follow ups with Plaintiff including repeated CT of abdomen and pelvis, sepsis, fevers and leukocytosis.

As surgeon for Plaintiff on 2/4/2021: Pre-operative diagnosis of left kidney injury, urinoma, left renal injury, urethral stricture disease, procedures performed include (i) cystoscopy with urethral dilation, and (ii) left ureteral stent placement; underwent general anesthetic; estimated blood loss of 1mL, fluids include 800 mL of crystalloid, drains a 6 x 28 cm double-J ureteral stent, 16-French Foley catheter; no complications; indication/description of procedures includes: a 29-year-old gentleman with a left renal injury, status post exploratory laparotomy, transverse colectomy 01/26/2021 secondary to gunshot wound x2. He was taken back to the operating room 01/27/2021 for abdominal closure and colonic anastomosis. The patient pulled out his JP drain and now there is increased JP fluid with a urine creatinine level of 17. ==A renal ultrasound 02/03/2021== revealed no hydronephrosis bilaterally; however, there is a urinoma around the left kidney. The CT scan of the abdomen and pelvis 02/03/2021 reveals deep lacerations midbody of left kidney extending toward the collecting system. There is a stable left renal and perirenal hematoma but a new loculated fluid collection anterior to the left perirenal hematoma. The risks and benefits of the surgery were discussed with the patient, and the risks include, but are not limited to bleeding, infection, acute urinary retention, need for prolonged catheterization, bladder perforation, ureteral perforation, need for reoperation, urosepsis, acute renal failure, prolonged hospitalization, and death. The patient was taken to the operating room and placed in a supine position. A general anesthetic was administered, and IV antibiotics given. He was then placed in a dorsal lithotomy position and prepped and draped in a sterile fashion. A 21-French rigid cystoscope was entered per urethra; however, there is a mid urethral stricture. A straight Glidewire was then threaded through the cystoscope and into the bladder, and the urethra was dilated over the wire. once the cystoscope was entered into the bladder, the bladder was then inspected in a systematic fashion. There was no evidence of bladder calculi, papillary lesions, or erythematous patches. Both ureteral orifices were identified showing normal efflux.

Attention was then drawn to the left ureteral orifice. The left ureteral orifice was cannulized with an open-ended access catheter, and a straight Glidewire was then threaded to the left ureter and up into the left renal pelvis under fluoroscopic guidance and direct vision. The access catheter was then removed leaving the safety wire in place. A 6 x 28 cm double-J ureteral stent was then threaded over the safety wire and guided up the left ureter and into the left renal pelvis under fluoroscopic guidance and direct vision. The wire was then removed leaving the left ureteral stent in good position. There was a nice proximal curl in the left renal pelvis and a distal curl in the bladder. The wire was then threaded back through the cystoscope and into the bladder and the cystoscope removed leaving the safety wire in place. A 16-French Council tip Foley catheter was threaded over the safety wire into the bladder without difficulty and the balloon inflated. The catheter was attached to a drainage bag. The patient was then awakened having tolerated the procedure well. The patient was taken to recovery room in stable condition.

  3. Manika Paul, MD

  26600 Cactus Ave, Moreno valley, CA 92555, (951) 788-3550, (951) 988-9500.

  The subject matter in which Dr. Paul will testify includes his knowledge of and interaction with Plaintiff as his treating physician and surgeon at Riverside Community Hospital, including but not limited to the evaluation, signs and symptoms, treatment and procedures including why such were performed, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds.

  A summary of Dr. Paul's facts and opinions to which Dr. Paul is expected to testify include but are not limited to:

  Ordering doctor for Plaintiff's treatment on 1/26, 1/27, 2/1, and 2/2 2021. On 1/26/21 took Plaintiff's history of present illness including chief complaint of 29 year old man brought in as a trauma code due to 2 gunshot wounds; one noted to the

right shoulder and the other through and through to the LUQ; patient awake but screaming of stomach and chest pain; blood pressure at 99/55, notable hypotension, weakness of extremities; C collar placed and patient taken emergently to the operating room for exploratory laparotomy. On 2/1/21, 6 days after gunshot wounds; abdomen closed; having issues with AMS, having hiccups; reports nausea. Assisted in surgery on 1/26/2021. Review or radiology reports and findings

  4. Chelsea Cosand, MD

  4445 Magnolia Avenue, Riverside, California 92501; (951) 384-7422, (951) 788-3000.

  The subject matter in which Dr. Cosand will testify includes his knowledge of and interaction with Plaintiff as his attending Emergency Room physician and surgeon at Riverside Community Hospital, including but not limited to the evaluation, signs and symptoms, treatment and procedures including why such were performed, diagnosis, prognosis, treatment plan, and cost of care for Plaintiff regarding Plaintiff's gunshot wounds.

  A summary of Dr. Cosand's facts and opinions to which Dr. Cosand is expected to testify include but are not limited to:

  Plaintiff's conditions of admission and care; 1/26 and 1/27/21 evaluation of Plaintiff's condition and critical care including brought in by ambulance status post gunshot wounds, trauma code activated, cervical collar place in emergency department, appearance of 3 wounds, 1 on right shoulder area, 1 on the left abdomen and 1 on the left back flank, in distress, blood pressure at 99/55, low potassium, high creatine, and high glucose levels, radiology of shoulder, pelvis, chest, and abdomen, with bullet shaped hyperdense metallic focus measuring 2.2 cm projecting over the left upper hemithorax, soft tissue emphysema of right neck base, 2 metallic arrowhead foreign bodies projecting over the left upper abdominal quadrant. Informed consent for surgery or special procedures including risks involved. Primary surgeon on 1/26/21 for exploratory laparotomy for gunshot wounds.

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | DATED: November 30, 2023 | LAW OFFICES OF DALE K. GALIPO |
| 4 | | LAW OFFICES OF GRECH & PACKER |
| 5 | | By: _____ |
| 6 | | Dale K. Galipo |
| 7 | | Marcel F. Sincich |
| | | *Attorneys for Plaintiff* |

PROOF OF SERVICE

STATE OF CALIFORNIA, CITY OF LOS ANGELES

I, Marcel Sincich, am employed in the CITY of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action. My business address is 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

On November 30, 2023, I served the foregoing document described as:

**PLAINTIFF'S AMENDED RULE 26 INITIAL EXPERT DISCLOSURES**

on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the attached service list.

METHOD OF SERVICE

☐ (BY MAIL) I enclosed the documents in a sealed envelope or package and addressed to the parties at the addresses as indicated on the attached service list.

☐ I deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid thereon.

☐ I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of this office for the collection, processing and mailing of documents. On the same day that documents are placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ (BY ELECTRONIC SERVICE) I caused the foregoing document(s) to be sent via electronic transmittal to the notification addresses listed below as registered with this court's case management/electronic court filing system.

☐ (BY FEDERAL EXPRESS) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses as indicated on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 30, 2023, at Woodland Hills, California.

_____
Marcel Sincich

1 | SERVICE LIST

PHAEDRA A. NORTON, City Attorney SBN 200271
REBECCA L. MCKEE, Assistant City Attorney, SBN 279485
DEBRA K. COOK, Deputy City Attorney, SBN 250114
OFFICE OF THE CITY ATTORNEY – City of Riverside
3750 University Avenue, Suite 250
Riverside, CA 92501
Telephone (951) 826-5567
Facsimile (951) 826-5540

Attorneys for Defendants CITY OF RIVERSIDE and EVAN WRIGHT